FILED

c/mx

Aug 14  3 24 PM '89

CLERK. U.S. DISTRICT COURT
DISTRICT OF OREGON
BY _____

HOWARD G. ARNETT
MARCEAU, KARNOPP, PETERSEN, NOTEBOOM & HUBEL
835 N.W. Bond
Bend, OR  97701-2799
    Attorneys for The Confederated Tribes of
    the Warm Springs Reservation of Oregon,
    Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| and | ) |
| THE CONFEDERATED TRIBES OF THE WARM SPRINGS RESERVATION OF OREGON, CONFEDERATED Tribes AND BANDS OF THE YAKIMA INDIAN NATION, CONFEDERATED Tribes OF THE UMATILLA INDIAN RESERVATION and NEZ PERCE TRIBE OF IDAHO, | ) Civ. No. 68-513-MA |
| Plaintiff-Intervenors, | ) WARM SPRINGS, NEZ PERCE AND UMATILLA Tribes' RESPONSE RAISING JURISDICTIONAL AND PROCEDURAL DEFENSES TO IDAHO'S PETITION TO ADOPT NEW STEELHEAD MANAGEMENT PROVISIONS |
| v. | ) |
| STATE OF OREGON, | ) |
| Defendant, | ) |
| STATE OF WASHINGTON, | ) |
| Defendant-Intervenor; | ) |
| and | ) |
| STATE OF IDAHO, | ) |
| Defendant - Intervenor. | ) |

1 - WARM SPRINGS, NEZ PERCE AND UMATILLA TRIBES' RESPONSE RAISING JURISDICTIONAL AND PROCEDURAL DEFENSES TO IDAHO'S PETITION TO ADOPT NEW STEELHEAD MANAGEMENT PROVISIONS

NATIVE AMERICAN PROGRAM
Oregon Legal Services Corporation
917 S.W. Oak, Suite 410
Portland, Oregon 97205
(503) 223-9483

1678

Idaho's "Petition for Adoption of New Interim Steelhead Management Provisions," and Idaho's request for an evidentiary hearing filed August 1, 1989, cannot be considered by the court for the following jurisdictional and procedural reasons:

(1) The dispute is not ripe for adjudication until Idaho has complied with the Columbia River Management Plan's dispute resolution procedures;

(2) The dispute is not ripe until the Columbia River Fish Compact takes regulatory action inconsistent with Idaho's proposed management measures;

(3) Idaho's request for relief is an action against Oregon and Washington and is therefore beyond the court's jurisdiction;

(4) Idaho's appeal of the Plan's steelhead provisions divests the court of jurisdiction to consider Idaho's petition to adopt new steelhead provisions;

(5) Idaho's requested relief against the Warm Springs, Nez Perce and Umatilla Tribes is barred by tribal sovereign immunity;

(6) Idaho cannot modify the Plan without the signatory parties' consent; and

(7) Idaho's petition fails to state a claim upon which relief can be granted.

The basis of these jurisdictional and procedural defenses is set out below.

2 - WARM SPRINGS, NEZ PERCE AND UMATILLA TRIBES' RESPONSE RAISING JURISDICTIONAL AND PROCEDURAL DEFENSES TO IDAHO'S PETITION TO ADOPT Page NEW STEELHEAD MANAGEMENT PROVISIONS

NATIVE AMERICAN PROGRAM
Oregon Legal Services Corporation
917 S.W. Oak, Suite 410
Portland, Oregon 97205
(503) 223-9483

I.   IDAHO'S PETITION PRESENTS ISSUES THAT ARE NOT RIPE FOR ADJUDICATION.

   A.   **Idaho has failed to exhaust the Plan's policy and technical dispute resolution procedures prior to seeking judicial relief.**

The factual and legal questions raised by Idaho's proposed new steelhead plan are presently being evaluated by the Policy Committee and the Technical Advisory Committee within the framework of the Plan.  The Plan's dispute resolution procedures must be exhausted before a dispute arising under the Plan is ripe for judicial resolution.  The Warm Springs, Nez Perce and Umatilla Tribes support and adopt as their own the position taken by the United States in its response memorandum filed this date on the issue of lack of jurisdiction due to failure to exhaust available remedies within the Plan.

