FILED

FEB 24   9 43 AM '89

CLERK, U.S. DISTRICT COURT
DISTRICT OF OREGON

BY _____

ALAN C. STAY
Reservation Attorneys' Office
P.O. Box 150
Nespelem, WA   99155
(509)634-4711

Attorney For The Colville Tribes

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                )
                                         )
        Plaintiff,                       )
                                         )
and                                      )
                                         )
THE CONFEDERATED TRIBES AND              )    CIVIL NO. 68-513
BANDS OF THE WARM SPRINGS                )
RESERVATION OF OREGON; CON-              )
FEDERATED TRIBES AND BANDS OF            )
THE YAKIMA INDIAN NATION;                )
CONFEDERATED TRIBES OF THE               )
UMATILLA INDIAN RESERVATION;             )
NEZ PERCE TRIBE OF IDAHO; and            )
THE SHOSHONE-BANNOCK TRIBES,             )    MEMORANDUM IN SUPPORT
                                         )    OF COLVILLE TRIBES'
        Plaintiff-Intervenors,           )    MOTION TO INTERVENE
                                         )
V.                                       )
                                         )
STATE OF OREGON,                         )
                                         )
        Defendant,                       )
                                         )
and                                      )
                                         )
STATE OF WASHINGTON; STATE OF            )
IDAHO,                                   )
                                         )
        Defendant-Intervenors,           )
                                         )
and                                      )
                                         )
CONFEDERATED TRIBES OF THE               )
COLVILLE RESERVATION,                    )
                                         )
        Applicant for Intervention.      )
_____   )

1610

RESERVATION ATTORNEY
**CONFEDERATED TRIBES OF THE COLVILLE RESERVATION**
P. O. Box 150
Nespelem, Washington 99155
(509) 634-4711

TABLE OF CONTENTS

POSTURE OF THE CASE . . . . . . . . . . . . . . . . . . . . .   2

I.    PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . .   2

II.   IDENTIFICATION AND HISTORY OF THE CONFEDERATED
      TRIBES OF THE COLVILLE RESERVATION . . . . . .   3

III.  COLVILLE TRIBES' POSITION ON THE COLUMBIA RIVER
      FISH MANAGEMENT PLAN . . . . . . . . . . . . . .   5

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . .   7

I.    LEGAL PRINCIPLES APPLICABLE TO INTERVENTION AS
      A MATTER OF RIGHT . . . . . . . . . . . . . . . . .   7

II.   THE COLVILLE TRIBES' APPLICATION FOR INTERVENTION
      IS TIMELY . . . . . . . . . . . . . . . . . . . . .   9

      A.    The Colville Tribes Seeks To Intervene In
            Order To Protect Its Treaty Rights Which
            Present Unique Circumstances That Support
            Intervention . . . . . . . . . . . . . . .  11
      B.    The Interests Of The Colville Tribes Are Not
            Presently Adequately Represented And There-
            fore Intervention Is Timely . . . . . . .  13
      C.    The Intervention Of The Colville Tribes Will
            Not Prejudice The Rights Of Any Party To
            This Case . . . . . . . . . . . . . . . . .  14
      D.    Intervention at this Stage of the Proceeding
            is Appropriate. . . . . . . . . . . . . .  16
      E.    Under the Circumstances Presented by this
            Application the Delay in Intervening was
            Justified . . . . . . . . . . . . . . . . .  17

III.  THE ADDITIONAL LEGAL STANDARDS AS APPLIED IN THIS
      CASE FAVOR GRANTING THE APPLICATION OF THE
      COLVILLE TRIBES . . . . . . . . . . . . . . . . .  20
      A.    The Colville Tribes Has A Substantial
            Interest In The Subject Matter Of This
            Litigation . . . . . . . . . . . . . . . .  20
      B.    The Ability Of The Colville Tribes To
            Protect Its Treaty Fishing Right Will Be
            Impaired By Disposition Of This Action . .  23
      C.    The Colville Tribes' Interest is not
            Adequately Represented by Other Parties  .  24

IV.   COMPARING THE DECISIONS IN THE MAKAH, AND IDAHO
      INTERVENTIONS SUPPORTS THE COLVILLE TRIBES'
      INTERVENTION . . . . . . . . . . . . . . . . . .  26

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . .  28

i

RESERVATION ATTORNEY
**CONFEDERATED TRIBES OF THE COLVILLE RESERVATION**
P. O. Box 150
Nespelem, Washington 99155
(509) 634-4711

TABLE OF AUTHORITIES

CASES

Alleghany Corp. v.
    Kirkby, 344 F. 2d 571, 574 (2nd Cir. 1965),
    cert. dismd.
    381 U.S. 933, reh. den. 384 U.S. 967 (1968) . . . . . 11

Candelaria v.
    U.S., 271 U.S. 432 (1926) . . . . . . . . . . . . . . 26

Carter v.
    School Board of West Feliciana Parish,
    569 F. Supp. 568 (D.C. La 1983) . . . . . . . . . 10, 17

City of Fresno v.
    Andrus, 622 F. 2d 436, 438 (9th Cir. 1980) . . . . . . 20

Confederated Tribes of the
    Colville Reservation as
    Successor of the Claims
    of the Chief Joseph Band
    of the Nez Perce Tribe v.
    United States, 23 Ind. Cl. Comm. 39, (1970). . 5, 11, 12

Hill v.
    Western Electric Co., 672 F. 2d 381,
    386 (4th Cir. 1982), cert. den. 74 L. Ed. 2d 294 . . . 14

In re Benny,
    791 F. 2d 712, 721 (9th Cir. 1986) . . . . . . . . . . 25

Jicarilla Apache Tribe v.
    U.S., 601 F. 2d 1116, 1125 (10th Cir. 1979) . . . . . 26

Kimball v.
    Callahan, 493 F. 2d 564 (9th Cir. 1974) . . . . . . . 12

Kozak v.
    Wells, 278 F. 2d 104, 111-112 (8th Cir. 1960) . . . . 9

Legal Aid Society of Alameda County v.
    Dunlap, 618 F. 2d 48, 50 (9th Cir. 1980) . . . . . 10, 12

Makah Order . . . . . . . . . . . . . . . . . 10, 20, 21, 26

McDonald v.
    E.J. Lavino Co., 430 F. 2d 1065, 1072-73 (5th Cir.
    1970) . . . . . . . . . . . . . . . . . . . . . . 10, 14

ii

TABLE OF AUTHORITIES
Continued

Menominee Tribe of Indians v. United
        States, 391 U.S. 404, 413 (1968) . . . . . . . . . . . . 12

Neusse v.
        Camp, 385 F. 2d 694, 700 (10th Cir. 1967) . . . . . . 20

Sagebrush Rebellion, Inc. v.
        Watt, 713 F. 2d 525, 528 (9th Cir. 1983) . . . . . . . 25

Sanguine, Ltd. v.
        United States, 736 F. 2d 1416, 1420 (10th Cir. 1984) . 8

Securities & Exchange Comm. v.
        Tipco, Inc., 554 F. 2d 710 (5th Cir. 1977) . . . . . . 13

Smuck v. Hobson,

        408 F. 2d 175, 179 (D.C. 1969) . . . . . . . . . . . . 8

State of New Mexico v.
        Aamoldt, 537 F. 2d 1102,
        1107 (10th Cir. 1976) . . . . . . . . . . . . . . . . 24

The Confederated Tribes of the
        Colville Reservation v.
        The Yakima Tribe of Indians
        of the Yakima Reservation, 204 Ct. Cl. 868 (1974)    5, 11

U.S. v.
        Oregon, 745 F. 2d 550, 552 (9th Cir. 1984) 7, 10, 12, 14,
                                                     15, 16, 20

U.S. v.
        Spring Fellow, 783 F. 2d 821, 827 (9th Cir. 1986) . . 25

United States v.
        Washington, 520 F. 2d 676, 692-693 (9th Cir 1975) . . 12

United States v.
        Washington, 384 F. Supp. 312, 328
        (W.D. Wn. 1974) . . . . . . . . . . . . . . . . . 25, 28

Walker v.
        Jim Dandy Co. 747 F. 2d 1360 (11th Cir. 1984) . . . . 11

Washington State Building &
        Construction Trades Company v.
        Spellman, 684 F. 2d 627, 630 (9th Cir. 1982) . . . . . 8

iii

TABLE OF AUTHORITIES
Continued

STATUTES

25 U.S.C. 175 . . . . . . . . . . . . . . . . . . . . . . . . 26

Civil Rule 24(a)(2) . . . . . . . . . . . . . . . . . . 2, 8-10

Treaty with the Nez Perce
    June 11, 1855, 12 Stat. 957, II Kapp. 702 . . . . . . 4

Treaty with the Yakimas
    June 9, 1855, 12 Stat. 951, II Kapp. 698 . . . . . . . 4

OTHER AUTHORITIES

Cohen, Felix,
    Handbook of Federal Indian Law, 1982 Ed. . . . . . . . 12

Wilkinson, C. & J.M. Volkman,
    "Judicial Review of Indian Treaty
    Abrogation," 63 Cal. L. Rev. 601 (1975) . . . . . . . 12

Wright, Miller,
    "Federal Practice and Procedure"
    Civil 2d Section 1904 . . . . . . . . . . . . . . . 8, 23

iv

ALAN C. STAY
Reservation Attorneys' Office
P.O. Box 150
Nespelem, WA   99155
(509)634-4711

Attorney For The Colville Tribes

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                )
                                         )
        Plaintiff,                       )
                                         )
and                                      )
                                         )
THE CONFEDERATED TRIBES AND              )        CIVIL NO.  68-513
BANDS OF THE WARM SPRINGS                )
RESERVATION OF OREGON; CON-              )
FEDERATED TRIBES AND BANDS OF            )
THE YAKIMA INDIAN NATION;                )
CONFEDERATED TRIBES OF THE               )
UMATILLA INDIAN RESERVATION;             )
NEZ PERCE TRIBE OF IDAHO; and            )
THE SHOSHONE-BANNOCK TRIBES,             )        MEMORANDUM IN SUPPORT
                                         )        OF COLVILLE TRIBES'
        Plaintiff-Intervenors,           )        MOTION TO INTERVENE
                                         )
V.                                       )
                                         )
STATE OF OREGON,                         )
                                         )
        Defendant,                       )
                                         )
and                                      )
                                         )
STATE OF WASHINGTON; STATE OF            )
IDAHO,                                   )
                                         )
        Defendant-Intervenors,           )
                                         )
and                                      )
                                         )
CONFEDERATED TRIBES OF THE               )
COLVILLE RESERVATION,                    )
                                         )
    Applicant for Intervention.          )

1

RESERVATION ATTORNEY
**CONFEDERATED TRIBES OF THE COLVILLE RESERVATION**
P. O. Box 150
Nespelem, Washington 99155
(509) 634-4711

This Memorandum is submitted in support of the Motion of the Confederated Tribes of the Colville Reservation (hereinafter Colville Tribes) to intervene in this case. The Colville Tribes seeks to intervene for the purpose of enforcing its off-reservation treaty right to fish; to participate equally in the co-management of the fish resource which includes issues of harvest management, allocation, and stock rehabilitation and enhancement; and to protect Colville members from state action against members while exercising their treaty right. The Colville Tribes does not oppose the Columbia River Fish Management Plan. This application is made pursuant to Civil Rule 24(a)(2).

The Colville Tribes recognizes that its Motion to Intervene comes after other applications. However, the Colville Tribes believes that given the circumstances presented by its motion, intervention as a matter of right is appropriate and timely.

## POSTURE OF THE CASE

I.    PROCEDURAL BACKGROUND.

This case was originally filed by the United States in 1968. Since that time, all Indian tribes with claims on the Columbia River who have moved to intervene have been allowed to intervene. To date, five Indian tribes have been allowed to intervene. They include the Yakima, Umatilla, Warm Springs, Nez Perce and Shoshone-Bannock tribes. In addition, the states of

2

Washington and Idaho have been allowed to intervene as defendant intervenors.

The most recent interventions by the Shoshone-Bannock Tribe and the State of Idaho were permitted on July 25, 1986, and October 29, 1984, respectively. Recently, the Makah Tribe was denied the right to intervene by order of this Court dated September 8, 1988. It did not claim any fishing rights on the Columbia River.

II.    IDENTIFICATION AND HISTORY OF THE CONFEDERATED TRIBES OF THE COLVILLE RESERVATION.

The Colville Tribes is a federally recognized Indian tribe. It governs its lands and people pursuant to a Constitution approved by the Secretary of Interior. The Colville Tribes resides on and governs the Colville Indian Reservation which presently includes in its main component approximately 1.3 million acres of land. The Colville Reservation was set apart and reserved in 1872 initially for tribes living in what is now north central Washington, with its west, south and eastern boundaries including the Okanogan and Columbia Rivers. (See, **Exhibit 1.**)

When the Colville Reservation was set apart the United States anticipated that additional tribes might be placed on that Reservation. The enabling Executive Order provided that the Colville Reservation be established for "such Indians as the Department of Interior may see fit to locate thereon."

3

The Colville Tribes is composed of eleven (11) tribes which either came to or were placed on the Colville Indian Reservation at the direction or with the approval of the United States. Five of the eleven aboriginal tribes confederated into the Colville Reservation were placed on the reservation when it was first reserved. They were the Lakes, Colville, Nespelem, San Poil, and Okanogan-Methow. Each of these tribes aboriginally lived near or on what was to be the Colville Reservation. None of these five tribes signed a treaty with the United States.

The remaining six aboriginal tribes confederated into the Colville Tribes were party to either the Yakima Treaty or the Nez Perce Treaty, both negotiated initially at the Walla Walla Treaty Council in 1855, and the subject of this litigation. As a result of those treaties, each of these tribes reserved the right to continue to fish at their usual and accustomed sites.

These six treaty tribes were the Wenatchee (Wenatchi), Columbia, Entiat, Chelan, Palouse (Palus) each a party to the Treaty with the Yakimas, June 9, 1855, 12 Stat. 951, II Kapp. 698, ratified March 8, 1859; and the Chief Joseph Band of Nez Perce a signatory to the Treaty with the Nez Perce. June 11, 1855, 12 Stat. 957, II Kapp. 702, ratified March 8, 1859.

