FILED

Oct 7  1 40 PM '88

CLERK, U.S. DISTRICT COURT
DISTRICT OF OREGON

BY _____

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| and | ) | |
| THE CONFEDERATED TRIBES AND BANDS OF THE YAKIMA INDIAN NATION; THE CONFEDERATED TRIBES OF THE WARM SPRINGS RESERVATION OF OREGON; CONFEDERATED TRIBES OF THE UMATILLA INDIAN RESERVA-TION; AND NEZ PERCE TRIBE OF IDAHO, | ) | |
| Intervenors, | ) | Civil No. 68-513-MA |
| v. | ) | A M E N D E D O P I N I O N (Intervention) |
| STATE OF OREGON, STATE OF WASHINGTON, | ) | |
| Defendants. | ) | |
| and | ) | |
| STATE OF IDAHO and SHOSHONE-BANNOCK TRIBES. | ) | |
| Intervenors. | ) | |

GEORGE D. DYSART
Special Asst. U.S. Attorney
312 U.S. Courthouse
620 S.W. Main St.
Portland, OR 97205

Of Attorneys for USA.

Page

1 - AMENDED OPINION

HOWARD G. ARNETT
Johnson, Marceau, Karnop, Petersen,
835 N.W. Bond Street
Bend OR 97701

    Attorneys for Warm Springs Tribe.

TIMOTHY WEAVER
Hovis, Cockrill, Weaver & Bjur
P.O. Box 487
Yakima WA 98907

    Attorneys for Yakima Indian Nation.

GEORGE K. MEIER III
Stoel, Rives, Boley,
    Fraser & Wyse
900 S.W. Fifth Avenue
Portland OR 97204

WILLIAM S. WHELAN
STEPHEN V. GODDARD
Deputy Attorney General
Statehouse, Room 210
Boise ID 83720

    Attorneys for State of Idaho.

CATHERINE E. WILSON
Confederated Tribes of the
    Umatilla Indian Reservation
P.O. Box 638
Pendleton OR 97801

    Attorneys for Confederated Tribes
    of the Umatilla Res.

CHERYL F. COODLEY
Asst. Attorney General
State of Oregon
500 Pacific Building
Portland OR 97204

    Attorneys for State of Oregon.

ROBERT C. STROM
Strom, Longeteig & Johnson
P.O. Box 155
Craigmont ID 83523

    Attorneys for Nez Perce Tribe

Page

  2 - AMENDED OPINION

NARDA PIERCE
Assistant Attorney General
State of Washington
7th Floor, Hwy-Licenses Bldg.
Olympia WA 98504-8071

        Attorneys for State of Washington.

HOWARD FUNKE
Attorney at Law
P.O. Box 36
Fort Hall ID 83203

        Attorney for Shoshone-Bannock Tribes.

THANE W. TIENSON
MITCHELL, LANG & SMITH
2000 One Main Place
101 S.W. Main
Portland OR 97204

Attorney for NW Gillnetters
Association.

DONALD D. STUART
c/o Washington Trollers Assn.
P.O. Box 7431
Bellevue WA 98008

        Attorney for Washington
        State Trollers Association.

ROBERT S. BANKS, JR.
BANKS & NEWCOMB
209 S.W. Oak Street, 5th Floor
Portland OR 97204-2740

ALVIN J. ZIONTZ
MARC D. SLONIM
ZIONTZ, CHESTNUT, VARNELL,
        BERLEY & SLONIM
1230 Fourth & Blanchard Bldg.
2121 Fourth Avenue
Seattle WA 98121

        Attornys for Makah Indian Tribe.

MARSH, Judge.

        The Makah Indian Tribe (hereinafter "Makah Tribe") moves to intervene as a matter of right pursuant to Fed. R. Civ. P. 24(a)

Page

    3 - AMENDED OPINION

and alternatively seeks permissive intervention pursuant to Fed. R. Civ. P. 24(b). While its motion to intervene appears to be for the sole purpose of submitting opposition to the pending motion for an order approving the Columbia River Fish Management Plan, the Makah Tribe at oral argument conceded that it wished to intervene as a party for all purposes. The parties moving for an order approving the 1988 Columbia River Management Plan (hereinafter "moving parties") contend the Makah Tribe does not meet the standards for intervention as of right. While the moving parties might not resist limited permissive intervenor status or amicus status, they do contest full intervention whether by right or permissive. The Yakima Indian Nation offers further opposition. For the reasons that follow, I deny the motion of the Makah Tribe to intervene.