   B.   **There is no harm to Idaho's interest until the Compact (Oregon and Washington) adopts fishing regulations inconsistent with Idaho's proposed steelhead management provisions.**

Idaho argues that the Plan's steelhead management provisions expired on June 30, 1989, and that Idaho's proposed management provisions should be adopted by the court to "fill the void created by the lapse of the interim steelhead provisions."  Memo in Sup. of Petition at 3.  If Idaho is correct and there are "no court-ordered steelhead management provisions in effect" (id. at 2), the result is not a regulatory "void."  If the current provisions are

3 – WARM SPRINGS, NEZ PERCE AND UMATILLA TRIBES' RESPONSE RAISING JURISDICTIONAL AND PROCEDURAL DEFENSES TO IDAHO'S PETITION TO ADOPT NEW STEELHEAD MANAGEMENT PROVISIONS

Page
NATIVE AMERICAN PROGRAM
Oregon Legal Services Corporation
917 S.W. Oak, Suite 410
Portland, Oregon 97205
(503) 223-9483

not effective, Oregon and Washington, operating as the Columbia River Fish Compact, are legally free to implement any regulatory provisions they wish, as they have done since 1918, consistent with the Columbia River Tribes' treaty fishing rights.

Idaho's petition requesting a court order imposing steelhead management provisions on the Compact, before the Compact has taken any regulatory action on its own, clearly presents issues that are not ripe for adjudication. Never in the 21-year history of this litigation have the Columbia River Tribes been able to obtain judicial relief <u>before</u> any regulatory action is taken by the Compact. If there are no court-ordered steelhead management provisions in effect, Idaho should do what the Warm Springs, Nez Perce and Umatilla Tribes have always done, which is to go to the Compact public hearings, urge its position on the Compact agencies, and then seek judicial relief if it believes its rights have been infringed by the Compact's action.

The next scheduled Compact hearings to set fishing regulations for the treaty Indian fishery in Zone 6 are on August 31, 1989, and September 7, 1989. At an August 3, 1989, Compact hearing, fishing seasons and regulations were established for the treaty Indian fishery in Zone 6 to run through September 2, 1989. Idaho appeared and testified at the August 3 Compact, but did not mention its concern about Group B steelhead and did not object to the Compact's

4 - WARM SPRINGS, NEZ PERCE AND UMATILLA TRIBES' RESPONSE RAISING JURISDICTIONAL AND PROCEDURAL DEFENSES TO IDAHO'S PETITION TO ADOPT Page NEW STEELHEAD MANAGEMENT PROVISIONS

NATIVE AMERICAN PROGRAM
Oregon Legal Services Corporation
917 S.W. Oak, Suite 410
Portland, Oregon 97205
(503) 223-9483

setting of tribal fishing seasons through September 2. Idaho's witness at the Compact hearing, Dexter Pitman, even commended the Tribes for their efforts to minimize impacts on Group A steelhead during the August fishing periods.

The Compact hearing on August 31 will establish seasons for the treaty Indian fishery in Zone 6 to run through September 10, 1989, and the Compact on September 7 will consider further seasons and regulations effective beyond September 10, 1989. There is no forecast of the total Group B steelhead run size until around September 5.

Until the Compact takes regulatory action inconsistent with Idaho's steelhead management proposals, there is no issue ripe for adjudication. The earliest that could possibly happen would be the September 7 Compact hearing. The central concern of the ripeness doctrine "is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 2nd, § 3532. Until the Group B steelhead run size can be reasonably forecast (possibly on September 5), and until the Compact enacts regulations that violate Idaho's proposed steelhead management plan (maybe on September 7 or maybe never), Idaho's petition "involves uncertain and contingent future events" that "may not occur at all." Thus, the dispute is not ripe for adjudication and the petition must be dismissed.