All eleven tribes on the Colville Reservation identified above acted together, for purposes of government, to confederate into a successor confederated tribe. On February 26, 1938, the United States Department of Interior approved the new

4

RESERVATION ATTORNEY
**CONFEDERATED TRIBES OF THE COLVILLE RESERVATION**
P. O. Box 150
Nespelem, Washington 99155
(509) 634-4711

Constitution and Bylaws of the Confederated Tribes of the Colville Reservation.

The Confederated Tribes of the Colville Reservation is the Intervenor herein. It is the successor government to those individual tribes which had been placed or arrived on the Colville Reservation pursuant to the original establishment of the Colville Reservation or subsequent federal action.

The successorship of the Colville Tribes to the Treaty tribes that confederated into the Colville Tribes is addressed in Claims Court decisions decided in the 1970's. See, **The Confederated Tribes of the Colville Reservation v. The Yakima Tribe of Indians of the Yakima Reservation**, 204 Ct. Cl. 868 (1974) (Copy Attached as **Exhibit 2**); and, **Confederated Tribes of the Colville Reservation as Successor of the Claims of the Chief Joseph Band of the Nez Perce Tribe v. United States**, 23 Ind. Cl. Comm. 39, (1970) (Copy Attached as **Exhibit 3**).

III. <u>COLVILLE TRIBES' POSITION ON THE COLUMBIA RIVER FISH MANAGEMENT PLAN</u>

On September 9, 1988, this Court approved the Columbia River Fish Management Plan. The Colville Tribes does not oppose the Management Plan. That Plan, which had been several years in negotiations has as its primary goal "to rebuild weak runs to full productivity and fairly share the harvest of upriver runs between treaty Indian and non-treaty fisheries in the ocean and Columbia River Basin." Fish Management Plan at 2. The

5

Management Plan provides a framework within which the parties are able to exercise their sovereign powers in a coordinated and systematic manner to protect, preserve and enhance the Upper Columbia River fish runs while providing harvest to treaty and non-treaty fisheries. Id.[1]

The Management Plan is designed to accommodate an intervenor like the Colville Tribes. It is defined as a "dynamic plan" that will necessarily involve change and modification as a result of fish runs, social needs, and changed circumstances. (Management Plan at 13). Of importance, the Management Plan recognizes that nothing contained in it is intended, nor indeed could, abrogate or otherwise affect the treaty rights of any of the parties. The Plan recognizes that as a treaty tribe the Colville Tribes' rights cannot be abrogated by the implementation of the Management Plan. The Plan therefore anticipated the continued protection of rights such as those advanced by the Colville Tribes.

The Colville Tribes fully supports the procedures and processes set up in the Management Plan. While not a party to **U.S. v. Oregon**, the Colville Tribes has embraced these principles in fact through its attempt to work with the parties concerning its anticipated intervention. Had the Colville Tribes been a party during the negotiation of the Management

---

[1] The Shoshone Bannock Tribe which opposed the then draft Management Plan was allowed to become a party to the Plan at the time that the Management Plan was approved by the Court.

6

Plan, it would have fully supported the major provisions of the Plan.[2]

In conclusion, the existence of the Columbia River Fish Management Plan is not an impediment to the Colville Tribes' intervention in this case. The Colville Tribes intends to fully exercise its rights within the Management Plan to participate as an equal partner in the management of the Columbia Basin. Its presence will contribute to the fulfillment of the Plan's goal to rebuild and properly manage the fishery resource.

<u>**LEGAL ARGUMENT**</u>

I.    <u>LEGAL PRINCIPLES APPLICABLE TO INTERVENTION AS A MATTER OF RIGHT</u>.

This Court has entertained numerous motions to intervene at virtually every stage of this continuing litigation. Therefore, the Colville Tribes does not pretend to bring legal authority to this case that undoubtedly has not been presented by the parties before. However, based upon the legal authority intervention of the Colville Tribes is appropriate.

---

[2] The Colville Tribes would have questioned some of the harvest decisions made in Area 6 to the extent that those decisions resulted in substantially all of the harvestable fish being taken in that Area. However, actual practice may show that the present arrangement does provide harvestable fish to the upper river fishing areas sufficient to comply with the Colville Tribes' treaty right. In any event, the Plan is structured to address those technical issues, and the Colville Tribes fully intends to comply with those procedures should it appear that there are insufficient returning fish to meet the fair needs of the Colville Tribes.

7

The Colville Tribes seeks intervention as a matter of right. Intervention as of right is governed by Civil Rule 24(a)(2). Rule 24(a)(2) provides:

> Upon timely application anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Intervention under Civil Rule 24(a)(2) requires the Court to reconcile two competing judicial goals. The first is to achieve judicial economy by resolving issues in a single lawsuit. The second goal is to prevent a single lawsuit from becoming too unending, or fruitlessly complex. **Smuck v. Hobson**, 408 F. 2d 175, 179 (D.C. 1969).

In reconciling these two goals, the rule allowing intervention as of right is to be liberally construed. Wright, Miller, "Federal Practice and Procedure" Civil 2d Section 1904. **Washington State Building & Construction Trades Company v. Spellman**, 684 F. 2d 627, 630 (9th Cir. 1982). If there is a direct, substantial, legally protectable interest in the proceeding the rule is met. **Sanguine, Ltd. v. United States**, 736 F. 2d 1416, 1420 (10th Cir. 1984). (Allowing Indian tribal members to intervene in an action dealing with oil and gas revenues even after judgment.) The courts are to apply a

8

liberal attitude toward the inclusion of parties.  **Kozak v. Wells**, 278 F. 2d 104, 111-112 (8th Cir. 1960).

Within this broad framework this Court must examine four issues in evaluating the Colville Tribes' application to intervene.

1.    The timeliness of this intervention petition;

2.    The interests of the Colville Tribes in this litigation;

3.    The impairment or harm to the Colville Tribes if it is not allowed to intervene; and,

4.    The adequacy of present representation.

Each of these factors will be discussed separately.


II.    THE COLVILLE TRIBES' APPLICATION FOR INTERVENTION IS TIMELY.

The timeliness requirement of Rule 24(a)(2) is founded upon the interest in the expeditious administration of justice.

> If the requirement is to be successfully employed to regulate intervention in the interest of justice, it must have accommodating flexibility toward the court and the litigants. Furthermore, since the privilege of intervention stems from a desire to protect the rights of unrepresented third parties, the timely requirement is not intended to punish an applicant for not acting more promptly, but rather is designed to insure that the original parties should not be prejudiced by the applicant's failure to apply sooner." 26 Fed. Proc, L. Ed. sec. 59:375. (Emphasis added)

9

See, also, **Legal Aid Society of Alameda County v. Dunlap**, 618 F. 2d 48, 50 (9th Cir. 1980). (A court must look at all of the circumstances surrounding intervention, not merely time of intervention.)

The Colville Tribes is applying for intervention as of right under Rule 24(a)(2). A more lenient standard of timeliness is appropriate when intervention is sought as of right. **McDonald v. E.J. Lavino Co.**, 430 F. 2d 1065, 1072-73 (5th Cir. 1970). The mere passage of time is not determinative. **U.S. v. Oregon**, 745 F. 2d 550, 552 (9th Cir. 1984). **Carter v. School Board of West Feliciana Parish**, 569 F. Supp. 568 (D.C. La 1983). (Allowing intervention 18 years after civil rights case filed.) This general rule is based on the view that the interest of an applicant like the Colville Tribes, that otherwise would qualify for intervention under Rule 24 (a)(2), would be far more seriously harmed by denial of intervention on the ground of timeliness than would any applicant who qualifies under Rule 24(b)(2).

The Ninth Circuit has stated that the factors usually weighed in determining timeliness are:

1) the prejudice to other parties if intervention is permitted;

2) the stage of the proceedings; and

3) the reasons for and length of delay.

**Makah Order** at 10, citing **United States v. Oregon**, Supra. Courts have also considered whether any special or unique

10

factors weigh in favor of (or against) intervention, **Walker v. Jim Dandy Co.** 747 F. 2d 1360 (11th Cir. 1984), and the adequacy of current representation, **Alleghany Corp. v. Kirkby,** 344 F. 2d 571, 574 (2nd Cir. 1965), cert. dismd. 381 U.S. 933, reh. den. 384 U.S. 967 (1968).

Application of these standards support the intervention of the Colville Tribes as being timely.

### A. The Colville Tribes Seeks To Intervene In Order To Protect Its Treaty Rights Which Present Unique Circumstances That Support Intervention

Since 1968 this Court has attempted to first protect the treaty rights of tribes on the Columbia River from state interference, and more recently to provide a catalyst for cooperative management and enhancement. The protection of the Colville Tribes' treaty right to fish presents a special circumstance in support of intervention.

From time immemorial the treaty tribes of the Colville Tribes fished along the Columbia River and its tributaries. A full one-third of their diet derived from the salmon. **Colville Tribes v. Yakima Tribes,** Supra, No. 261-70, FF. 7(c), (July 27,1973).[3] The Colville experience is similar to that of other treaty tribes on the Columbia River.

---

[3] The dependency of tribes on salmon was not limited to tribes who signed treaties. The five non-treaty tribes confederated into the Colville Tribes also lived on the Columbia River and depended heavily on salmon for trade and subsistence.

11

The treaty fishing rights of the Colville Tribes continue today. Treaty rights can only be abrogated by clear act of Congress. **Menominee Tribe of Indians v. United States**, 391 U.S. 404, 413 (1968); Cohen, Felix, Handbook of Federal Indian Law, 1982 Ed., "Abrogation of Indian Hunting and Fishing Rights," pp. 467-470; Wilkinson, C. & J.M. Volkman, "Judicial Review of Indian Treaty Abrogation," 63 Cal. L. Rev. 601 (1975). See, also, **Kimball v. Callahan**, 493 F. 2d 564 (9th Cir. 1974); **United States v. Washington**, 520 F. 2d 676, 692-693 (9th Cir 1975).

The duty of the federal courts to protect treaty fishing rights is a strong reason to allow intervention. Because those rights cannot be lost through the passage of time, the failure of the Colville Tribes to intervene at an earlier stage cannot be used to accomplish the same result. **United States v. Oregon** is the legal proceeding within which the treaty rights of tribes who fish on the Columbia River are being implemented and protected. The Colville Tribes has a right to participate.

Should the Colville Tribes exercise its treaty rights outside the rules and orders established by this Court the likely result would be further disorder in the fishery and problems in developing cooperative management. Colville fishers would be subject to arrest with the possibility that inconsistent state court decisions would be entered. The Colville Tribes would be forced to make management decisions without knowledge of the rules in **United States v. Oregon**, which

12

could affect how decisions made within the case ultimately impact the resource.

The Colville Tribes would not have access to the data and, more importantly, the process by which needed management data is derived. It would, therefore, be forced to make decisions based on its own data or to blindly accept data that is developed without its input or participation. In short, the nature of the Colville Tribes' treaty claim is such that the failure to allow intervention could produce substantial disorder not only in this case but in the fishery itself. This result, the Colville Tribes seeks to avoid. The issue of timeliness is in part to be resolved by balancing the late intervention against such potential disorder. **Securities & Exchange Comm. v. Tipco, Inc.**, 554 F. 2d 710 (5th Cir. 1977).

B.    The Interests Of The Colville Tribes Are Not Presently Adequately Represented And Therefore Intervention Is Timely

The timeliness requirement is related to the question of whether the applicant's interests are being adequately represented. If representation by the current parties is inadequate, timeliness will not be a barrier to intervention. **Legal Aid Society of Alameda County v. Dunlap**, Supra, at 50.

The Colville Tribes has demonstrated that its interests can not be, indeed, have not been, protected by the current parties. The Colville Tribes has a substantial interest in this litigation. As a result, since its interests can not be

13

protected, intervention should be granted. <u>See</u>, Part III.C. <u>Infra.</u>

        C.   <u>The Intervention Of The Colville Tribes Will Not Prejudice The Rights Of Any Party To This Case</u>

Prejudice to the existing parties, including the delay that intervention might entail has been called the most important factor to be considered in determining timeliness. **U.S. v. Oregon**, <u>Supra</u>, at 552. **Hill v. Western Electric Co.**, 672 F. 2d 381, 386 (4th Cir. 1982), <u>cert</u>. <u>den</u>. 74 L. Ed. 2d 294. Indeed, when intervention is of right, prejudice has been held by some courts to be the only factor that may be considered. **McDonald v. E.J. Lavino Co.** 430 F. 2d 1065, 1073 (5th Cir. 1970).

There is nothing in the Colville Tribes' position to make it different than either the intervention of the State of Idaho or the Shoshone-Bannock Tribes.[4] The Court of Appeals for the Ninth Circuit, in considering the State of Idaho's appeal of the denial of its motion, stated:

> [The existing parties] do not suggest that their problems are materially different now than they would have been had Idaho sought to intervene a decade or more ago. We find no basis in the record for holding that the intervention would prejudice the existing

---

[4] The Colville Tribes believes that it is appropriate for the Court to consider the Colville Tribes in the same light as it considered the Shoshone-Bannock Tribe. The Colville Tribes would agree to a stipulation similar to that found at page 16 of the Management Plan. Such a stipulation assures that pre-existing parties to **U.S. v. Oregon** do not waive whatever claim they may have against the Colville Tribes, and the Colville Tribes does not waive its right to fully pursue its treaty fishery claims.

14

> parties because of the passage of time. We therefore conclude that Idaho's application should not have been denied as untimely. **U.S. v. Oregon**, 745 F. 2d 550, 553 (9th Cir. Oct. 16, 1984)

The Colville Tribes do not present any issues not already a part of this litigation.

Intervention will not affect the implementation of the Management Plan. The Plan is intended to be reviewed periodically to insure that its terms and implementation are consistent with the law and current need. Initial major review is scheduled to be completed by June 30, 1991, following yearly reviews. The inclusion of the Colville Tribes would not disrupt this process, but would be consistent with it.

There is no prejudice in fact to any of the parties. The Colville Tribes does not challenge the established law of the case that affects allocation between the states and tribes, nor the well-established principles circumscribing state authority over treaty fishing. With respect to the other tribes, the Colville Tribes merely wishes to exercise its treaty right alongside the other tribes with treaty rights how in the case. The assertion of such rights at any stage of the case cannot be considered prejudicial.