BACKGROUND

The pending case is the outgrowth of consolidation of two cases filed in 1968. The first case was designated Sohappy v. Smith, Civil No. 68-409, while the second was designated by the heading in this case. Each suit was brought against the State of Oregon to define the Indians' treaty right to take fish "at all usual and accustomed places" on the Columbia River and its tributaries. Sohappy v. Smith, 302 F. Supp. 899 (D. Or. 1969). They sought a determination of the extent to which the State of Oregon could regulate fishing after Puyallup Tribe v. Department of Game, 391 U.S. 392 (1968). Four Indian tribes, including the Yakima Indian Nation, the Confederated Tribes and Bands of the Warm Springs Reservation of Oregon, the Confederated Tribes of the Umatilla

Page 4 - AMENDED OPINION

Indian Reservation and the Nez Perce Tribe of Idaho, intervened as plaintiffs in the suit brought by the United States. Sohappy, 302 F. Supp. at 899. The two actions were consolidated. Id.[1]

An initial opinion was entered on July 8, 1969 wherein the treaty right of the Indians on the Columbia River and its tributaries was construed. Sohappy v. Smith, 302 F. Supp. at 911-12. Further, the opinion considered the manner and extent to which the State of Oregon could regulate Indian fishing. Id. Jurisdiction was retained to grant further or amended relief. Id. Referring to the retention of jurisdiction, the Ninth Circuit quoted this court as permitting "[a]ny party at any time [t]o apply to the court for a subsequent modification of any provision of this decree where the continued application of the decree has become inequitable or impracticable, but this right shall not affect the finality of the decree with respect to times prior to any such modification." United States v. Oregon, 529 F.2d 570, 572 (9th Cir. 1976).

Between 1969 and 1976 the parties appeared before this court several times. Id. The Honorable Robert C. Belloni urged the adoption of a comprehensive plan for allocation and management of Columbia River anadromous fish. Id.

In 1974 the State of Washington was permitted to intervene. United States v. Oregon, Civ. 68-513 (D. Or. May 22, 1974). In 1977 all the parties to the litigation signed and this court

---

1. The opinion filed today on the motion for adoption of the Columbia River Fish Management Plan provides a further synopsis of the 1988 Plan and the background of this case. For continuity I restate many of the same facts here.

Page

5 - AMENDED OPINION

approved "A Plan for Managing Fisheries on Stocks Originating from the Columbia River and its Tributaries above Bonneville Dam" (hereinafter "original Plan"). Id. (February 28, 1977). The original Plan had a term of five years and set conservation goals for each fish species, established fishing regulations and provided for the establishment of future management techniques.

However, the original Plan did not establish fishing locations, times or quotas. United States v. Oregon, 718 F.2d 299, 302 (9th Cir. 1983). These details are regulated through the Columbia River Compact (hereinafter "Compact"), an interstate agency created by Oregon and Washington and ratified by Congress. Id.; Act of April 8, 1918, Pub. L. No. 64-123, 40 Stat 515 (1918). Under the Compact, the Columbia River is divided into six commercial fishery zones and annually it estimates the size of the runs and determines the length of fishing seasons that the runs can support.

In 1982, two of the tribes gave notice of their intent to withdraw from the original Plan or to renegotiate it. United States v. Oregon, 745 F.2d 550, 552 (9th Cir. 1984). On August 24, 1983 and again on September 6, 1983, this court found that changed circumstances of law and fact made the original Plan subject to revision or modification and ordered the parties to attempt to agree upon a revised or modified agreement. United States v. Oregon, Civ. 68-513 (August 24, 1983 ; September 6, 1983). At the August hearing, this court delayed ruling on a pending motion by the State of Idaho to intervene. Later, the motion was denied as untimely and Idaho was granted the right to participate in the case

Page

6 - AMENDED OPINION

as amicus curiae. Id. (December 5, 1983). The Ninth Circuit reversed this order, held that Idaho's petition to intervene should not have been denied as untimely and allowed Idaho to intervene. United States v. Oregon, 745 F.2d at 553. Specifically, the Ninth Circuit held there had been no objections on the issue of timeliness. The objections of the existing parties were that Idaho's presence might create difficulties if Idaho asserted claims over which the court didn't have jurisdiction. Id. at 552. The Ninth Circuit reasoned that the district court had not made a finding of prejudice to the existing parties and that there wasn't a "serious" dispute that Idaho had interests which may be affected by the disposition of the litigation. Id.