5 - WARM SPRINGS, NEZ PERCE AND UMATILLA TRIBES' RESPONSE RAISING JURISDICTIONAL AND PROCEDURAL DEFENSES TO IDAHO'S PETITION TO ADOPT Page NEW STEELHEAD MANAGEMENT PROVISIONS

NATIVE AMERICAN PROGRAM
Oregon Legal Services Corporation
917 S.W. Oak, Suite 410
Portland, Oregon 97205
(503) 223-9483

## II.   IDAHO'S PETITION IS AN ACTION AGAINST OREGON AND WASHINGTON, WHICH THE DISTRICT COURT LACKS JURISDICTION TO HEAR.

If the court grants Idaho the relief requested in its petition, it will be ordering Oregon and Washington, over their objections, to regulate the treaty Indian fishery in Oregon and Washington territorial waters according to the regulatory preferences of the State of Idaho.  This is relief that only the United States Supreme Court can grant.  28 U.S.C. 1251(a); U.S. Constitution, article III, section 2, clause 2.

Idaho has no authority to impose conservation restrictions on the Columbia River Tribes, and there is no duty the Compact states owe to Idaho to impose such restrictions.  Idaho's only legally protected interest in the management of Columbia River fisheries is based on its claim to an equitable apportionment of the non-treaty share of Idaho-origin salmon and steelhead between Idaho, Oregon and Washington.

> Idaho does not contend that the Indians' share of anadromous fish should be reduced, but rather seeks to share in that portion of the catch now taken exclusively by non-treaty fishermen in Oregon and Washington.

Idaho ex rel. Evans v. Oregon, 444 U.S. 380, 385 (1980). However, the equitable apportionment issue is a matter that lies solely within the jurisdiction of the United States Supreme Court. Idaho ex rel. Evans v. Oregon, 462 U.S. 1017, 1024 (1983).

Idaho's posture in this proceeding is that of a

6 – WARM SPRINGS, NEZ PERCE AND UMATILLA TRIBES' RESPONSE RAISING JURISDICTIONAL AND PROCEDURAL DEFENSES TO IDAHO'S PETITION TO ADOPT NEW STEELHEAD MANAGEMENT PROVISIONS

NATIVE AMERICAN PROGRAM
Oregon Legal Services Corporation
917 S.W. Oak, Suite 410
Portland, Oregon 97205
(503) 223-9483

defendant-intervenor state petitioning the court for an order requiring other defendant states to manage treaty Indian fisheries outside of Idaho's territorial jurisdiction according to Idaho's regulatory preferences. The petition clearly violates the court's intervention order prohibiting Idaho from "initiat[ing] claims against the State of Oregon [or] Washington -- in this litigation, directly or indirectly, which would deprive this court of jurisdiction." Clerk's Docket No. 1281. The petition also ignores the Supreme Court's warning that "any attempt by Idaho to assert in [United States v. Oregon] an interest adverse to Oregon and Washington might convert that suit into a dispute among the states, a dispute over which the District Court would have no jurisdiction." 444 U.S. at 387.

**III. IDAHO'S APPEAL OF THE COLUMBIA RIVER MANAGEMENT PLAN'S STEELHEAD PROVISIONS DIVESTED THE DISTRICT COURT OF JURISDICTION TO CONSIDER IDAHO'S PETITION.**

The Warm Springs, Nez Perce and Umatilla Tribes support and adopt as their own the position taken by the United States in its response to Idaho's petition filed this date concerning the divestiture of jurisdiction issue.

**IV. TRIBAL SOVEREIGN IMMUNITY BARS CONSIDERATION OF IDAHO'S PETITION.**

The court's May 20, 1985 intervention order prohibited Idaho from "assert[ing] claims against the Tribes beyond those to which

7 - WARM SPRINGS, NEZ PERCE AND UMATILLA TRIBES' RESPONSE RAISING JURISDICTIONAL AND PROCEDURAL DEFENSES TO IDAHO'S PETITION TO ADOPT NEW STEELHEAD MANAGEMENT PROVISIONS

NATIVE AMERICAN PROGRAM
Oregon Legal Services Corporation
917 S.W. Oak, Suite 410
Portland, Oregon 97205
(503) 223-9483

the Tribes have consented." Clerk's Docket No. 1281.