15

RESERVATION ATTORNEY
**CONFEDERATED TRIBES OF THE COLVILLE RESERVATION**
P. O. Box 150
Nespelem, Washington 99155
(509) 634-4711

D.    <u>Intervention at this Stage of the Proceeding is
      Appropriate</u>

It can be fairly stated that **U.S. v. Oregon** is and has been in a constant state of change. With the development of the Management Plan a new aspect of the continuing jurisdiction of the Court begins. The Colville Tribes' intervention now is appropriate.

The Colville Tribes does not oppose or challenge the Management Plan. It does not challenge the legal decisions made by this Court. The first year in which the Plan is to be implemented is 1989. Issues that may (but not necessarily) arise dealing with harvest management, enhancement allocation and so forth can be resolved pursuant to the procedures established in the Management Plan. Parties will not have to construct another set of procedures to accommodate the Colville Tribes.

The Colville Tribes has demonstrated its commitment to the principles of the Management Plan. Even before intervening the Colville Tribes has gone to great lengths to meet with the existing parties and explain its desire and purpose to enter **U.S. v. Oregon**. A partial list of those meetings is attached as **Exhibit 4**. The Management Plan encourages the resolution of issues between the parties through negotiation. While not resolving all matters with respect to this intervention, the Colville Tribes' actions to meet with all parties is evidence of its commitment to the principles of the Plan.

16

In considering the timeliness of an application to intervene, whether granting the application will delay completion of the case is relevant. This proceeding is not a "traditional" case. For many years it has proceeded pursuant to its continuing jurisdiction. It is unlikely that the intervention of the Colville Tribes will delay the termination of the case. **Carter v. School Board of West Feliciana Parish**, 569 F. Supp. 568 (D.C. La 1983).

Both the State of Idaho and the Shoshone-Bannock have been permitted to intervene at very late dates, and timeliness was not as important a consideration in their applications as were their equities. The issues confronting the Court and parties have not changed since those interventions were allowed. The Colville application should also be approved.

E.    Under the Circumstances Presented by this Application the Delay in Intervening was Justified

The Colville Tribes is uniquely situated in a disfavored position on the Columbia River. In 1968 when this case was brought to correct state interference with lower river fishing there were few harvestable fish returning to the fishing sites closest to the Colville Reservation and the aboriginal ter-

17

ritories of the treaty tribes confederated in the Colville Tribes.[5]

The lack of harvestable fish was caused by several factors all coming together to adversely affect the Colville Tribes. Past and present management policies of both the federal and state governments adversely affected the upriver fishery resource. More importantly, however, was the building of the many dams along the Columbia. Between the mouth of the Columbia River and the Colville Reservation there are eleven major dams, including Chief Joseph and Grand Coulee Dams which the United States saw fit to place on the Colville Reservation.

When asked why the Colville Tribes was not a party in 1968, the simple and sad answer was that in 1968 the Colville Tribes had no practical interest to assert or protect. With its limited resources intervention in 1968 would have been expensive and largely academic.

The Colville Tribes took another tack. The Colville Tribes committed its limited resources to change history and move toward rehabilitating the upper Columbia fish runs. The Colville Tribes joined with other parties interested in the rehabilitation of the natural habitat, and the enhancement of the fishery resource. A partial list of these activities is

_____

[5] The usual and accustomed fishing sites of the Colville Tribes extended beyond those rivers on which the tribes had permanent villages. However, because of their movement to the Colville Reservation, fishing in those areas is today most important.

18

attached as **Exhibit 5.**

The efforts of the Colville Tribes as well as others is now bearing fruit. Chinook Salmon are returning to and above Priest Rapids Dam in harvestable numbers. Steelhead and Sockeye Salmon are also showing strength. It is likely that this trend will continue and gather force as a result of the Northwest Power Planning Council's involvement and the commitment to enhancement in the Management Plan approved by this Court.

With fish returning to the upper river, the Colville Tribes is in a meaningful position for the first time in decades to exercise its treaty fishing right. Appropriately, the Colville Tribes is now moving to intervene. In preparation the Colville Tribes has expanded its Fish and Wildlife Department to take on the duties of participating in the management of its off-reservation fisheries. It is in the process of modernizing its Fish and wildlife Code to be consistent with the procedures mandated by this Court.

These activities in preparation of not only intervening in this case but assuming its co-management responsibilities have taken time. The Colville Tribes has not received any assistance from the United States.

In Conclusion, the Colville Tribes is intervening at a time when its practical participation in this case is meaningful, and after the Colville Tribes has worked diligently to make it so. The Colville Tribes is now in a position to exercise its rights and to participate fully in the management

19

RESERVATION ATTORNEY
**CONFEDERATED TRIBES OF THE COLVILLE RESERVATION**
P. O. Box 150
Nespelem, Washington 99155
(509) 634-4711

of the fishery.  The Colville Tribes is intervening at exactly the time that in light of its history it should.

III.  THE ADDITIONAL LEGAL STANDARDS AS APPLIED IN THIS CASE FAVOR GRANTING THE APPLICATION OF THE COLVILLE TRIBES.

A.  The Colville Tribes Has A Substantial Interest In The Subject Matter Of This Litigation

The "interest test" is a practical guide to resolving lawsuits with as many concerned parties as would be consistent with due process. See, **U.S. v. Oregon,** (Makah Intervention) Slip Op. at 13 (hereinafter **Makah Order**), **City of Fresno v. Andrus,** 622 F. 2d 436, 438 (9th Cir. 1980), **Nuesse v. Camp,** 385 F. 2d 694, 700 (10th Cir. 1967).

The interest of the Colville Tribes in this case is exactly the same as each other tribe that has been allowed to intervene. The Colville Tribes seeks to exercise its treaty right to fish off reservation on the Columbia River and its tributaries free from state interference.  The Colville Tribes also seeks to participate in the co-management of the fishery resource of the Columbia system.

The scope of this case was most recently defined in the order denying the Makah tribe intervention. There this Court said the purpose of the case was to define the treaty rights of tribes to take fish on the Columbia and the extent of permissible State interference. **Makah Order** at 14.  The Colville Tribe seeks similar protection and relief.

20

The recently approved Management Plan has, as a primary purpose the rehabilitation of the fishery resource, and its cooperative management. This purpose, again, is a central reason for the Colville Tribes' intervention. The Colville Tribes agrees with this Court that when determining whether an applicant for intervention has an interest in this proceeding an appropriate place to cut off the right to intervene is the mouth of the Columbia River. Id. at 15.

Importantly, the Colville Tribes' right to fish off reservation derives from treaties already before the Court. The Court is not being asked to consider a new treaty. The intervention of the Colville Tribe will not expand the scope of this litigation, but will involve issues and areas traditionally dealt with by this Court.

The Colville Tribes' interest is practical as well as legal. This interest was brought into sharp focus by the Management Plan. System-wide management, a goal of the Management Plan, is impossible without taking into account the Colville Tribes. That cannot be done without the participation of the Colville Tribes.[6]

The Plan includes a procedure for developing sub-basin plans and for sub-basin planning. Three of the rivers included in that process, the Wenatchee, Entiat, and Methow, are within

---

[6] This is not an on-reservation fishing case, but the Court should not lose sight of the fact that the Colville Reservation is located on the upper Columbia River and one of the Columbia's major tributaries, the Okanogan.

21

RESERVATION ATTORNEY
**CONFEDERATED TRIBES OF THE COLVILLE RESERVATION**
P. O. Box 150
Nespelem, Washington 99155
(509) 634-4711

the aboriginal home territory of the treaty tribes confederated into the Colville Tribes. (See, **Exhibit 1**) Moreover, sub-basin planning extends all the way to the Chief Joseph Dam, which is located on the Colville Reservation. See, Management Plan at 43. Participation in the sub-basin planning process by the Colville Tribes is obviously not only important to the Colville Tribes, but is also important in developing a full and complete planning process.

The Management Plan specifically addresses artificial and natural production. See, Management Plan at 40. The Colville Tribes has been intimately involved in the development of major artificial and natural production programs throughout the Columbia Basin. (See, Part II.E, Supra.) The Colville Tribes' participation is important to provide to the Court and the other parties an opportunity to manage fully the entire reach of the Columbia River and its tributaries.

Finally, the interest of the Colville Tribes is made clear through a study of the geography involved. The Colville Reservation is located in the upper reaches of the Columbia River. The primary homelands of four of the six treaty tribes confederated into the Colville Tribes is in the Upper Columbia area (See, **Exhibit 1**).[7] As a result the Colville Tribes has a special interest in how the lower fishery resource is managed

---

[7] Of course, the definition of the primary homelands of these tribes does not necessarily disclose the extent of their usual and accustomed fishery sites.

22

RESERVATION ATTORNEY
**CONFEDERATED TRIBES OF THE COLVILLE RESERVATION**
P. O. Box 150
Nespelem, Washington 99155
(509) 634-4711

and harvested.

The Colville Tribes' interest is substantial, and parallel with the interests of the other intervenor tribes.

> B. The Ability Of The Colville Tribes To Protect Its Treaty Fishing Right Will Be Impaired By Disposition Of This Action

In determining whether the disposition of this case will impair the rights of the Colville Tribes the Court must apply a practical rather than a legal test.

> "The Rule is satisfied whenever disposition of the present action would put the applicant at a practical disadvantage in protecting his interest."

Wright and Miller _Supra_, at section 1908.

There can be no doubt that this rule is satisfied. Colville tribal fishers will be subject to arrest by the State of Washington without protection from this Court. The Colville Tribes is not presently a party to any other proceeding where its rights could be protected or that is currently dealing with similar issues.

Since the Colville Tribes is an upriver Tribe, its interests are greatly jeopardized by the downriver management of the resource. It does the Colville Tribes little good to manage a fishery upriver when the implementation of procedures mandated by this Court will affect whether enough fish are going to be allowed to migrate upriver to maintain a run and provide

23

a fishery. This is a problem similar to that faced by the Shoshone-Bannock Tribes.[8]

If the Colville Tribes are not permitted to intervene in this litigation, it is likely that its reserved treaty right to fish will be effectively qualified by management decisions and fishing regulations of the present parties, all located downstream from the Colville Tribes acting pursuant to the procedures and orders of this Court. Denial of intervention to the Colville Tribes would, therefore, impair or impede the ability of the Colville Tribes to protect their its fishing right.

### C. The Colville Tribes' Interest is not Adequately Represented by Other Parties

When evaluating whether existing parties can adequately represent the interests of the Colville Tribes, the Court must consider the fact that the Colville Tribes has an independent right to represent its own interests. The Colville Tribes seeks to protect its treaty right to fish off reservation. This Court has already established that tribes may intervene to protect those interests. This principle has been followed in other proceedings. See, **State of New Mexico v. Aamoldt**, 537 F. 2d

_____

[8] To the extent that both the Colville and Shoshone Bannock Tribes are located in upper parts of the Columbia Basin their interests are similar. However, the Colville Tribes does not oppose the Management Plan. Rather, the Colville Tribes intends, if necessary, to use the mechanisms and review opportunities of the Plan to address technical and policy problems that may arise in the future.

24

1102, 1107 (10th Cir. 1976); **United States v. Washington** 384 F. Supp. 312, 328 (W.D. Wn. 1974).

As a general rule the burden of showing that existing parties do not adequately represent an intervening party is minimal. If an intervenor shows that representation of its interests "may be" inadequate this portion of the rule is met. **Sagebrush Rebellion, Inc. v. Watt,** 713 F. 2d 525, 528 (9th Cir. 1983); **U.S. v. Spring Fellow,** 783 F. 2d 821, 827 (9th Cir. 1986). A court will examine whether an existing party will undoubtedly make all of the arguments that an intervenor would make. **In re Benny,** 791 F. 2d 712, 721 (9th Cir. 1986).

Tribes already a party to this proceeding cannot represent the interests of the Colville Tribes. Though their right stems from the same treaties, those fishing areas lying closest to the current home of the Colville Tribes lie upstream from the areas that have been most heavily exploited by the tribes now party to the case. Therefore, the Colville Tribes will have different interests in seeing fish in harvestable numbers return to the upper river.

Moreover, tribes party to this proceeding have no standing to represent the sovereign interests of the Colville Tribes. The inability of the existing tribes to represent the Colville interests is brought home by the fact that in developing the Management Plan, the fact that the Colville Reservation was located up stream and will be impacted by the Plan was not brought to the Court's attention.

25

The actions of tribes party to this case not to represent the interests of the Colville Tribes certainly cannot be deemed irresponsible.   Those tribes are responsible to their own members, and it would not necessarily be in their best interests to consider the treaty fishing right of the upstream Colville Tribes when allocating and managing the Columbia River fishery.

The United States, as trustee for all Indian Tribes, sometimes represents the interests of Indian tribes.  (See, 25 U.S.C. 175)  In this case the United States, although bound by its trust duty to protect the interests of the Colville Tribes, has not done so.  The Colville Tribes expects that with this intervention the United States will adjust its position in this regard.  However, support of the Colville Tribes by the United States does not affect the right of the Colville Tribes to represent its own interest. **Jicarilla Apache Tribe v. U.S.**, 601 F. 2d 1116, 1125 (10th Cir. 1979); See, also, **Candelaria v. U.S.**, 271 U.S. 432 (1926).

The interests of the Colville Tribes have not been considered in the past, and will not be considered in the future by the present parties to this litigation.  The Colville Tribes alone must advocate the protection of its treaty fishing rights.

IV.  COMPARING THE DECISIONS IN THE MAKAH, AND IDAHO INTERVENTIONS SUPPORTS THE COLVILLE TRIBES' INTERVENTION

A comparison of the decisions dealing with the **Idaho**, and **Makah** interventions supports the Colville Tribes' Application

26

to Intervene.   Idaho's application was ultimately approved by the Court of Appeals, while this Court denied the application of the Makah Tribe.