In 1985 the parties were before the Ninth Circuit again. United States v. Oregon, 769 F.2d 1410 (9th Cir. 1985). The primary issue was this court's finding that the fishery regulations promulgated by the Columbia River Compact violated the Indians' treaty fishing rights and the finding that it was within the jurisdiction of this court to set aside those regulations and adopt the Tribes' proposed seasons by means of an injunction. Id. at 1412. The Ninth Circuit affirmed the actions and jurisdiction of the district court. Id.

Next, the Shoshone-Bannock Tribes moved to intervene. The Shoshone-Bannock Tribes are located in Idaho on the upper Snake River, a tributary to the Columbia River. On July 25, 1986 this court allowed the Shoshone-Bannock Tribes to intervene.

Pursuant to the August 1983 order, the parties have continued negotiations to reach a comprehensive plan. Since the expiration of

Page

7 - AMENDED OPINION

the original Plan in 1982 and the subsequent negotiations, the parties have entered into several one year management plans in order to maintain responsible management of Columbia River anadromous fish.

Finally, it should be noted that since the commencement of this action, Congress has passed the Fishery Conservation and Management Act of 1976, 16 U.S.C. § 1801 et seq (Supp. V 1985) (also referred to as "the Magnuson Act"), providing for exclusive fishery management over all fish in a zone extending two hundred miles seaward from a state's boundary. The Pacific Fishery Management Council (hereinafter "PFMC") was created by the Magnuson Act for the areas seaward of Washington, Oregon and California. 16 U.S.C. § 1852(a)(6); 16 U.S.C. § 1853(a)-(c). The PFMC is composed of representatives from Washington, Oregon, California, Idaho, eight members appointed by the Secretary of Commerce and the regional director of the National Marine Fisheries Service. Id.

The Columbia River Fish Management Plan is an extended management plan (hereinafter "the 1988 Plan" or the "Plan").[2] It was presented to the court by the states of Oregon and Washington, the United States and the Warm Springs, Umatilla and Nez Perce Tribes and the Yakima Indian Nation. The Shoshone-Bannock Tribes and the State of Idaho object to the 1988 Plan. The Makah Tribe seeks intervention in the motion before me. Further objections to the 1988 Plan, whether in the form of amicus briefs or otherwise, have been filed by the Northwest Gillnetters Association and Columbia

2.    I recognize the walleye species, a relatively recent introduction, is a non-anadromous fish and yet allocation of it is now included in the proposed plan.

Page

8 - AMENDED OPINION

River Fisherman's Protective Union and the Washington State Trollers.

DISCUSSION

The Makah Tribe bases its argument for intervention on the contention that a substantial portion of its treaty ocean fishery is comprised of Columbia River salmon runs. The Makah Tribe occupies coastal lands on the northwest tip of the Olympic Peninsula. Its ocean fishery is thus subject to direct regulations by the PFMC, the Secretary of Commerce and the State of Washington. The crux of the Makah Tribe's argument is that the PFMC is negotiating the terms of management of the fishery resources of the Columbia River and the Makah's efforts to participate in that process have been rejected.

    Intervention of Right

Fed. R. Civ. P. 24(a) provides that upon timely application a party shall be permitted to intervene when the applicant claims "an interest relating to the property or transaction which is the subject of the action" and the party is so situated that the "disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed. R. Civ. P. 24(a).

In considering intervention as a matter of right, I must consider the timeliness of the application, the interest that relates to this action, if disposition of the action will impair or impede the ability to protect that interest and whether the interest is

Page

    9 - AMENDED OPINION

adequately represented by existing parties.  United States v. Stringfellow, 783 F.2d 821 (9th Cir. 1986) cert. granted in part 106 S.Ct. 2273; cert. dismissed in part 107 S.Ct. 10.