Idaho's petition seeks to impose steelhead management provisions restricting only the treaty Indian fishery in Zone 6. If the court grants Idaho's requested relief, the Tribes will be bound by fishery management restrictions over their objections. This is clearly an action against the Tribes "to which the Tribes have not consented."

It has long been established that Indian Tribes enjoy sovereign immunity from suit and cannot be sued without their consent or the consent of Congress. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978); Puyallup Tribe v. Department of Game, 433 U.S. 165 (1977); United States v. United States Fidelity and Guaranty Company, 309 U.S. 506 (1940). The immunity from suit enjoyed by Indian Tribes is similar to the immunity of the United States. Id.

Neither the Tribes nor the Congress of the United States have waived the Tribes' sovereign immunity generally, or with regard to this particular lawsuit and the pending petition for relief filed by Idaho.

Idaho undoubtedly will argue that the Tribes impliedly consented to be sued by any party on any claim by intervening in this case 21 years ago. However, that is not the law of the case and other authority persuasively suggests otherwise. In an earlier proceeding in this case, the Ninth Circuit held that the in rem

8 - WARM SPRINGS, NEZ PERCE AND UMATILLA TRIBES' RESPONSE RAISING JURISDICTIONAL AND PROCEDURAL DEFENSES TO IDAHO'S PETITION TO ADOPT Page NEW STEELHEAD MANAGEMENT PROVISIONS

NATIVE AMERICAN PROGRAM
Oregon Legal Services Corporation
917 S.W. Oak, Suite 410
Portland, Oregon 97205
(503) 223-9483

nature of the proceeding empowered the court to enjoin interference with the "res," and specifically held that tribal sovereign immunity had been waived by a tribe's adoption of the 1977 Five Year Plan. United States v. Oregon, 657 F.2d at 1009, 1016 (9th Cir. 1981).

> This is exactly the type of dispute envisioned in 1977 when the Yakimas agreed to submit any dispute to the Oregon district court. Consequently, the Tribe may not at this stage renege on its earlier agreement.

Id.

Unlike the earlier proceeding where both Washington and the Yakimas were parties to the Five Year Plan, here, there is no agreement between the Tribes and Idaho permitting Idaho to bring an action against the Tribes in district court. Idaho might have been able to make that argument had it signed the Plan. However, it did not.

Idaho's situation is similar to that of the intervenor defendant in Wichita and Affiliated Tribes of Oklahoma v. Hodel, 788 F.2d 765, 773 (D.C. Cir. 1986), whose counterclaim against the plaintiff was held to be barred by the tribal sovereign immunity. Noting that there is a difference between intervening as a plaintiff "where a tribe enters a suit...anticipating that it can only improve or maintain its status quo," the D.C. Circuit observed that "a defendant fully realizes that it might lose what it already has--preserving its status quo is the whole point of the intervention." Thus, the court ruled that,

9 - WARM SPRINGS, NEZ PERCE AND UMATILLA TRIBES' RESPONSE RAISING JURISDICTIONAL AND PROCEDURAL DEFENSES TO IDAHO'S PETITION TO ADOPT Page NEW STEELHEAD MANAGEMENT PROVISIONS

NATIVE AMERICAN PROGRAM
Oregon Legal Services Corporation
917 S.W. Oak, Suite 410
Portland, Oregon 97205
(503) 223-9483

> The Tribe does not automatically open itself up to counterclaims simply by virtue of filing the suit. An Indian tribe's immunity is coextensive with the United States' immunity, see United States Fidelity, 309 U.S. at 514, 60 S.Ct. at 657, and neither loses that immunity by instituting an action, even when the defendant files a compulsory counterclaim."

Id. at 773-774.

This holding by the D.C. Circuit is directly applicable here. The Tribes in this litigation are in precisely the same position that the Wichita tribe was in Wichita and Affiliated Tribes of Oklahoma v. Hodel, where the D.C. Circuit held subsequent intervention as a defendant by the Caddo Tribe did not open up the plaintiff Wichita tribe to a counterclaim by the Caddos. The Warm Springs, Nez Perce and Umatilla Tribes intervened as plaintiffs in this action twenty-one years ago, "anticipating that [they could] only improve or maintain [their] status quo." They certainly did not consent through their intervention to any counterclaim brought by a subsequent defendant intervenor such as Idaho.