The Colville Tribes' application has much in common with the State of Idaho's application.   Both have interests in the Columbia River and its tributaries.   Each is substantially affected by the management decisions made in the lower river. Neither sought to expand the scope of the case to directly deal with areas outside of the Columbia River Basin.   The State of Idaho has management interests in the Columbia River and its tributaries.   The Colville Tribes not only has a management interest in the Columbia River, but actually asserts the right to fish on the Columbia River, similar to all other parties in this litigation.

Neither the Colville Tribes nor the State of Idaho is a party to any other proceeding in which their rights on the Columbia River are being addressed.   The State of Idaho intervened, in part, to participate in the negotiations of the Management Plan and its subsequent implementation. The Colville Tribes is intervening in order to participate in the implementation of that Plan without challenging the Plan or any of its procedures.

The situation with the Makah Tribe was entirely different. It did not claim any fishing rights on the Columbia River or its tributaries.   The Makah Tribe's primary treaty fishing rights were and continue to be adjudicated within the ongoing case of

27

**United States v. Washington**, a case such as this that is in its continuing jurisdiction and implementation stages. Finally, the Makah Tribe intervened for the purpose of opposing the Management Plan which had been negotiated between the parties in this litigation.

In short, the Makah Tribe had no direct interest in or right to fish on the Columbia River, but sought to expand the scope of this litigation to address concerns. It opposed plans which had been in negotiations for several years, raising the specter of further disruption, or the delay in implementing the Plan, and its interests were being fully protected in ongoing litigation. Conversely, the Colville Tribes does not oppose the Management Plan but seeks to work for its full implementation, asserts rights on the Columbia River and is not participating nor have its rights been adjudicated in any other proceeding.

## CONCLUSION

The Colville Tribes respectfully ask this Court to grant its motion to intervene as a Plaintiff in this litigation.

RESPECTFULLY submitted this 22nd day of February, 1989.

Alan C. Stay
Reservation Attorney

28

23 Ind. Cl. Comm. 39                                                69

IT IS THEREFORE ORDERED that the "Stipulation for Entry of Final Judgment" entered into by the parties herein is hereby approved; that the joint motion of the parties for the entry of final judgment on the claim for an accounting for the period extending to and including June 30, 1951, be, and hereby is, granted; that the plaintiffs and the intervenor shall jointly recover from the defendant the sum of $1,119,071.78; and accordingly that judgment be, and is hereby entered on said claim in favor of the plaintiffs and the intervenor against the defendant for said sum of $1,119,071.78; and

IT IS FURTHER ORDERED that the claim of the intervenor, the Nez Perce Tribe of Indians of the Nez Perce Reservation, Idaho, for an accounting for the period from and after July 1, 1951, shall be severed from Docket No. 179 and presented in a separate docket, designated as Docket No. 179-A; and for said purpose, the Commission, as of the date of this order, hereby accepts for filing as a petition in Docket No. 179-A the petition heretofore filed in Docket No. 179 on March 13, 1969, by the Nez Perce Tribe of Indians of the Nez Perce Reservation, Idaho, insofar as and solely to the extent that said petition asserts a claim for an accounting for the period from and after July 1, 1951.

Dated at Washington, D. C., this 29th day of April, 1970.

Jerome K. Kuykendall, Chairman

John T. Vance, Commissioner


Richard W. Yarborough, Commissioner

Margaret H. Pierce, Commissioner

Brantley Blue, Commissioner

LAW LIBRARY

JUN 2 - 1970

UNIVERSITY OF
WASHINGTON

EXHIBIT 4

## SCHEDULE OF ACTIVITIES

The following activities were intended to (1) advise the United States and other parties of the Colville Tribes' intention to exercise its treaty rights; (2) inform the United States as trustee of the Tribes' intentions and need for assistance; (3) begin the process of integration into the co-management of the fishery resource; and (4) to explain to all parties the Colville Tribes' intentions, the essence of its rights, and to explore ways of accommodating the Colville Tribes in **United States v. Oregon.**

1.   October 29, 1987, meeting with George Dysart, Vern Peterson in Portland, Oregon, to lay out legal and factual case.

2.   Meeting with the representatives of the Yakima Nation to explain the Colville Tribes' intentions and to seek agreement.

   a.   January 27, 1988, at Yakima, Washington

   b.   March 2, 1988, at Portland, Oregon

   c.   May 16, 1988, at Colville Reservation

3.   June 17, 1988, brief meeting in Spokane, Washington, with attorneys for the State of Washington to explain Colville Tribes' case.

4.   July 13, 1988, meeting in Olympia, Washington, with senior officials and attorneys with the Washington State Department of Fisheries to consider Colville Tribes' off-reservation fishing.

5.   July 21, 1988, meeting with the Columbia River Intertribal Fish Commission to explain Colville Tribes' case.

6.   Requests for United States' assistance:

   a.   October 30, 1987, letter to Area Director

   b.   July 14, 1988, letter from Agency to Area Director

   c.   September 22, 1988, letter from Tribes to Solicitor

   d.   September 27, 1988, letter from Tribes to Area Director and Agency

   e.   October 30, 1988, letter from Tribes to Solicitor and U.S. Attorney

7.  October 5, 1988, meeting with representatives of the Nez Perce

8.  October 6, 1988, meeting with Columbia River Intertribal Fish Commission in Kalispel, Montana

9.  December 21, 1988, meeting at Umatilla Reservation with Umatilla Council members to explain Colville Tribes' case.

10. December 22, 1988, meeting with Warm Springs Reservation with Warm Springs Council members to explain Colville Tribes' case.

11. January 5, 1989, meeting in Spokane, Washington, with Yakima Nation representatives primarily with Fish Committee to explain Colville Tribes' case.

12. February 9, 1989, meeting at the Yakima Reservation with members of the Yakima Council and Fish Committee to explain Colville Tribes' case.



COLVILLE TRIBAL COMMITMENT TO THE FISHERY RESOURCE

The activities described below are aimed at improving and protecting the fish habitat and meeting the goal of returning fish in harvestable numbers to those areas of the Columbia River above Priest Rapids Dam and to the Hanford Reach. The Upper-Columbia River holds special importance to the Colville Tribes owing to its closeness to the Colville Reservation and to the home aboriginal territories of the treaty tribes confederated into the Colville Tribes. The protection and the enhancement of the fishery there has been a key concern of the Colville Tribes.

1.   Mid-Columbia Proceeding:

The Colville Tribes intervened in the Mid-Columbia proceeding in 1980. That proceeding  is intended to force Public Utility Districts that operate Dams on the Columbia River to (1) provide adequate bypass mechanisms to allow safe passage of the fish, and (2) provide mitigation for unavoidable fish losses at the projects. The proceedings described below are all part of the Mid-Columbia case.

(a)  **Rock Island Project:**  Litigation brought by the Colville, other Indian tribes and fishery agencies in 1986 resulted in a favorable decision.  As a result of that decision the project entered into a settlement to provide bypass and extensive hatchery mitigation.

(b)  **Wells Dam Settlement:**  Based on the success of the Rock Island litigation other Public Utility District's have entered the final stages of settlement negotiations.  The parties are close to final settlement on a bypass and mitigation package. The major issue remaining relates to the P.U.D.'s obtaining of the necessary water rights.

(c)  **Grant County P.U.D.:**  Talks have begun to negotiate a similar settlement at Priest Rapids and Wanapum Dams.  Negotiations, if history is a judge, should take some time to complete.

All settlements thus far reached have resulted in the provision of extensive mitigation, all of which has been placed in the Upper-Columbia Basin. This result was the prime goal of the Colville participation in the Mid-Columbia proceeding. For the first time there is a universal commitment to rehabilitate upriver stocks coupled with a plan designed to actually increase the numbers of fish available in the upper reaches of the river.

2.   Spill Agreement:

Certain tribes and fisheries parties brought action against the B.P.A in order to stop construction of a new power line to California (The Colville Tribes was not a part to the litigation). Although the case was not successful it did stimulate negotiations with B.P.A and other utilities. The Colville Tribes joined in these negotiations in 1987 and has been a major player in efforts to force the Corps of Engineers, Bonneville Power Administration and the private utilities to provide adequate fish protection at Corps of Engineers projects on the lower Snake and Columbia Rivers. A key participant in the negotiation has been the B.P.A. since its demand for power generation has a major effect on the availability of water for fish passage. Negotiations have been ongoing for over one year. Settlement was reached with B.P.A. The settlement will require Bonneville to structure its marketing of power so that there will be sufficient water to spill at each of the Corps projects to pass fish safely over the dams. Because of technical difficulties with some parties the agreement was not made a permanent amendment to the Fish & Wildlife Program of the Northwest Power Planning Council. However, the essence of the settlement was made a part of the Fish & Wildlife Program for 1989, with all parties confident that it will be made permanent in the future.

3.   Vernita Bar:

The Colville Tribes participated in the separate efforts to provide fish protection at Vernita Bar located just below Priest

Rapids Dam. Vernita Bar is a very important chinook spawning area. To protect that spawning area upriver PUD's and Bonneville needed to adjust the flow of water at critical times. The goal was to insure that at all times there was sufficient water to meet the needs of the fish. Settlement was reached after long negotiations that provide fish protection.

4.    Enloe Dam:

The Colville Tribes was party to the separate FERC proceedings addressing Enloe Dam and its relicensing. The Colville Tribes has opposed relicensing and supported the need to have fish passage in order to open the Similkameen River to fish production. The FERC has dismissed the Okanogan County PUD's application, but the PUD has refiled an application for a preliminary permit.

The Enloe project presented special concerns for the Colville Tribes. Canadian Indians have strong feelings about fish enhancement on the Similkameen River. Cultural and religious issues are also involved. As a result Colville council members and staff have met and will continue to meet with the Canadian Indians to insure compatibility at any project finally allowed.

5.    Tribal Hatchery:

The Colville Tribes was successful in 1984 getting the Northwest Power Planning Council to approve the development and construction of a new fish hatchery on the Colville Indian Reservation. Bonneville will fund all aspects of the project. Today, the construction of the well field is completed and the main construction is underway. Operation is scheduled for fall, 1989.

The Colville Hatchery is the first Bonneville Power-funded hatchery that has been totally designed, constructed, and will be operated by an Indian tribe. The Hatchery is also owned by the Tribes, also a first. Moreover, while initially scheduled to produce trout for reservation lakes, it is situated and has been

3

designed so that it can be expanded to eventually produce salmon as part of the total Columbia River enhancement project.

6.    Lake Roosevelt Enhancement:

The major blow to the Colville Indian Reservation fishery and to the overall reduction of salmon in the Columbia River was the construction of Grand Coulee Dam.  To in part mitigate for that loss, the Tribes has been a lead party in persuading the Northwest Power Planning Council and Bonneville to develop at least two hatcheries that will provide resident fish in Lake Roosevelt behind Grand Coulee Dam.

The action of the Planning Council caps a three year effort of the Colville Tribes and other up river fishery interests.

7.    Sub-Basin Planning:

The Colville Tribes has taken an active role in the Northwest Power Planning Council's sub-basin planning process.  As part of the process Colville fishery experts are in the process of assessing the health of the stocks in the Upper-Columbia River (above Priest Rapids Dam) and defining strategies for fish enhancement and harvest.  The Tribes has also taken an active role in the Power Council's Protected Area program.  This expertise will fit well with the sub-basin planning mandated by the Court in the Management Plan.

8.    B.P.A. Rate Hearings:

The Colville Tribes has taken, and intends to take in the future, an active role in rate hearings to insure that power sales do not result in adverse impacts on the fish resource.  The Colville Tribes specifically argued that the Fish Protection and Mitigation Budgets should not be reduced.

These activities represent just some of the efforts that the Colville Tribes has been involved.  Each is designed to accomplish

4

a single uniform goal:  increase the numbers of fish available in the Upper-Columbia River system.  The Tribes' commitment has been substantial in terms of both time and personnel.

As stated above, the Colville Tribes made a commitment to first insure the proper protection and enhancement of the resource, and its return to the Colville fishery areas before addressing the issue of Colville harvest.  Now it appears those efforts are bearing fruit.  It is time for the first time in years to once again think of the harvest of returning salmon.

## EXHIBIT LIST

1.   Map

2.   204 Court of Claims 868 (1974)

3.   23 Indian Claims Commission 39 (1970)

4.   Pre-filing Meetings with Parties

5.   Enhancement Activities



Territory identified is as pictured in the Court of Claims. It does not necessarily represent the extent of usual and accustomed fishing sites of any of the tribes.

EXHIBIT 1

## LEGEND:

### COLUMBIA RIVER DAMS

Ⓐ BONNEVILLE DAM
Ⓑ THE DALLES DAM
Ⓒ JOHN DAY DAM
Ⓓ McNARY DAM
Ⓔ PRIEST RAPIDS DAM
Ⓕ WANAPUM DAM
Ⓖ ROCK ISLAND DAM
Ⓗ ROCKY REACH DAM
Ⓘ WELLS DAM ( AZWELL )
Ⓙ CHIEF JOSEPH DAM
Ⓚ GRAND COULEE DAM

868                                    ORDERS                          204 Ct. Cl.

board's decision was not arbitrary, capricious or an abuse of discretion; and that none of the claims of the patents are infringed and all but claims 11–15 and 20 of patent 3,231,219 and claim 23 of patent 3,416,750 are invalid. This case came before the court, having been submitted on the briefs without oral argument, on plaintiff's exceptions to the recommended decision. Upon consideration thereof, since the court agrees with the said decision, the court on April 24, 1974, by order, affirmed and adopted the said decision as the basis for its judgment in this case, concluded that plaintiff is not entitled to recover and dismissed the petition. Plaintiff's motion for rehearing was denied May 31, 1974. On August 12, 1974 plaintiff filed a petition for *certiorari*.

---

No. 261–70.    APRIL 24, 1974

The Confederated Tribes of the Colville Reservation, in its own behalf and as the representative of its constituent tribal groups, and acting through the chairman of the business council

v.