Timeliness

In an earlier appeal of this case, the Ninth Circuit stated that the timeliness requirement for intervention as a matter of right "should be treated more leniently than for permissive intervention because of the likelihood of serious harm." United States v. Oregon, 745 F.2d at 552.  In making the consideration the court should look at the stage of the proceedings, the prejudice to the other parties and the reason for and length of the delay.  County of Orange v. Air California, 799 F.2d 535 (9th Cir. 1986); United States v. Oregon, 745 F.2d 550, 552 (9th Cir. 1984).

Here, the Makah Tribe argues that its motion is timely because the filing of the motion for an order approving the 1988 Plan opens a new stage in this litigation, that it couldn't have known of the Plan earlier because it was specifically excluded from the negotiations and that the other parties won't be prejudiced because Idaho objects also.

The moving parties contend the motion is untimely because the negotiations leading to the 1988 Plan have been going on for four and one half years and intervention at this stage would require that the 1988 Plan be renegotiated.  Further the moving parties contend intervention would considerably expand the scope of the case.  The moving parties contend the "new stage" is a disingenuous characterization and point out that the Makah Tribe acknowledges that  it

Page    10 - AMENDED OPINION

has been aware of the negotiations. The moving parties also contend that they will be extremely prejudiced because new and materially different issues would be raised precluding the timely and orderly culmination of the negotiation process. The moving parties assert that the Makah Tribe actually seeks status as a full party, not just a limited status. Finally, the moving parties assert that the Makah has not shown a valid basis for its failure to proceed at an earlier stage.

In separate opposition, the Yakima Nation contends that the motion is not timely and the Makah Tribe could have filed it two, five or ten years ago. Specifically, the Yakima Nation notes that the Makah could have sought intervention in 1983 following the order to prepare a new management plan. Instead, according to the Yakima Nation, the Makah Tribe pursued other litigation. The Yakima Nation also contends that it will be prejudiced by intervention at this late stage because the Makah Tribe seeks to expand the scope of the litigation. In addition, the Yakima Nation fears the court may construe the intervention as a waiver of its sovereign immunity against the Makah Tribe an issue which is pending in other litigation. Finally, the Yakima Nation contends it has spent considerable amounts of money and staff time in enhancing and protecting the habitat and resources of the Columbia River while the Makah Tribe has not participated nor contributed. Now, according to the Yakima Nation, to allow intervention would impact decisions already made involving all aspects of fishery husbandry on the Columbia River.

I have carefully considered the issue of timeliness and the

Page

11 - AMENDED OPINION

prior holding of the Ninth Circuit in regard to the motion by the State of Idaho to intervene. I find that the present motion is not timely. The circumstances before me are different than those before the court when Idaho sought intervention. Here, the parties have been negotiating since the original Plan expired in 1982. The contention by the Makah Tribe that this is a new stage is incorrect. This court ordered the parties to negotiate a new plan in 1983. United States v. Oregon, Civ. 68-513 (August 24, 1983). The Makah Tribe's active participation in the companion cases in the United States District Court for the District of Washington and the order by this court on August 24, 1983 are conclusive evidence of the Makah Tribe's awareness of the status of this action. I feel that the Makah Tribe, if in other respects a proper party, should have sought intervention at that time. However, in light of subsequent rulings in this case, the appropriate time for a motion to intervene by the Makah Tribe would have been within a reasonable time after October 16, 1984, the date that the Ninth Circuit entered its opinion granting Idaho status as an intervenor, or certainly by the time the Shoshone-Bannock Tribes petitioned for intervention in 1986. The Makah Tribe has not offered any reason for its delay in moving to intervene. On the other hand, during that time, the parties have made significant strides in reaching agreement and the moving parties have presented a new 1988 Plan to the Court. Each portion of the complex Plan reflects concessions made and relates to other portions of the Plan. To allow participation by the Makah Tribe now would require the parties to start negotiating all over again. I

Page

    12  - AMENDED OPINION

find this would significantly prejudice the existing parties.

Interest In Action

The "interest test" is primarily a practical guide to disposing of lawsuits involving as many apparently concerned persons as is compatible with efficiency and due process. County of Fresno v. Andrus, 622 F.2d 436, 439 (9th Cir. 1980) (citations omitted). It is basically a threshold test because the criteria of practical harm to the applicant and the adequacy of representation by others are better suited to the task of limiting extension of the right to intervene. Id.