Furthermore, the rule of Wichita and Affiliated Tribes that a plaintiff tribe does not waive its sovereign immunity with respect to counterclaims brought by subsequent defendant intervenors simply by virtue of their intervention, is consistent with the rule that a tribe's consent to suit "cannot be implied but must be unequivocally expressed." Santa Clara Pueblo v. Martinez, 436 U.S. at 58, 98 S.Ct. at 677. Accordingly, Idaho's petition is barred by tribal sovereign immunity.

10 - WARM SPRINGS, NEZ PERCE AND UMATILLA TRIBES' RESPONSE RAISING JURISDICTIONAL AND PROCEDURAL DEFENSES TO IDAHO'S PETITION TO ADOPT Page NEW STEELHEAD MANAGEMENT PROVISIONS

V.    **IDAHO CANNOT MODIFY THE PLAN WITHOUT THE SIGNATORY PARTIES' CONSENT.**

Idaho's petition to adopt new steelhead management provisions is brought pursuant to Part I, Section F.2.b. of the Plan. Memo in Support of Petition, at 1. Idaho's petition is unquestionably an attempt to modify the Plan. Although the modifications are limited to the Plan's steelhead section, the court observed in approving the Plan:

> Each part of the 1988 Plan was negotiated by all the various parties for concessions in other sections of the Plan. To modify a single allocation section would distort the entire allocation system of the Plan.

United States v. Oregon, 699 F. Supp. 1456, 1463 (D. Or. 1988).

The court's refusal last year to honor "Idaho's request to modify the language in a single section," id., is consistent with the limitations on the court's authority with respect to agreements among parties to a lawsuit that are approved by the court.

> The court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

Officers for Justice v. Civil Service Comm'n, etc., 688 F.2d 615, 625 (9th Cir. 1982). Clearly, as a non-signatory, Idaho cannot have the Plan modified without the consent of the parties who

11 - WARM SPRINGS, NEZ PERCE AND UMATILLA TRIBES' RESPONSE RAISING JURISDICTIONAL AND PROCEDURAL DEFENSES TO IDAHO'S PETITION TO ADOPT Page NEW STEELHEAD MANAGEMENT PROVISIONS

NATIVE AMERICAN PROGRAM
Oregon Legal Services Corporation
917 S.W. Oak, Suite 410
Portland, Oregon 97205
(503) 223-9483

entered into "what is otherwise a private consensual agreement," nor may the court on its own motion "delete, modify, or substitute certain provisions of the ... decree" without the consent of the signatories. Id. at 630.

## VI. IDAHO'S PETITION FAILS TO STATE A CAUSE OF ACTION AGAINST THE STATES AND Tribes UPON WHICH RELIEF CAN BE GRANTED.

### A. Idaho has no legal basis to enforce the conservation standard.

Idaho wrongly asserts that its proposed steelhead management plan can be evaluated and approved under the conservation standard and other legal requirements for permissible state regulation of treaty Indian fisheries. These standards apply only when a state attempts to restrict treaty fisheries. Idaho has no authority to restrict the Zone 6 steelhead fisheries that would be governed by Idaho's proposed steelhead management measures. Thus, Idaho's citation to United States v. Oregon, 718 F.2d 299 (9th Cir. 1983), and Sohappy v. Smith, 302 F. Supp. 899 (D. Or. 1969), for the applicable legal standard is inapposite.

The Ninth Circuit's 1983 decision and the original decree in this case concerned the scope of Oregon and Washington's regulatory authority over the Columbia River Tribes' Zone 6 fisheries in the face of a tribal challenge to specific state regulations restricting the exercise of the treaty right. The standards discussed in those decisions apply when there is a dispute between

12 - WARM SPRINGS, NEZ PERCE AND UMATILLA TRIBES' RESPONSE RAISING JURISDICTIONAL AND PROCEDURAL DEFENSES TO IDAHO'S PETITION TO ADOPT Page NEW STEELHEAD MANAGEMENT PROVISIONS

the regulating States and the regulated Tribes.  However, when the dispute is between, on the one side, the regulating States and the regulated Tribes and, on the other side, a third state that has no regulatory authority over the treaty Indian fisheries, the standards do not apply.