The Yakima Tribes of Indians of the Yakima Reservation, in its own behalf and as the representative of its constituent tribal groups, and acting through the chairman of its tribal council

*Indian claims; special jurisdictional act; competing claims to shares of the additional compensation awarded by the Indian Claims Commission for Indian lands ceded to the United States by the Yakima Treaty.*—Jurisdiction in this case is conferred by special legislation, Pub. L. No. 90–278, March 30, 1968, that authorizes the court to adjudicate competing claims to shares of the additional compensation awarded by the Indian Claims Commission for Indian lands ceded to the United States by the Treaty of June 9, 1855, the "Yakima Treaty." On July 27, 1973 Trial Judge Harkins filed a recommended decision, and on April 24, 1974 the court issued the following order:

Before DAVIS, *Judge*, Presiding, LARAMORE, *Senior Judge*, and KASHIWA, *Judge*.

n abuse of
nts are in-
t 3,231,219
case came
riefs with-
he recom-
e the court
4, 1974, by
le basis for
f is not en-
iff's motion
1st 12, 1974

ation, in its
constituent
nan of the

Reservation,
its constitu-
irman of its

*ing claims
* by the In-
*the United
his case is
278. March
competing
awarded by
ded to the
"Yakima
iled a rec-
ourt issued

*ior Judge,*

"This case comes before the court on exceptions, filed December 7, 1973, of the Yakima Tribes of Indians to the recommended decision, filed July 27, 1973, by Trial Judge Kenneth Harkins, pursuant to Rule 134(h). The case has been submitted on the briefs and oral argument of counsel.

"The court agrees with and adopts the trial judge's opinion, findings, and recommended conclusion of law, copies of which have been furnished to the parties, but there are two points stressed by defendant at oral argument which call for some additional comment. Defendant says first that, even if there is a determination that division on an acreage basis is appropriate, the parties agreed during pretrial proceedings that issues as to the amount of the division were to be left for later determination, and accordingly that there must be further proceedings before a final decision can be made. The court agrees, however, with the trial judge that nothing remains to be tried. The percentage figures adopted by the trial judge are not contested by defendant and it does not ask for further proceedings with respect to those percentages. The two reasons given for further proceedings are that (i) the lands were all valued uniformly at 50 cents per acre although the lands ceded by the tribes represented by defendant are said to have had the more valuable acreage, and (ii) there are descendants of the Entiat, Chelan, Columbia, Wenatchi and Palus tribes on the Yakima Reservation who are entitled to share in the plaintiff's award and therefore proceedings are necessary to determine the interest of such descendants in the 50.37 percentum awarded to plaintiff. Neither ground for further proceedings has merit.

"As for the first reason, defendant stipulated in the proceedings before the Indian Claims Commission that each of the tracts ceded by the 11 land-owning tribes, including those ceded by the tribes represented by defendant, was worth 50 cents an acre; this stipulation, deliberately entered into, bars the current effort to assert that some of the areas were worth more. The second ground for further proceedings is precluded by the trial judge's opinion and findings, which we adopt, taken together with pertinent findings of the Indian Claims Commission. Our decision is that the award (plus interest) should be divided on the basis of the acreage ceded

by the 11 tribes that held Indian title to the lands acquired. These 11 tribes included the Entiat, Columbia, Chelan, Wenatchi and Palus. Combining the trial judge's findings (fdgs. 7(1), 10, 11) with the Commission's findings (7 Ind. Cl. Comm. at 804 (fdgs. 16, 18); 12 Ind. Cl. Comm. at 301–02, 302 (fdg. 19)) we conclude that it is clear that plaintiff, not defendant, represents the interests of those particular groups. Although defendant may have some members who are descendants of the same original groups, the claim is a group claim and the present tribal representative, if there is one, normally obtains the award. *Cf. Minnesota Chippewa Tribe* v. *United States*, 161 Ct. Cl. 258, 270–71, 315 F. 2d. 906, 913–14 (1963); *Red Lake and Pembina Bands* v. *United States*, 164 Ct. Cl. 389, 399 (1964); same case, 173 Ct. Cl. 928, 942–43, 355 F. 2d 936, 944 (1965). Those individual descendants of the named groups who live on the Yakima Reservation are now members of defendant or its constituent tribal groups and will benefit from the award to defendant. Justice and fairness do not require us to disregard the group nature of the claim, and the status of plaintiff as the current tribal representative of the five named groups, so as to increase defendant's award because its membership happens to include a number of descendants of Indians who belonged to the groups now represented by plaintiff.

"With respect to the merits of the acreage division, the point emphasized by defendant is that the plaintiff and the court are estopped by the holding of the Indian Claims Commission that under the Yakima Treaty the Yakima Nation, not the original landholding tribal entities, was to receive the consideration for the cession, as well as by the Commission's direction that the award was "for the benefit of the Yakima Nation as it was created by the Yakima Treaty of June 9, 1855." We agree with what the trial judge has written on this point. In addition, we note that Congress would be free to divide this award on any reasonable basis it chose including an acreage division (*see, e.g., Red Lake and Pembina Bands* v. *United States, supra; Cherokee Freedmen* v. *United States*, 195 Ct. Cl. 39 (1971)), and under the jurisdictional act this court is the delegate of Congress, standing in its shoes. The jurisdictional statute does not limit our delegated authority

nds acquired.
nbia, Chelan,
lge's findings
dings (7 Ind.
am. at 301–02,
plaintiff, not
icular groups.
who are de-
im is a group
there is one,
*ippewa Tribe*
d. 906, 913–14
*ed States*, 164
i. 928, 942–43,
escendants of
servation are
tribal groups
Justice and
oup nature of
ent tribal rep-
increase de-
ns to include a
to the groups

division, the
intiff and the
Claims Com-
kima Nation,
o receive the
Commission's
the Yakima
ty of June 9,
ritten on this
ild be free to
se including
ubina Bands
'nited States,
ional act this
its shoes. The
ted authority

except to provide that division of the funds is to be "just and fair in law and equity." The trial judge's holding was, and our holding is, that the acreage division is "just and fair", taking into account both the record before and the determination of the Indian Claims Commission and the record made in this court.

"IT IS THEREFORE ORDERED that the net judgment award which is on deposit in the Treasury of the United States to pay a judgment of the Indian Claims Commission dated April 5, 1965, in dockets numbered 161, 222, and 224, and the interest on said award, should be divided on the basis of the acreage ceded by the 11 tribes that held Indian title to the lands acquired. The plaintiff, Confederated Tribes of the Colville Reservation and its constituent tribal groups, is awarded 50.37 per centum of said award and interest thereon, and the defendant, Yakima Tribes of Indians of the Yakima Reservation and its constituent tribal groups, is awarded 49.63 per centum of said award and interest thereon."

On May 8, 1974 the Yakima Tribes of Indians of the Yakima Reservation filed a motion for rehearing and suggestion of rehearing *en banc* which was denied by the court on May 31, 1974. On August 19, 1974 the said Yakima Tribes of Indians filed a petition for *certiorari*.

---

## No. 1–71.    APRIL 24, 1974

### Tecon Corporation

*Contracts; inadequacy of administrative findings for judicial review; remand to Board.*—Plaintiff seeks Wunderlich Act review of a decision of the Corps of Engineers Board of Contract Appeals denying plaintiff's claim for an equitable adjustment under the changed conditions clause of its contract for dredging certain rock shoals and wrecks in Pelee Passage in Lake Erie. During performance plaintiff alleges it encountered a changed condition in that rock was found at elevations above those shown on the Government-furnished drawings and that substantially more rock was removed than was estimated or indicated by the drawings and specifications. No inspection by plaintiff of the site was possible because of weather conditions. In a recommended decision filed

EXHIBIT 3

23 Ind. Cl. C    39

39

## BEFORE THE INDIAN CLAIMS COMMISSION

THE CONFEDERATED TRIBES OF THE COLVILLE
   RESERVATION as the representative of the
   JOSEPH BAND OF THE NEZ PERCE TRIBE,         )

CHARLES E. WILLIAMS, JOSEPH REDTHUNDER AND   )
   HARRY OWHI, as the representatives of
   the JOSEPH BAND OF THE NEZ PERCE TRIBE,     )

THE CONFEDERATED TRIBES OF THE COLVILLE
   RESERVATION, as successor to the claims
   of the JOSEPH BAND OF THE NEZ PERCE TRIBE,  )

                        Plaintiffs,  )

     v.                         )

THE UNITED STATES OF AMERICA,          )    Docket No. 179

                      Defendant,  )

THE NEZ PERCE TRIBE OF INDIANS OF THE
   NEZ PERCE RESERVATION, IDAHO,        )

                      Intervenor.  )

Decided:  April 29, 1970

Appearances:  I.S. Weissbrodt, Attorney for the
              plaintiffs in Docket No. 179.

              Angelo A. Iadarola, Attorney for the
              intervenor in Docket No. 179.

              John D. Sullivan, with whom was
              Mr. Assistant Attorney General
              Shiro Kashiwa, Attorneys for the
              defendant.

## OPINION OF THE COMMISSION

Per Curiam:

The petition in this case was filed before the Commission on
July 16, 1951, by the Confederated Tribes of the Colville Reservation
as the representative of the Joseph Band of the Nez Perce Tribe, and

23 Ind. Cl. Comm. 39                                                    40

by certain named individuals.  Plaintiff has among its members

descendants of the Joseph Band of the Nez Perce Tribe.  The claim

arises under section 2, clause 2 of the Indian Claims Commission Act

(60 Stat. 1049, 1050) and is for a general accounting by the defendant

of its administration and management of the lands, funds and other

property which the defendant held in trust for the Nez Perce Tribe

including the Joseph Band of that tribe.

On February 16, 1968, the defendant filed its accounting in

this claim which included an accounting of the lands, funds and

other property of the Nez Perce Tribe of Idaho as well as the lands,

funds and other property of the Joseph Band of the Nez Perce Tribe.

The Nez Perce Tribe of Idaho filed a motion to intervene in this

claim on November 5, 1968.  The Commission granted this motion and

allowed the Nez Perce Tribe of Idaho to intervene as a party

plaintiff in this claim on February 26, 1969.

Subsequently, counsel for the government, plaintiffs and

intervenor entered into negotiations for the settlement of this

claim.

On March 13, 1970, the plaintiffs, the Confederated Tribes of the

Colville Reservation as the Representative of the Joseph Band of the

Nez Perce Tribe, et al., the intervenor, the Nez Perce Tribe of Idaho,

and the defendant, filed a joint motion in Docket No. 179 for approval

of a proposed compromise settlement.  A "Stipulation for Entry of Final

Judgment" was attached to the motion and filed with the Commission at

23 Ind. Cl. Comm. 39

41

the same time. This stipulation sets forth the terms and conditions of the proposed settlement in the above docket.

The stipulation was executed on behalf of the plaintiffs by their attorney of record, I. S. Weissbrodt, on behalf of the Nez Perce Tribe of Idaho by its attorney of record, Angelo A. Iadarola, and on behalf of the defendant by the Assistant Attorney General, Shiro Kashiwa, and trial attorney John D. Sullivan.

Under the stipulation it is proposed that a net final judgment against the defendant in the sum of $1,119,071.78 be entered in Docket No. 179, with the reservation that the intervenor's right to prosecute its claim from July 1, 1951, to the date of judgment be preserved and this claim be severed and designated as Docket No. 179-A.

The entry of the above net final judgment in the amount of $1,119,071.78 disposes of all claims or demands which the plaintiffs and the intervenor have asserted or could have asserted in this docket with respect to their accounting claim for the period extending up to and including June 30, 1951.

A hearing on the proposed compromise settlement was held before the Commission March 25, 1970. During the course of the hearing exhibits were filed and testimony was heard concerning the circumstances surrounding the proposed settlement.

In reviewing the evidence in support of the proposed compromise settlement, the Commission concludes that the plaintiffs and the intervenor have been fully advised by their counsel of all the circumstances surrounding the terms and conditions of the proposed settlement

23 Ind. Cl. Comm. 39                                                    42

and that the plaintiffs and the intervenor have given their voluntary approval to the settlement in the course of their meetings convened for the purpose of giving this proposition due consideration.

The proposed compromise settlement in Docket No. 179 has been approved by the Secretary of the Interior and from all the facts and circumstances surrounding the proposed compromise settlement we are satisfied that it is in the best interest of the parties and that it is a fair and equitable settlement for the plaintiffs, the intervenor, and the defendant.  The parties herein have complied with the Commission' requirements with respect to obtaining valid approval of the proposed compromise settlement of the claims asserted in this docket.

Jerome K. Kuykendall, Chairman

John T. Vance, Commissioner

Richard W. Yarborough, Commissioner

Margaret H. Pierce, Commissioner

Brantley Blue, Commissioner

LAW LIBRARY

JUN 2 - 1970

UNIVERSITY OF
WASHINGTON

23 Ind. Cl. Comm. 33                                              43

BEFORE THE INDIAN CLAIMS COMMISSION

THE CONFEDERATED TRIBES OF THE COLVILLE          )
RESERVATION as the representative of the         )
JOSEPH BAND OF THE NEZ PERCE TRIBE,              )
                                                 )
CHARLES E. WILLIAMS, JOSEPH REDTHUNDER AND      )
HARRY OWHI, as the representatives of           )
the JOSEPH BAND OF THE NEZ PERCE TRIBE,         )
                                                 )
THE CONFEDERATED TRIBES OF THE COLVILLE         )
RESERVATION, as successor to the claims         )
of the JOSEPH BAND OF THE NEZ PERCE TRIBE,      )
                                                 )
                                Plaintiffs,     )
                                                 )
     v.                                          )      Docket No. 179
                                                 )
THE UNITED STATES OF AMERICA,                   )
                                                 )
                                Defendant,      )
                                                 )
THE NEZ PERCE TRIBE OF INDIANS OF THE           )
NEZ PERCE RESERVATION, IDAHO,                   )
                                                 )
                                Intervenor.     )

                              Decided:  April 29, 1970

## FINDINGS OF FACT ON COMPROMISE SETTLEMENT

1.  The petition in this case was filed before the Indian Claims
Commission on July 16, 1951, by the Confederated Tribes of the
Colville Reservation as the representative of the Joseph Band of the
Nez Perce Tribe, and by certain named individuals.  The claims in this
petition arise under Section 2 of the Act of August 13, 1946 (60 Stat.
1049).  The plaintiff, the Confederated Tribes of the Colville
Reservation, is a tribal organization existing at the Colville Reservation

in the State of Washington, and it is an organization recognized by the Secretary of the Interior as having authority to represent the Indians enrolled on the Colville Reservation. The plaintiff is an identifiable group of American Indians comprising descendants of various aboriginal tribes and bands, including descendants of members of the Joseph Band of the Nez Perce Tribe.