The Makah Tribe's concern is the effect of the 1988 Plan on federal and state regulation of ocean fisheries. The Makah Tribe notes that its ocean fishery is crucial to its economic survival and argues that it possesses a legal right in its treaty-secured fishing rights because runs which are subject to the Plan pass through its usual and accustomed fishing grounds. The Makah Tribe also contends that its interest, being secured by a treaty right, is more substantial than the interest of Idaho. Finally, the Makah Tribe contends that there is no legal significance to the fact that its fishery precedes the in-river fisheries of the parties to the Plan.

The moving parties counter that the Makah Tribe cannot demonstrate that it has an interest adversely affected by the 1988 Plan and that the interest that the Makah seeks to protect is controlled by the Magnuson Act and should be addressed to the PFMC. The Yakima Nation claims that the Makah's interests are decidedly different than those of Idaho and the Shoshone-Bannock. The

Page 13 - AMENDED OPINION

first difference it claims is that the Makah Tribe fishes at the "front of the line" before entry into the Columbia system, and secondly, that the Makah's interest is "to make certain that no in-river planning results in any decisions which might constrain Makah's ocean interceptions."

The first inquiry in assessing the interest of the Makah Tribe is to consider the interests that are at issue in this action. The original pleadings and Judge Belloni's first opinion disclose that the purpose of the action is to define the treaty rights of the original parties "of taking fish at all usual and accustomed places" on the Columbia River and its tributaries and the extent to which the State of Oregon is able to regulate Indian fishing.  Here, the Makah Tribe seeks to protect its interest in ocean fishing.  This is not the same interest that the action was intended to address.

The uniqueness of the problems associated with this case lies in the nature of the fish the parties attempt to manage.  The anadromous fish, by whatever system controls it, is a fish which is hatched in fresh water, is able to adapt to seawater, and thus migrate to sea to reach maturity. It then returns, reversing the conversion process by adapting back to fresh water to spawn, thereby starting the cycle over again.  To complicate matters, some of the species such as steelhead can repeat this process while others such as salmon make the course but once.

All stages of this migration cycle are necessary to the con-tinued procreation of the anadromous fish.  Therefore, by affecting one stage of the cycle, all stages are affected.  The Makah Tribe,

Page

14 - AMENDED OPINION

therefore can rightfully contend that decisions made concerning what will happen upstream from the mouth of the Columbia River may in some way affect them. However, this very aspect of possible individual interests strikes against intervention.

To expand this action to protect the interest of the Makah Tribe would invite motions for intervention by all tribes, individuals and entities with interest in ocean fisheries of anadromous fish. I envision that other tribes from Washington, Canada and Alaska would seek intervention. Then the sportsfishermen of Washington, Canada and Alaska would seek intervention. Perhaps the commercial fishermen of anadromous fish in those areas would be next. It is not inconceivable that fishermen of non-anadromous fish would seek intervention as this action was allegedly affecting their fishing privileges also. Clearly, this action cannot become a forum for west coast ocean fishing, let alone the entire Pacific Rim past which these marvelous fish migrate. The mouth of the Columbia is a definite and appropriate place downstream to hold the line against further intervention.

I am not unmindful that Section I A 5 of the 1988 Plan refers to ocean fisheries. However, my acceptance of the Plan insofar as it relates to that provision, or any other relating to ocean fisheries, would be to restrict its application to the indirect effect the actions of the Compact may have in relation to its recommendations to the PFMC. In other words, I do not feel the Plan as proposed overlaps or usurps the authority of the PFMC under the Manguson Act, as Section I B 6 of the 1988 Plan specifically

Page

15 - AMENDED OPINION

recognizes the preemptive authority of acts of Congress. The parties have indicated that they recognize the limits of the agreement.

I note that although the ocean fishing of the Makah Tribe is to some extent affected by this action, the effect is indirect. The direct effect on the Makah Tribe's ocean fishing comes from the policies set by the PFMC through the Magnuson Act and the Compact. The PFMC, charged with management of the ocean fisheries, properly notices the actions of the Compact and others in the management of the Columbia source. The several parties represented here include members of the Compact and the government which is charged with the responsibility to protect tribal rights of coast Indians. The Makah Tribe has had access to the PFMC and has taken its disputes to the federal courts in the Western District of Washington. It asserts that it needs a voice here as well because the PFMC is too affected by the decisions made by the Compact and those associated with this litigation.