Idaho's reliance on the conservation standard is an attempt to convert established precedent concerning state authority to limit treaty rights into a rule of law that a regulating state has a duty to limit treaty rights and can be compelled to act in conformity with that duty.  However, the previous proceedings in this case have had nothing to do with whether a regulating state has a legal duty to regulate treaty fishing rights, or, if such duty existed, under what circumstances a state might be compelled to act.  Idaho's argument that Oregon and Washington have a duty to regulate treaty fisheries for conservation purposes and that they have breached that duty is a novel one for which there is no legal basis.  Accordingly, Idaho's petition fails to state a claim upon which relief can be granted and must be dismissed.

B.   **The Conservation standard provides no legal basis for imposing a preseason management plan over the states' and Tribes' objections.**

Idaho's proposed steelhead management plan would force Oregon and Washington to impose greater restrictions on tribal fisheries than the Tribes have agreed to.  If Oregon and Washington attempted to impose Idaho's management plan on the Tribes over their objections, the states would have the burden of proving that these

13 - WARM SPRINGS, NEZ PERCE AND UMATILLA TRIBES' RESPONSE RAISING JURISDICTIONAL AND PROCEDURAL DEFENSES TO IDAHO'S PETITION TO ADOPT NEW STEELHEAD MANAGEMENT PROVISIONS

NATIVE AMERICAN PROGRAM
Oregon Legal Services Corporation
917 S.W. Oak, Suite 410
Portland, Oregon 97205
(503) 223-9483

restrictions satisfy the legal standards for permissible state regulation of treaty Indian fisheries. See, Sohappy v. Smith, supra. It is a burden that Oregon and Washington, and therefore Idaho, could not meet. Because the proposed steelhead management plan represents preseason management constraints adopted in advance of actual run size information and other critical biological data, these restrictions cannot, by their nature, meet the conservation standard.

As Idaho correctly pointed out in an earlier proceeding, a preseason management plan cannot satisfy the conservation standard. In opposing court approval of the 1987 Ocean and In-River Management Agreement, Idaho conceded that the conservation standard with respect to Group B wild steelhead could not be used in evaluating a preseason management plan because it is "not appropriate" to "make a conservation showing at the preseason management planning stage. In fact, the absence of a reliable steelhead run size forecast makes it virtually impossible to demonstrate a conservation necessity before the run arrives." Idaho's Reply to Warm Springs, Nez Perce and Yakima Tribes Response to Idaho's Motion to Reconsider, at 2-3 (emphasis added). Clerk's Docket No. 1477.

Idaho was right in 1987 and wrong here. Idaho's proposed preseason steelhead management plan cannot, by its very nature, meet the conservation standard. Accordingly, the petition must be

14 - WARM SPRINGS, NEZ PERCE AND UMATILLA TRIBES' RESPONSE RAISING JURISDICTIONAL AND PROCEDURAL DEFENSES TO IDAHO'S PETITION TO ADOPT NEW STEELHEAD MANAGEMENT PROVISIONS

dismissed for failure to state a claim upon which relief can be granted.

DATED this 13th day of August, 1989.

Respectfully submitted,

_____
HOWARD G. ARNETT
Attorney for The Confederated Tribes of
the Warm Springs Reservation of Oregon


_____
CRAIG DORSAY
Attorney for The Confederated Tribes of
the Umatilla Indian Reservation


_____
DOUGLAS NASH
Attorney for the Nez Perce Tribe

15 - WARM SPRINGS, NEZ PERCE AND UMATILLA TRIBES' RESPONSE RAISING
JURISDICTIONAL AND PROCEDURAL DEFENSES TO IDAHO'S PETITION TO ADOPT
Page NEW STEELHEAD MANAGEMENT PROVISIONS

NATIVE AMERICAN PROGRAM
Oregon Legal Services Corporation
917 S.W. Oak, Suite 410
Portland, Oregon 97205
(503) 223-9483