2. The plaintiffs, Charles E. Williams, Joseph Redthunder, and Harry Owhi, are descendants of members of the aboriginal Joseph Band of the Nez Perce Tribe.

3. The intervenor, the Nez Perce Tribe of Idaho, is an American Indian tribe within the meaning of section 2 of the Indian Claims Commission Act, as amended (25 U.S.C. §70(a)), with a tribal organization duly recognized by the Secretary of the Interior as having authority to represent the tribe.

4. The intervenor, the Nez Perce Tribe of Idaho, filed a motion to intervene in this claim on November 5, 1968. The claim herein involved is for a general accounting by the defendant of its administration and management of the lands, funds, and other property of the Nez Perce Tribe which the defendant held in trust for the Nez Perce Tribe, including the Joseph Band of that tribe. On February 16, 1968, the defendant filed its accounting in this claim which included an accounting of the lands, funds, and other property of the Nez Perce Tribe of Idaho (the intervenor), as well as the lands, funds, and other property of the Joseph Band of the Nez Perce Tribe. As a result, on February 26, 1969,

the Commission ordered that the intervenor's motion to intervene as a party plaintiff in this claim be granted.

5. After the Nez Perce Tribe of Idaho was made a party to this claim by intervention, counsel for the government, the plaintiffs, and the intervenor, entered into negotiations for settlement of this claim. Subsequently, on July 25, 1969, the attorneys for the plaintiffs and the intervenor submitted a letter of offer to compromise this claim based upon a formula of percentages of recoveries to be made from certain disbursements by the government from those accounts belonging to the plaintiffs and the intervenor. This offer was subsequently modified by letters of August 18 and September 18, 1969. An accountant was employed to determine the total amounts involved pursuant to the formula of percentage recoveries agreed to by the parties. This amount was determined to be $1,119,071.78. The proposal was to settle this accounting claim from the time the defendant took the responsibilities of trustee of the Nez Perce Tribe, to June 30, 1951, since the parties could not agree as to the Nez Perce Tribe's right to an up-to-date accounting. The parties agreed that any claim the Nez Perce Tribe of Idaho has to an accounting from July 1, 1951, to date, would be severed and designated as Docket No. 179-A, and its prosecution continued before the Commission.

6. By letter of December 1, 1969, Assistant Attorney General Shiro Kashiwa accepted the offer on behalf of the defendant, subject to certain conditions. This letter states:

23 Ind. Cl. Comm. 39                                                    46

"December 1, 1969

"Mr. Angelo A. Iadarola
1616 H Street, Northwest
Washington, D. C. 20006

"Dear Mr. Iadarola:

"The offer to settle the claims in The Confederated Tribes of the Colville Reservation as the Representative of the Joseph Band of the Nez Perce Tribe, et al. v. The United States, and the Nez Perce Tribe of Indians, Intervenor, Docket No. 179, before the Indian Claims Commission for the sum of $1,119,071.78, as outlined in your joint letters of September 18, August 18, and July 26 [sic], 1969, is accepted subject to the following conditions:

"1.  That the proposed settlement be approved by appropriate Resolution of the governing body of the Confederated Colville Tribes of the Colville Reservation as the representative of the Joseph Band of the Nez Perce Tribe and the governing body of the Nez Perce Tribe of the Lapwai Reservation in Idaho.

"2.  That the approval of the settlement, as well as the Resolution of the Tribes, be secured from the Secretary of the Interior, or his authorized representative.

"3.  That responsible officials and representative members of the Tribes be present to testify in behalf of the Tribes on the compromise settlement before the Indian Claims Commission.

"The Department of Justice will be happy to work out with you the terms of the stipulation and the appropriate motions and orders necessary to carry into effect the offer of settlement subject to the conditions specified herein. In drawing the Joint Motion for entry of judgment please list the documents which will be introduced in support of the settlement, such as (1) the stipulation, (2) the tribal resolution or resolutions, (3) the letter of approval of the settlement by the Department of the Interior, and (4) such other papers that will be offered in evidence at the hearing on the settlement.  Copies of these papers shall also be furnished to the defendant.

"Very truly yours,
/s/
"Shiro Kashiwa
"Assistant Attorney General

"A similar letter sent to Mr. I. S. Weissbrodt, 1614 20th Street, Northwest, Washington, D. C. 20009."

23 Ind. Cl. Comm. 55                                              47

7. Pursuant to the offer and acceptance, a "Stipulation for Entry of Final Judgment" was signed by the attorneys for the parties herein on February 27, 1970, and was attached as part of a "Joint Motion for Entry of Final Judgment" filed with the Commission on March 13, 1970. The said stipulation was also approved by the intervenor, the Nez Perce Tribe of Idaho, and the plaintiff, the Confederated Tribes of the Colville Reservation, as the representative of the Joseph Band of the Nez Perce Tribe, as well as the individual party plaintiffs. The stipulation reads as follows:

"Before the INDIAN CLAIMS COMMISSION

| | |
|---|---|
| "THE CONFEDERATED TRIBES OF THE COLVILLE RESERVATION as the representative of the JOSEPH BAND OF THE NEZ PERCE TRIBE, | ) ) ) |
| | ) |
| CHARLES E. WILLIAMS, JOSEPH REDTHUNDER AND HARRY OWHI, as the representatives of the JOSEPH BAND OF THE NEZ PERCE TRIBE, | ) ) ) |
| | ) |
| THE CONFEDERATED TRIBES OF THE COLVILLE RESERVATION, as successor to the claims of the JOSEPH BAND OF THE NEZ PERCE TRIBE, | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| v. | )   Docket No. 179 |
| | ) |
| THE UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| THE NEZ PERCE TRIBE OF INDIANS OF THE NEZ PERCE RESERVATION, Idaho, | ) ) |
| | ) |
| Intervenor. | ) |

23 Ind. Cl. Comm. 39　　　　　　　　　　　　　　　　　　48

## "STIPULATION FOR ENTRY OF FINAL JUDGMENT

"It is hereby stipulated by the parties, through their counsel, as follows:

"(1)　All claims asserted in Indian Claims Commission Docket No. 179, except for that portion of this claim which will be severed as hereinafter states and designated as Docket No. 179-A, shall be settled by entry of a final judgment in the Indian Claims Commission in the amount of $1,119,071.78. This settlement shall not affect in any way Docket No. 175, Docket No. 175-B or Docket No. 186.

"(2)　The final judgment shall be in favor of the Confederated Tribes of the Colville Reservation, as the representative of the Joseph Band of the Nez Perce Tribe, petitioners, and the Nez Perce Tribe of Idaho, intervenors, and against the United States of America, defendant, no review to be sought or appeal to be taken by either party.

"(3)　This judgment shall finally dispose of all claims and demands which petitioners have asserted or could have asserted against defendant in Docket No. 179 (with the exception of the severed portion to be placed in Docket No. 179-A). The judgment shall also dispose of all claims, demands, payments on the claim, counterclaims, or offsets which defendant has asserted or could have asserted against the petitioners in Docket No. 179 under the provisions of Section 2 of the Indian Claims Commission Act (60 Stat. 1049), for the period commending [sic] July 1, 1861, and ending June 30, 1957.

"(4)　The settlement does not preclude the Nez Perce Tribe of Idaho from continuing to presecute [sic] a claim for the missappropriation [sic] and mismanagement by the United States, as trustee of the lands, funds and other properties of the Nez Perce Tribe during the period July 1, 1951, to the date of judgment on such claim. Such a claim will be severed from Docket No. 179 and designated as Docket No. 179-A, and will be prosecuted solely on behalf of the Nez Perce Tribe of Idaho.

"(5)　This stipulation for entry of final judgment shall not operate to deprive the defendant from exercising its right to collect from the proceeds of timber sales (as authorized by statute), any expenses of managing, protecting and selling timber as authorized by the Act of February 14, 1920, as amended (25 U.S.C. § 413), nor shall it affect any

right of any of the petitioners or intervenor to have credited
to the trust funds of the tribe, bands or groups represented,
all or a portion of such administrative deductions by reason
of such trust funds having borne expenses of management,
protection and sale of timber to the extent provided by 25
U.S.C. §413.

"This stipulation and entry of final judgment shall not
be construed as an admission of any party as to any issue for
purposes of precedent in any other case or otherwise.

"Respectfully submitted,

"Feb. 27, 1970
    Dated

/s/ I. S. Weissbrodt
I. S. Weissbrodt
Attorney of Record for Petitioner,
Joseph Band of the Nez Perce Tribe,
Docket No. 179

/s/ Angelo A. Iadarola
Angelo A. Iadarola
Attorney of Record for Intervenor
Nez Perce Tribe of Idaho,
Docket No. 179

/s/ Shiro Kashiwa
Assistant Attorney
General of the
United States

/s/ John D. Sullivan
Attorney for Defendant

"APPROVAL BY THE NEZ PERCE TRIBE OF
INDIANS OF THE NEZ PERCE RESERVATION,
IDAHO, INTERVENOR; THE CONFEDERATED
TRIBES OF THE COLVILLE RESERVATION AS
THE REPRESENTATIVE OF THE JOSEPH BAND
OF THE NEZ PERCE TRIBE, PLAINTIFFS;
AND CHARLES E. WILLIAMS, JOSEPH RED
THUNDER AND HARRY OWHI, INDIVIDUAL
PLAINTIFFS.

"The foregoing stipulation for entry of final judgment in
Docket No. 179 is hereby approved by the undersigned pursuant
to authority vested in them by resolutions adopted on
December 12, 1969, by the Nez Perce Executive Committee and

23 Ind. Cl     mm. 39                                                    50

the Nez Perce General Council, and by resolutions adopted on December 13, 1969, by the Business Council of the Confederated Tribes of the Colville Reservation and the General Council of the Confederated Tribes of the Colville Reservation.

"THE NEZ PERCE TRIBE OF INDIANS OF IDAHO

By: /s/ Walter L. Moffett
    Walter L. Moffett, Chairman

By: /s/ Jesse Green
    Jesse Green, Secretary

"THE CONFEDERATED TRIBES OF THE COLVILLE RESERVATION AS THE REPRESENTATIVE OF THE JOSEPH BAND OF THE NEZ PERCE TRIBE

By: /s/ Narcisse Nicholson
    Narcisse Nicholson, Chairman

By: /s/ George Snider
    Harry-Owhi  Geo. Snider, Secretary

/s/ Charles E. Williams
Charles E. Williams

/s/ Joseph Redthunder
Joseph Red Thunder

DECEASED
Harry Owhi"

8.  The intervenor, the Nez Perce Tribe of Idaho, having been kept informed of the status of the settlement negotiations through its governing body, the Nez Perce Executive Committee, called a meeting of the Nez Perce General Council for December 12, 1969, to consider the proposed settlement, and posted notices of that meeting on November 25, 1969.  On November 25, 1969, it also gave widespread notice of the meeting and the matter to be considered there through local newspapers, radio and television.  Notices were also mailed to the last known address of all enrolled members of the Nez Perce Tribe of Idaho on November 24, 1969.

9.   The Colville Business Council, the governing body of plaintiff tribe, also having been kept informed of the status of the settlement negotiations, called for a General Meeting of the Confederated Tribes of the Colville Reservation for December 13, 1969, to consider the proposed settlement, and posted notices of that meeting by December 1, 1969.   The Colville Business Council also gave widespread notice of the meeting and the matter to be considered there through local newspapers, radio and television stations.

10.   The Commission finds that the members of the intervenor tribe, the Nez Perce Tribe of Idaho, and the plaintiff tribe, the Confederated Tribes of the Colville Reservation, as the representative of the Joseph Band of the Nez Perce Tribe, received sufficient notice of these meetings to allow all who had an interest in the claim to participate in the Nez Perce General Council meeting held on December 12, 1969, and the Colville General Meeting held on December 13, 1969, if they so desired.

11.   A meeting of the Nez Perce Tribal Executive Committee, the governing body of the tribe, was held on December 12, 1969, at Lapwai, Idaho.   The minutes of this meeting show that Angelo A. Iadarola, attorney with the Wilkinson, Cragun & Barker law firm, Washington, D. C., which firm represents the Nez Perce Tribe of Idaho, explained in detail the terms of the proposed settlement.   Also present at that meeting was Abe Weissbrodt, with the law firm of Weissbrodt & Weissbrodt, Washington, D. C., claims attorneys for the Confederated Tribes of the Colville

Reservation. Members of the Nez Perce Tribe of Idaho testified at the hearing before the Commission on March 25, 1970. The testimony by these witnesses show that Messrs. Iadarola and Weissbrodt gave a full and complete explanation of the proposed settlement, discussed the advantages and disadvantages of continuing litigation, and fully answered all questions proposed by the members of the Nez Perce Tribal Executive Committee. A resolution passed by the Nez Perce Tribal Executive Committee on December 12, 1969, approved the proposed settlement by a vote of 8 to 1.

12. On the same day, December 12, 1969, a meeting of the Nez Perce General Council was held at Lapwai, Idaho. The record shows that 188 eligible members of the Nez Perce Tribe of Idaho voted on the proposed settlement. At that meeting Messrs. Iadarola and Weissbrodt gave a full and complete presentation of the proposed settlement, discussing the advantages and disadvantages of accepting the proposed settlement as opposed to continuing litigation. Also present at the meeting was the local general counsel for the Nez Perce Tribe of Idaho, Robert C. Strom. Reverend Walter Moffett and Allen Slickpoo, Nez Perce members at the hearing held on March 25, 1970, testified that Messrs. Iadarola and Weissbrodt gave a full and complete explanation of the proposed settlement, setting out all the advantages and disadvantages of accepting the settlement or continuing with the litigation. The witnesses also testified that Messrs. Iadarola and Weissbrodt answered all questions submitted on the proposed settlement by the members of the Nez Perce

Tribe of Idaho and that it was the feeling of the witnesses that the members of the tribe had an understanding of the proposed settlement. At this General Council meeting, Mr. Allen Slickpoo, a member of the Nez Perce Tribe of Idaho and a witness at the hearing, translated into the Nez Perce language a complete explanation of the proposed settlement as it was made by Messrs. Iadarola and Weissbrodt. The members of the Nez Perce General Council voted to accept the settlement by a vote of 188 to 0. A resolution was passed by the Nez Perce General Council on December 12, 1969, approving the settlement.