I believe its rights are more appropriately addressed in the forum created by Congress under the Magnuson Act. A different result would attempt to expand jurisdiction far past the present complexity of the case into areas directly addressed by Congress. While the Ninth Circuit has held that this court had the power to enjoin the Compact when its actions affected the fishing rights of the in-river tribes, this power is after the fact. United States v. Oregon, 769 F.2d at 1417. Thus, if the Compact infringes on the in-river tribes, the court affords equitable relief. I do not feel it is within the scope of this litigation to take action that may

Page

16 - AMENDED OPINION

infringe upon the Compact or PFMC before the fact.

Further, I am not persuaded by the recent decision in Makah Indian Tribe v. Verity wherein the action was dismissed for failure to join absent Indian tribes, arguably including Columbia River tribes, as indispensable parties. Makah Indian Tribe v. Verity, C87-747RC (W.D. Wash. May 16, 1988). Whether or not the Makah Tribe included all the necessary parties in another action does not persuade me to expand the scope of this litigation.

Thus, I find that the interest the Makah Tribe seeks to protect is the indirect effect of this court's actions. When I consider that interest in light of the scope of this action, the treaty fishing rights on the Columbia River, I must find that the interest of the Makah Tribe in this action does not pass the threshold test.

### Impairment

The Makah Tribe contends that its interest will be impaired as a practical matter because adoption of the 1988 Plan will constrain the United States and the State of Washington in subsequent management of ocean fisheries. The moving parties contend that the Makah cannot demonstrate that the 1988 Plan adversely affects its ability to protect its interest before the PFMC and the Secretary of Commerce. The Yakima Nation contends that the Makah fails to establish that its interests are prejudiced by the 1988 Plan and also contends that its interests are protectable by the PFMC.

As stated above, I find the ramifications of this proceeding upon the Makah Tribe are indirect. Exclusive and direct regulation of ocean fisheries is controlled by the Magnuson Act and in this

Page 17 - AMENDED OPINION

region by the PFMC.  Indirect regulation is by the Compact. Challenges to the PFMC or the Compact should first be addressed to those agencies.  Challenges to the actions of the PFMC or the Compact as to regulation of anadromous fish within the Columbia River may be appropriate before this court after all other remedies are exhausted.  United States v. Oregon, 769 F.2d at 1417. However, challenges to the actions of the PFMC or the Compact with regards to ocean fisheries are beyond the scope of this litigation. Thus I find that the impairment, if any, on the interest of the Makah Tribe as a result of this action would be indirect and beyond the scope of this litigation.

### Representation of Interest by Other Parties

Although the discussion above makes it unnecesary to determine adequacy of representation, the import of this case persuades me to address this issue as well.

In considering whether a would-be intervenor is adequately protected, the court must consider whether (1) the interest of a party present to the suit is such that it will undoubtedly make all of the intervenor's arguments, (2) the present party is capable of and willing to make such arguments, and (3) the intervenor would not offer any necessary element to the proceedings that the other parties would neglect.  County of Fresno, 622 F.2d 436, 438-9 (9th Cir. 1980).  The Ninth Circuit has noted that the interest test is "primarily a practical guide to disposing of lawsuits" and that Fed. R. Civ. P. 24 is given a liberal construction in favor of applications for intervention.  Waller v. Financial Corp. of America, 828

Page

18 - AMENDED OPINION

F.2d 575 (9th Cir. 1987) (citations omitted).

The Makah Tribe contends that no other party represents its interests. The Makah Tribe contends that the United States has a trust responsibility to them which it allegedly breached through the secret negotiations excluding the Makah Tribe. The Makah Tribe notes that the State of Idaho, although opposing the Plan, has distinct interests from the Makah Tribe because Idaho's interests lie in the terminal areas. These interests, it contends, are different from the Makah's interest in the ocean treaty fisheries. The Makah Tribe does not address how its interests are different from that of the other tribes.

The moving parties note that the Makah Tribe does not have a treaty right to fish in the Columbia River. Its treaty right is to harvest fish in the Pacific Ocean including some fish bound for the Columbia River. Thus, the Makah's treaty right is to a fishery that precedes the in-river fisheries which are a part of the Plan. However, even considering this interest, the moving parties contend that the Makahs do not have a legally protectable interest in this litigation which needs additional representation.