13. At the hearing before the Commission, Reverend Moffett, a Nez Perce witness, testified as to the nature of the notice given and the efforts of the Nez Perce Tribal Executive Committee to make it as widespread as possible. Reverend Moffett also testified that the attendance and participation at the Nez Perce General Council meeting was very good. Reverend Moffett further testified that the proposed compromise settlement was fully explained to the members at the meeting by Messrs. Iadarola and Weissbrodt and that a letter summarizing the proposed settlement dated December 9, 1969, entitled "Report to the Nez Perce Tribe of Indians of the Nez Perce Reservation, Idaho, and to the Confederated Tribes of the Colville Reservation As a Representative of the Joseph Band of the Nez Perce Tribe," referring to the subject "Proposed Settlement of Docket No. 179," was passed out to all the members at the General Council meeting. The Nez Perce witnesses also testified that there was a question-and-answer session during which questions

were a_____ of the attorneys, Messrs. Iagarola and Weissbrodt, and these questions and answers were also interpreted into the Nez Perce language. The witnesses testified that they were well satisfied from their knowledge of the Nez Perce people and from the questions and answers and from the discussions of the meeting immediately following it and thereafter, that the vote by the General Council to accept the settlement reflected the informed desires of the Nez Perce members.

14.  The approval of the Nez Perce General Council was embodied in the following resolution:

## "RESOLUTION

### "(Nez Perce General Meeting)

"WHEREAS, the Nez Perce Tribe is and has been prosecuting a claim before the Indian Claims Commission identified as Docket No. 179, which involves the mismanagement and mis-handling of Nez Perce lands, funds and other properties by the United States, as trustee of said properties; and

"WHEREAS, the original petition in Docket No. 179 was filed in the name of the Confederated Tribes of the Colville Reservation as the representative of the Joseph Band of the Nez Perce Tribe, and in the name of certain individuals as representatives of the Joseph Band of the Nez Perce Tribe; and

"WHEREAS, the United States General Accounting Report was rendered to the petitioners in Docket No. 179, the representa-tives of the Joseph Band of the Nez Perce Tribe, on February 16, 1968; and

"WHEREAS, after reviewing the General Accounting Report, the claims attorneys for the Nez Perce Tribe in cooperation with the claims attorneys for the Joseph Band of the Nez Perce Tribe, filed a motion to intervene in Docket No. 179, which motion was filed on November 4, 1968, since it was apparent from a review of the accounting report that much of the funds and properties accounted for by the United States involved funds and properties belonging to the Nez Perce Tribe as well as the Joseph Band of the Nez Perce Tribe; and

"WHEREAS, the Indian Claims Commission by its order of February 26, 1969, granted the motion to intervene permitting the Nez Perce Tribe to become a party to Docket No. 179; and

, and these-

ce language.

ieir knowledge

d from the

after, that

ected the

nbodied in

uting

y

le
e

and

was
nta-
ry 16,

c,

rce

ds

ell

of
ing
nd

"WHE     , on March 13, 1969, the clai... attorneys for the Nez Perce Tribe filed the 'Intervenor's Petition' in Docket No. 179; and

"WHEREAS, subsequent to the filing of the Intervenor's Petition in Docket No. 179, extensive settlement nogotiations took place between attorneys for the United States and claims attorneys for the Nez Perce Tribe and the Joseph Band of the Nez Perce Tribe; and

"WHEREAS, following said negotiations between the attorneys for the Nez Perce Tribe and the Joseph Band of the Nez Perce Tribe and the Attorneys for the government, said attorneys have agreed, subject to the approval of the Nez Perce Tribe of Idaho, the Confederated Tribes of the Colville Reservation, as the representative of the Joseph Band of the Nez Perce Tribe, the Secretary of the Interior, or his authorized representative and the Indian Claims Commission, to settle the claim in Docket No. 179 for the total amount of $1,119,071.78, which amount will be the net judgment in favor of the Nez Perce Tribe and the Confederated Tribes of the Colville Reservation as the representative of the Joseph Band of the Nez Perce Tribe; and

"WHEREAS, at a special and open meeting of the Nez Perce Tribal Executive Committee, held in Lapwai, Idaho, on the 12th day of December, 1969, said Executive Committee passed a resolution approving the settlement of the claim in Docket No. 179 in the amount of $1,119,071.78, and authorizing the Chairman to execute a stipulation providing for said settlement and entry of final judgment in said Docket No. 179; and

"WHEREAS, at a special and open meeting of the Nez Perce tribal membership, called for the purpose of considering a report by Angelo A. Iadarola of the law firm of Wilkinson, Cragun & Barker, Washington, D. C., claims attorney of record for the Nez Perce Tribe, with respect to the settlement of the claim in Docket No. 179, at which time said settlement was fully discussed by the attorney for the Nez Perce Tribe and also by Abe Weissbrodt of Weissbrodt & Weissbrodt, claims attorney for the Confederated Tribes of the Colville Reservation, and the members of the Nez Perce Tribe were given full opportunity to enter into said discussion and ask questions concerning any and all phases of the case or questions dealing with the negotiations of the settlement, further proceedings in the case, etc.; and

"WHEREAS, Mr. Thomas H. St. Clair, Superintendent, Northern Idaho Indian Agency, was present during said meeting of the Nez Perce General Council and observed the proceedings therein; and

23 Ind. Cl. Comm. 39                                    56

"WHEREAS, the said discussion included a discussion with respect to the possible gains to be realized from prosecuting the claim and the potential disadvantages or losses which might be suffered by further prosecuting the case, with full and complete opportunity for discussion and questions from members of the General Council as to these aspects of the settlement or as to any other phases of the settlement or further prosecution of the case; and

"WHEREAS, it was explained that the net judgment in the claim would be $1,119,071.78 and that this would be in full settlement of Docket No. 179, from 1855 to and including June 30, 1951, and that such settlement would not affect whatever legal arguments the Tribe may have in it's Docket No. 175 claim insofar as the issue of consideration paid to the Tribe under the 1855 Treaty is concerned; and

"WHEREAS, it was further explained that the settlement of Docket No. 179 which includes the final settlement of this case from 1855 to June 30, 1951, does not affect the Tribe's right to pursue its claim for an accounting and for the alleged misappropriation and mismanagement of the Tribe's lands, funds and other properties for the period commencing July 1, 1951, until the date of final judgment on such claim, and that such a claim is being severed from Docket No. 179 and will be designated as Docket No. 179-A and will continue to be prosecuted before the Indian Claims Commission solely on behalf of the Nez Perce Tribe of Idaho since this aspect of the accounting claim could not be settled with the government; and

"WHEREAS, it was further explained by the claims attorney that the proposed settlement in Docket No. 179 (with the exception of the severed portion of the claim designated as Docket No. 179-A, involving a claim for the period July 1, 1951, to the date of judgment), would permit the entry of final judgment and final disposition of this claim leaving a net judgment of $1,119,071.78 in favor of the Nez Perce Tribe of Idaho and the Confederated Tribes of the Colville Reservation, as the representative of the Joseph Band of the Nez Perce Tribe; and

"WHEREAS, the members of the Nez Perce Tribe are fully informed in the premises, of the action taken by the Executive Committee, and of the resolution passed on December 12, 1969, by said Executive Committee, the same having been read and explained to said General Council;

57

"NOW, THEREFORE, BE IT RESOLVED, that the proposed settlement of Docket No. 179 (with the exception of that portion of the claim being severed and placed in Docket No. 179-A) which involves an accounting claim against the government for the mismanagement and the misappropriation of the Nez Perce Tribe's lands, funds and properties, as outlined above and explained by the claims attorneys for the Tribe, and which is in accordance with the proposed stipulation for entry of final judgment, copies of which have been furnished the Tribe and read in open meeting at which this resolution was considered, and as described and acted upon by resolution of the Nez Perce Tribal Executive Committee on December 12, 1969, a copy of which having been read in the meeting at which this resolution was considered, said proposed settlement resulting in a net judgment in favor of the Nez Perce Tribe of Idaho and in favor of the Confederated Tribes of the Colville Reservation as the representative of the Joseph Band of the Nez Perce Tribe in the total amount of $1,119,071.78, be, and the same is, hereby approved, it being understood by this approval that the attorneys for the Nez Perce Tribe are authorized to execute a stipulation for entry of final judgment in Docket No. 179, in the amount of $1,119,071.78; and

"BE IT FURTHER RESOLVED, that the Nez Perce Tribe hereby ratifies, confirms and approves the action of the Nez Perce Tribal Executive Committee in its resolution of December 12, 1969, and specifically authorizes the Chairman and Secretary of said Executive Committee to execute the stipulation for entry of final judgment in Docket No. 179 on behalf of the Nez Perce Tribe of Idaho, and the Nez Perce General Council hereby further authorizes the Nez Perce Tribal Executive Committee to appoint the necessary members of that Committee to appear and testify at a hearing before the Indian Claims Commission with respect to the said settlement and entry of final judgment in Docket No. 179; and

"BE IT FURTHER RESOLVED, that the Secretary of the Interior, or his duly authorized representative, and the Indian Claims Commission are hereby requested to approve the stipulation for entry of final judgment in Docket No. 179 and the Commission is requested to enter a final judgment in Docket No. 179 in favor of the Nez Perce Tribe of Idaho and the Confederated Tribes of the Colville Reservation as the representative of the Joseph Band of the Nez Perce Tribe, in the amount of $1,119,071.78.

23 Ind. Cl. Comm. 39

58

## "CERTIFICATION

"The foregoing resolution was duly adopted by the Nez Perce General Council, meeting in special session on December 12, 1969, at Lapwai, Idaho, by a vote of <u>188</u> FOR, and <u>0</u> AGAINST, a quorum being present.

/s/ Timothy R. Wheeler
Chairman, Nez Perce General Meeting

ATTEST:

/s/ Regina Ehrstrom
Secretary, Nez Perce General Meeting

## "AUTHENTICATION OF SIGNATURES

"I certify that the foregoing signatures of the Chairman and Secretary of the Nez Perce General Meeting are genuine, that the resolution was approved by the General Meeting and certified to in my presence, and that said meeting occurred in my presence at Lapwai, Idaho, on the 12th day of December, 1969.

/s/ Bill Bryan
Acting Superintendent, Northern Idaho Indian Agency, Bureau of Indian Affairs, Department of the Interior"

15. The Colville General Meeting was held on December 13, 1969, at Nespelem, Washington, to consider the proposed settlement. The record shows that at least 122 eligible members of the Colville Tribe voted on the proposed settlement. At that meeting, Mr. Weissbrodt gave a full and complete presentation of the proposed settlement, discussing the advantages and disadvantages of accepting the proposed settlement as opposed to continuing litigation. Also present at this meeting were Mr. Iadarola and the Colville Tribe's local claims attorney, Lyle Keith of Spokane, Washington. Both Messrs. Keith and Iadarola also participated in the presentation of the proposed settlement and answered questions,

along with Mr. Weissbrodt. The Colville member at the Commission hearing of March 25, 1970, Mr. Barney Rickard, testified that Messrs. Weissbrodt and Iadarola gave a full and complete explanation of the proposed settlement, setting out all the advantages and disadvantages of accepting the settlement now or continuing with the litigation. Mr. Rickard also testified that a letter dated December 9, 1969, entitled "Report to the Nez Perce Tribe of Indians of the Nez Perce Reservation, Idaho, and to the Confederated Tribes of the Colville Reservation As a Representative of the Joseph Band of the Nez Perce Tribe," explaining the proposed settlement, was passed out to all members at the General Meeting. He further testified that Messrs. Weissbrodt, Keith, and Iadarola answered all the questions submitted on the proposed settlement by the members of the Colville Tribe and that it was his feeling that the members of the tribe had an understanding of the proposed settlement. At this meeting a member of the Colville Tribe translated into the Colville language a complete explanation of the proposed settlement as it was made by the attorneys. The members of the Colville Tribe voted to accept the settlement by a vote of 112 to 10. A resolution was passed by the General Meeting of the Confederated Tribes of the Colville Reservation on December 13, 1969, approving the settlement.

16. On the same date, December 13, 1969, immediately after the General Meeting of the Confederated Tribes of the Colville Reservation, the Colville Business Council held a meeting concerning the proposed settlement. Since all the members of the Business Council were earlier present at the Colville General Meeting, and since the members were all

acquainted with the terms of the settlement, the Business Council considered the proposed settlement and voted to accept it by a vote of 10 to 0. Also present at the meeting of the Business Council were Messrs. Weissbrodt, Keith, and Iadarola, who were available to answer any questions concerning the proposed settlement. A resolution was passed by the Colville Business Council on December 13, 1969, approving the proposed settlement.