I have considered the representation of interests by the various parties. I do not find evidence of any breach by the United States of its trust responsibility to the Makah Tribe. Further, I find that the alleged interest of the Makah Tribe arises from its treaty right in ocean fisheries, not in a treaty right in the Columbia River fisheries which are involved in this action. To the extent the Makah Tribe has an interest in anadromous fish spawned in

Page

19 - AMENDED OPINION

the Columbia system and returning thereto, its interest is represented by all the parties to this case, all of whom are interested in preservation and enhancement of the Columbia River fish production. It is significant that this case was initiated by the United States to protect and preserve Indian rights by proper management of fish runs in recognition of those rights. Indirectly, the Makah Tribe is the beneficiary of that action.

Conclusion

After considering all the factors as directed by the Ninth Circuit, I do not find that the Makah Tribe should be granted status as an intervenor. First, I found the motion was not timely as it would have been had it been raised shortly after Idaho or the Shoshone-Bannock were allowed to intervene. This tardiness would cause severe prejudice to the parties as they have been negotiating terms of the 1988 Plan for over four years. Next, I find that the interest the Makah Tribe seeks to protect is not the same interest that is the basis of this lawsuit. The Makah Tribe's treaty right is different and is only indirectly affected, if at all, by the outcome of this litigation. The analysis relating to impairment of the Makah Tribe's treaty right is the same. In addition, I have found that the interests of the Makah Tribe are already being protected by the United States and the other parties in the case.

Finally, I have considered the possibility of limiting the participation by the Makah Tribe in this action. I find no appropriate way in which to do this. To allow participation to the extent of objecting to the 1988 Plan is the same as allowing full

Page
    20 - AMENDED OPINION

participation. Although I might restrict the Makah Tribe from relitigating issues that previously have been decided, I cannot limit its participation in any meaningful way.

Permissive Intervention

Alternatively the Makah Tribe asks that it be permitted to intervene pursuant to Fed. R. Civ. P. 24(b). This rule provides that upon timely application, anyone may be permitted to intervene when an applicant's claim or defense and the main action have a question of law or fact in common. Permissive intervention is granted in the court's discretion. The rule provides that, in exercising discretion, the court "shall consider whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b).

Here, the Makah Tribe submits its proposed opposition to the management plan and contends that common questions of law of fact exist. As Idaho is already opposing the motion, the Makah Tribe contends that its intervention won't unduly delay or prejudice the other parties. The moving parties note that unlimited intervention might significantly delay or impede approval and implementation of the Plan. Although the moving parties don't oppose limited permissive intervention or amicus status, they propose that intervention by the Makah Tribe should not alter the focus this litigation has held since its inception. The moving parties note that the focus has been to define the rights of the plaintiff tribes to harvest a specific share of the fish in their usual and accustomed places and the authority of Oregon and Washington to regulate those

Page 21 - AMENDED OPINION

tribes' fishing activities in that part of the mainstem Columbia River where the tribal fishery has been concentrated.

I have considered the appropriateness of permissive intervention by the Makah Tribe. I do not find this to be an appropriate situation in which to grant permissive intervention. First, I find the motion untimely for the same reasons considered above in the motion based on a right to intervention. Second, I note that the delay that might occur is not a delay in objecting and hearing objections to the 1988 Plan, but rather the delay would be in trying to reopen negotiations of the Plan. The Plan is a complex, sensitively balanced document that was derived following more than four years of negotiation. To renegotiate and allow the Makah Tribe complete participation would be a serious prejudice to the participating parties. Further, the Makah Tribe has not demonstrated anything to indicate such a renegotiation would be fruitful. Thus, I find to grant status as a permissive intervenor to the Makah Tribe would unduly delay the proffered implementation of the 1988 Plan and would prejudice the adjudication of the rights of the original parties. I cannot do this in light of the indirect effect this litigation may have on the rights of the Makah Tribe. Attention is directed to the opinion filed this date relating to the adoption of the Columbia River Fish Management Plan. Although the Makah Tribe did not request amicus status, the issues rasied in its brief in opposition to the 1988 Plan were considered along with amicus briefs.

Page

22 - OPINION

CONCLUSION

The Makah Tribe's motion to intervene as of right or alternatively for permissive intervention is denied.

DATED this __7__ day of _October_____, 1988.

_Malcolm F. Marsh_
Malcolm F. Marsh
United States District Judge

Page

23 - AMENDED OPINION