17. The approval of the General Meeting of the Confederated Tribes of the Colville Reservation was embodied in the following resolution:

## "RESOLUTION

"(General Meeting, Confederated
Tribes of the Colville Reservation)

"WHEREAS, the Nez Perce Tribe of Indians and the Joseph Band of the Nez Perce Tribe, in the name of certain representatives, are, and have been, prosecuting a claim before the Indian Claims Commission, identified as Docket No. 179, which is an accounting claim alleging the misappropriation and mismanagement by the United States, as trustee, of the lands, funds and other properties of the Nez Perce Tribe; and

"WHEREAS, some members of the Nez Perce Tribe and, more particularly, members or descendants of members of the Joseph Band of the Nez Perce Tribe are members of the Confederated Tribes of the Colville Reservation; and

"WHEREAS, the attorneys for the Nez Perce Tribe in Docket No. 179 have negotiated a proposed settlement of the claim, and the proposed stipulation approving said compromise has been approved by the Nez Perce Tribal Executive Committee, sitting in special session at Lapwai, Idaho, on December 12, 1969, and by the Nez Perce General Council, sitting in special session held also at Lapwai, Idaho, on December 12, 1969; and

"WHEREAS, the terms of the proposed settlement which include a final judgment in the amount of $1,119,071.78,

the reservation of the right to sever and continue to prosecute a post-June 30, 1951 accounting claim solely on behalf of the Nez Perce Tribe of Idaho, designated Docket No. 179-A, and a reservation of the right to argue and take issue with the amount of consideration expended by the government in return for the Nez Perce Tribe's 1855 Treaty cession, presently being prosecuted in a claim designated Docket No. 175, said settlement and the proposed stipulation incorporating the terms of the settlement having been fully read to and explained to this general meeting of the Confederated Tribes of the Colville Reservation, it is the desire and the intent of this general meeting to approve the settlement;

"NOW, THEREFORE, BE IT RESOLVED, that the said proposed settlement of the claim designated Docket No. 179 and the proposed stipulation for entry of final judgment are hereby approved by the general membership of the Confederated Tribes of the Colville Reservation, acting on its own behalf and on the behalf of the Joseph Band of the Nez Perce Indians and the members thereof, and this general meeting hereby authorizes the Business Council of the Confederated Tribes of the Colville Reservation to also approve the proposed settlement and to appoint the Chairman and Secretary of said Council to execute said proposed stipulation on behalf of the Confederated Tribes of the Colville Reservation, the Joseph Band of the Nez Perce Tribe of Indians and the individual members thereof, as their interests may appear, and also authorizes the Tribe's claims attorneys to execute on behalf of the Tribe the stipulation for entry of final judgment, and further authorizes the Business Council to select certain members of the Tribe to appear and testify at a hearing of the Indian Claims Commission on said proposed stipulation and settlement, as may be set by the Indian Claims Commission; and

"BE IF [sic] FURTHER RESOLVED, that the Secretary of the Interior or his authorized representative, and the Indian Claims Commission, are hereby respectfully requested to approve the proposed stipulation.

23 Ind. Cl. Comm. 39                                                      62

## "CERTIFICATION

"This is to certify that the foregoing resolution was duly adopted at a general meeting of the Confederated Tribes of the Colville Reservation, meeting in special session, on December 13, 1969, at Nespelem, Washington, by a vote of 112 for and 10 against, a quorum being present.

/s/ Narcisse Nicholson
Chairman, General Meeting
Confederated Tribes of the
Colville Reservation

ATTEST:

/s/ George Snider
Secretary, General Meeting
Confederated Tribes of the Colville
Reservation

## "AUTHENTICATION OF SIGNATURES

"I hereby certify that the foregoing signatures of the Chairman and Secretary of the general meeting of the Confederated Tribes of the Colville Reservation, held this 13th day of December, 1969, are genuine, that the resolution was approved and certified to in my presence, and that the said meeting occurred in my presence.

/s/ Elmo Miller
Superintendent, Colville Indian Agency
Bureau of Indian Affairs
Department of the Interior"

18. On January 29, 1970, the attorneys for the plaintiff and the intervenor tribes, forwarded a letter to the Honorable Louis R. Bruce, Commissioner of Indian Affairs, Department of the Interior, setting out the terms of the proposed settlement and requesting approval by the Secretary of the Interior.

19. Representatives of the Bureau of Indian Affairs attended both the meetings of the Nez Perce General Council held on December 12, 1969,

23 Ind. Cl. Comm. 39                                                63

and the Colville General Meeting held on December 13, 1969.  On the basis of reports submitted by representatives of the Bureau of Indian Affairs, as well as information on the merits of the proposed settlement supplied to the Commissioner of Indian Affairs by the attorneys for the plaintiff and the intervenor tribes, the Department of the Interior by letter of February 18, 1970, approved the proposed settlement:

> "UNITED STATES DEPARTMENT OF THE INTERIOR
> BUREAU OF INDIAN AFFAIRS
> Washington, D. C. 20242

> Feb 18 1970

> "Weissbrodt & Weissbrodt
> 1614 Twentieth Street, N. W.
> Washington, D. C. 20009

> "Attention:  Abe W. Weissbrodt

> "Gentlemen:

> "You and Wilkinson, Cragun and Barker requested by letter of January 29, 1970, our approval of a proposed settlement of all except one claim in Indian Claims Commission docket numbered 179 for a net final judgment in the amount of $1,119,071.78 in favor of the Confederated Tribes of the Colville Reservation as representative of the Joseph Band of the Nez Perce Tribe, petitioner, and the Nez Perce Tribe of Idaho, intervenor.  The claim not to be disposed of by the proposed settlement is for an accounting of lands, funds, and other property of the Nez Perce Tribe for the period July 1, 1951, to the date of judgment on the claim.  This claim is to be removed from docket numbered 179 and placed in a new docket numbered 179-A.

> "The law firm of Weissbrodt and Weissbrodt is representing the Confederated Tribes of the Colville Reservation under contract numbered I-1-ind. 42442, dated November 28, 1949. This contract has been extended several times, the last extension to run until August 18, 1974.  The law firm of Wilkinson, Cragun and Barker is representing the Nez Perce

23 Ind. Cl. Comm.                                                                64

Tribe of Idaho under contract numbered 14-20-0650-977, dated January 7, 1961. This contract, by its own terms, is to run until January 6, 1971.

"You made an offer to the Attorney General on July 25, 1969, as amended by letters of August 13 and September 18, 1969, to settle the claims in docket numbered 179 for $1,119,071.78, except for the claims of the Nez Perce Tribe covering the period July 1, 1951, to the date of judgment on the claim. Issuance of final judgment will dispose of all claims and demands which the petitioner has asserted or could have asserted against the United States in docket numbered 179, except for the claim which is to be severed and placed in docket numbered 179-A. It will also dispose of all claims, demands, counterclaims or offsets which the United States has asserted or could have asserted against the petitioner in docket numbered 179 for the period beginning July 1, 1861, and ending June 30, 1957. Also, neither party nor the intervenor is to seek a review or take an appeal therefrom. The terms of the proposed settlement are more specifically set out in the "Stipulation for Entry of Final Judgment."

"The Assistant Attorney General accepted your offer on December 1, 1969, with conditions. One required that the proposed settlement be approved by appropriate resolutions of the governing bodies of the Confederated Tribes of the Colville Reservation, as the representative of the Joseph Band of the Nez Perce Tribe, and the Nez Perce Tribe of Idaho. Another condition is that the resolutions, as well as the proposed settlement itself, be approved by the Secretary of the Interior or his authorized representative.

"The Wilkinson law firm took the proposed settlement to the Nez Perce Tribe of Idaho at a general council meeting in Lapwai, Idaho, on December 12, 1969. A notice of the meeting was sent to all adult members of the tribe who were living on or adjacent to the Nez Perce Reservation in Idaho. Also the Lewiston Evening Tribune, which serves the area in Idaho where most of those Nez Perce Indians live, carried a news item on December 11, 1969, which gave the date and place the meeting was to be held and the purpose for which it was called. Voting members of the Nez Perce Tribe who attended the meeting numbered 188. The December 12 meeting was attended by a representative of the Wilkinson law firm. A representative of this Bureau also attended and reported on the meeting. Copies of a report which you had prepared explaining the proposed settlement were given to each Indian at the meeting.

23 Ind. Cl. Comm. 39

65

dated
to run

1969,
969,
,071.78,
the
aim,
and
e
179,
in
aims,
tes
oner in
861, and
ervenor
terms
ut in

the
ions
the
eph
f Idaho.
the
ry of

o the
:
eeting
ing
also
Idaho
ews
ee the
s
ended
d
. A
ed
ared
Indian

"An attorney of the Wilkinson law firm made a comprehensive explanation of the proposed settlement, including what actions should be taken if the proposed settlement were accepted and what actions would be taken if it were rejected. A question and answer period followed during which many questions were discussed and answered. A member of the Nez Perce Tribal Executive Committee served as interpreter. A vote was then taken on the proposed settlement. It was accepted by adoption of a resolution by a vote of 188 for and none opposing. The Nez Perce Tribal Executive Committee met on December 12 following the general council meeting. It accepted the proposed settlement by adopting resolution numbered NP-91 by a vote of eight for and one opposed.

"The Chairman and Secretary of the general council meeting of the Nez Perce Tribe of Idaho and those of the Nez Perce Tribal Executive Committee signed the respective resolutions and their signatures were certified by the Bureau's representative as being genuine.

"The Weissbrodt law firm then took the proposed settlement to the Confederated Tribes of the Colville Reservation at a general council meeting held in the Old Council Hall in Nespelem, Washington, on December 13, 1969. Notices of the meeting, stating the date, place, and its purpose was printed in the December 1969 issue of the Tribal Tribune. A copy of that paper was mailed to each enrolled member of the Confederated Tribes of the Colville Reservation at their last known address.

"News releases were sent to more than 20 radio and TV stations, newspapers, and news services. In addition, notices were posted in 14 post offices and agency buildings serving the Indians in the area where most of them live. The number of members attending the December 13 meeting totaled 130. The December 13 meeting was attended by representatives of your law firm. A representative of this Bureau also attended and reported on the meeting. A report which you had prepared explaining the proposed settlement was given to each Indian who attended.

"An attorney from the Weissbrodt law firm gave a comprehensive explanation of the proposed settlement. This was followed by a period during which the various attorneys present answered the many questions asked. Upon request, the proceedings were interpreted into several tribal dialects for the benefit of those without a good understanding of the English language. A vote was then taken on acceptance or rejection of the proposed settlement. It was accepted by adoption of a

23 Ind. Cl. Comm. 59

resolution by a vote of 112 for and ten opposing. The Business Council of the Confederated Tribes of the Colville Reservation met on the same day following the general council meeting. It accepted the proposed settlement by adopting resolution numbered 1969-467 by a vote of ten for and none opposing.

"The Chairman and Secretary of the general council meeting of the Confederated Tribes of the Colville Reservation and those of the Business Council signed the respective resolutions and their signatures were certified by a representative of this Bureau as being genuine.

"We are satisfied that the meetings were well noticed and that the Indians had an opportunity to attend the meeting of the group of which they were members. Considering the poor weather and road conditions, we are satisfied that both general council meetings were well attended. We are also satisfied that the Indians who attended those meetings reasonably understood the proposed settlement and the actions which would be taken should they accept or reject it. The members of both tribal groups who voted appear to have been representative of their respective tribes and that their views as expressed by the votes cast reasonably reflected those of the membership of their tribe. We hereby approve the resolutions.

"In light of the information which you have sent to us, that submitted by our field offices, and that obtained from other sources, the proposed settlement of claims in Indian Claims Commission docket numbered 179, as set out in the "Stipulation for Entry of Final Judgment", is hereby approved.

"Sincerely,

/s/ William J. Benham
Acting Associate Commissioner"

20.  It appears from the documents presented in evidence as the parties' joint exhibits and statements by counsel for both plaintiff and intervenor tribes, that the Colville and Nez Perce Tribes have reached an agreement as to the division of this judgment between them.

21. At the hearing of March 25, 1970, the attorney for the defendant, John D. Sullivan, stated that he was satisfied that the proposed compromise was a fair settlement on behalf of all parties to this dispute.

22. Based on the record in this case, the testimony of the witnesses, the approval of the proposed compromise settlement by William J. Benham, Acting Associate Commissioner of Indian Affairs, the Nez Perce General Council, the Nez Perce Executive Committee, the General Meeting of the Confederated Tribes of the Colville Reservation, the Colville Business Council, and representations by counsel for all the parties that the settlement is fair to the plaintiff and intervenor tribes and to the Government, the Commission finds that the settlement is fair to all parties and grants the Joint Motion of the Parties for Entry of Final Judgment. Judgment in the amount of $1,119,071.78, is granted jointly to the Confederated Tribes of the Colville Reservation as the representative of the Joseph Band of the Nez Perce Tribe and the Nez Perce Tribe of Idaho. The claim in this case made for the period July 1, 1951, to date will be continued before this Commission as Docket No. 179-A and prosecuted solely on behalf of the Nez Perce Tribe of Idaho.

Jerome K. Kuykendall, Chairman

John T. Vance, Commissioner

Margaret H. Pierce, Commissioner

Brantley Blue, Commissioner

Richard W. Yarborough, Commissioner

23 Ind. Cl. C    . 39                                                                  68

BEFORE THE INDIAN CLAIMS COMMISSION

THE CONFEDERATED TRIBES OF THE COLVILLE             )
  RESERVATION as the representative of the          )
  JOSEPH BAND OF THE NEZ PERCE TRIBE,               )
                                                    )
CHARLES E. WILLIAMS, JOSEPH REDTHUNDER AND          )
  HARRY OWHI, as the representatives of             )
  the JOSEPH BAND OF THE NEZ PERCE TRIBE,           )
                                                    )
THE CONFEDERATED TRIBES OF THE COLVILLE             )
  RESERVATION, as successor to the claims           )
  of the JOSEPH BAND OF THE NEZ PERCE TRIBE,        )
                                                    )
                               Plaintiffs,          )
           v.                                       )    Docket No. 179
                                                    )
THE UNITED STATES OF AMERICA,                       )
                               Defendant,           )
                                                    )
THE NEZ PERCE TRIBE OF INDIANS OF THE               )
  NEZ PERCE RESERVATION, IDAHO,                     )
                                                    )
                               Intervenor,          )

FINAL JUDGMENT ON CLAIM FOR ACCOUNTING THROUGH
JUNE 30, 1951, AND ORDER SEVERING CLAIM FOR
ACCOUNTING FROM AND AFTER JULY 1, 1951

UPON JOINT MOTION of the parties for Entry of Final Judgment on the claim for an accounting for the period extending to and including June 30, 1951, in Docket No. 179, pursuant to a Stipulation for Entry of Final Judgment dated February 27, 1970, and filed herein on March 13, 1970, which stipulation is hereby incorporated by reference into and made a part of this judgment; and evidence both oral and written in support of said motion having been received and considered at a hearing on said matter on March 25, 1970; and findings of fact and opinion having been made and entered in said matter; and it appearing that said settlement was found to be fair and just to the parties and, that final judgment should be entered herein in accordance with said stipulation, said findings of fact, and said opinion; and it further appearing that the parties have stipulated that the said settlement does not preclude the intervenor, the Nez Perce Tribe of Indians of the Nez Perce Reservation, Idaho, from continuing to prosecute a claim for an accounting for the period from and after July 1, 1951, to and including the date of judgment on such claim;