FILED'08 APR 11 13:53 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| and ) | |
| ) | |
| CONFEDERATED TRIBES and BANDS ) | |
| OF THE YAKAMA INDIAN ) | Civil No. 68-513-KI |
| NATION, et al. ) | |
| ) | OPINION AND ORDER |
| Plaintiff-Intervenors, ) | ON YAKAMA NATION'S |
| vs. ) | MOTION FOR PARTIAL SUMMARY |
| ) | JUDGMENT AGAINST COLVILLE |
| STATE OF OREGON, STATE OF ) | |
| WASHINGTON, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| CONFEDERATED TRIBES OF THE ) | |
| COLVILLE INDIAN RESERVATION, ) | |
| ) | |
| Respondent. ) | |

KING, Judge:

The United States filed this suit in 1968 on behalf of certain Indian tribes, seeking to

define the tribes' treaty rights to take fish at all usual and accustomed places along the Columbia

Page 1 - OPINION AND ORDER

River and its tributaries ("US v. Oregon"). The case was consolidated with another case filed in 1968 by individuals of the Confederated Tribes and Bands of the Yakama Nation ("Yakama"). Sohappy v. Smith, No. 68-409. Several tribal and governmental entities intervened in the case filed by the United States, including Yakama and the State of Washington. The Confederated Tribes of the Colville Reservation ("Colville") sought intervention on two occasions, once in 1989 and once in 1999, but their requests were denied.

Yakama subsequently sought to enjoin Colville (representing its constituent tribe, the Wenatchi) from fishing at the Wenatshapam fishery at Icicle Creek, near Leavenworth, Washington. On August 18, 2003, I granted Yakama's motion for injunctive relief, enjoining Colville, and its constituent tribes, from fishing at Icicle Creek, and holding that Colville was precluded from asserting the arguments it raised in opposition to Yakama's motion. That holding was appealed, and the Ninth Circuit reversed and remanded the case "for trial on the merits." United States v. State of Oregon, 470 F.3d 809, 818 (9th Cir. 2006) ("Oregon II").

Before the court is Yakama's Motion for Partial Summary Judgment (#2486). For the following reasons, I deny the motion, except to the extent that I confirm previous opinions issued by the Honorable Malcolm F. Marsh and the Ninth Circuit in United States v. Oregon, 29 F.3d 481 (9th Cir. 1994) ("Oregon I").

## FACTUAL AND PROCEDURAL BACKGROUND

I.  The 1855 Treaty and the 1894 Agreement

In 1855, the United States entered into two treaties, one with Yakama and one with the Nez Perce Tribe, which have been at issue throughout this litigation. The Ninth Circuit described these treaties as "among the treaties that were signed and negotiated by Governor

Stevens in the 1850s in a hasty effort to clear land occupied by Indians for development by settlers." Oregon I, 29 F.3d at 484. Of relevance to the motion before the court is the 1855 treaty with the Yakama. Treaty with the Yakamas, 12 Stat. 951 (June 9, 1855, ratified March 8, 1859, proclaimed April 29, 1859) ("1855 Treaty").

It is undisputed that the Wenatchi signed and were a party to the 1855 Treaty. Articles I, II, and III of the 1855 Treaty set out what lands Yakama ceded to the United States. These provisions also reserved certain other lands for Yakama, as well as its right to fish at "all usual and accustomed places." In addition, Article X of the Treaty established a separate plot as follows:

> That there is also reserved and set apart from the lands ceded by this treaty, for the use and benefit of the aforesaid confederated tribes and bands, a tract of land not exceeding in quantity one township of six miles square, situated at the forks of the Pisquouse or Wenatshapam River, known as the "Wenatshapam Fishery," which said reservation shall be surveyed and marked out whenever the President may direct, and be subject to the same provisions and restrictions as other Indian reservations.

1855 Treaty, art. X, 12 Stat. at 954.

The United States never lived up to its commitment to survey the Article X plot and remove it from the public domain.

In 1894, the United States negotiated an agreement with "the several tribes and bands composing the Yakima[1] Nation," which provided for the relinquishment of the Article X reservation area. Specifically, the agreement provided, in Article I, that Yakama "hereby cede and relinquish to the United States all their right . . . of fishery as set forth in Article X of the Treaty aforesaid . . . ." Agreement with the Yakima Nation of Indians ("1894 Agreement"), art.

---

[1] The spelling used in the 1855 Treaty and 1894 Agreement is "Yakima." The current spelling is "Yakama."

Page 3 - OPINION AND ORDER

I, 28 Stat. 320 (1894). In Article II, the 1894 Agreement provided,

> After the ratification of this agreement by Congress and the further consideration that the Indians known as the Wenatshapam Indians, residing on the Wenatchee River, State of Washington, shall have land allotted to them in severalty in the vicinity of where they now reside, or elsewhere, as they may select, in accordance with article 4 of the general allotment law.

1894 Agreement, art. II, 28 Stat. at 321.

It is Colville's position (on behalf of the Wenatchi) that the United States' failure to properly survey and reserve the land referenced in Article X led to the 1894 Agreement. Colville contends that the 1894 Agreement was made to secure for the Wenatchi allotted land at the site of their original reservation and to guarantee their rights to fish there, via Yakama's cessation of its rights to both the Wenatshapam land and fishery, where Icicle Creek is located. Yakama strongly disagrees with Colville's interpretation of the 1894 Agreement and its effect on Yakama's treaty rights.

II.     Prior Relevant Rulings

Yakama relies primarily on three opinions issued by this court and by the Ninth Circuit in support of its arguments. Accordingly, I provide a summary of each opinion.

In 1989, Colville sought to intervene in US v. Oregon to establish Treaty Tribe status and to participate in the action and the then-existing Columbia River Fish Management Plan as a Treaty Tribe. In its petition to intervene, Colville asserted that six of its constituent tribes retained fishing rights as a result of the 1855 Treaty. As explained above, Yakama ceded lands to the United States, but reserved off-reservation fishing rights on the Columbia and its tributaries.

Judge Marsh allowed Colville's motion to intervene for the limited purpose of

determining whether Colville could establish Treaty Tribe status under the 1855 Treaty. After holding a court trial on the motion in 1991, Judge Marsh found,

> [T]he Wenatchi, Entiat, Chelan and Columbia Indians who moved to the Colville Reservation followed Moses and refused to be bound by the 1855 treaty. Moses and his followers deliberately sought to separate themselves from the "Yakima Nation" identified in the treaty. Thus, although many current members of the Colville Confederacy are descendants of groups identified as belonging to part of the Yakima Nation within the 1855 treaty, Colville has failed to establish that those descendants are entitled to exercise rights reserved to the Wenatchi, Entiat, Chelan and Columbia who signed the treaty as part of the "Yakima Nation."

United States v. Oregon, 787 F. Supp. 1557, 1571 (D. Or. 1992). Judge Marsh concluded that Colville was not a Treaty Tribe, and he dismissed its complaint in intervention, stating,

> I find that those treaties, and the judicial decisions which have struggled with their interpretations, have sought to achieve a system which recognizes an organized tribal structure as the administrator of rights reserved under the treaties in the form and substance which most closely resembles the framework envisioned by the treaties. I find the the [sic] administrators of those rights, as reflected in the 1855 treaties, are The Confederated Tribes and Bands of the Yakima Indian Nation and The Nez Perce Tribe of Idaho.
>
> Based on the foregoing, I find that the Colville Confederated Tribes has failed to establish that it is the successor Indian government and the present day holder of treaty rights reserved to the Wenatchi, Entiat, Chelan, Columbia, Palus, or Chief Joseph Band of Nez Perce in the treaties of 1855 with the Yakima Nation or with the Nez Perce. Accordingly, the Colville complaint in intervention is dismissed.

Id. at 1572.

Judge Marsh's ruling was affirmed by the Ninth Circuit. The Ninth Circuit explained that despite the clumsy consolidation of diverse groups into a single treaty tribe, "[o]ur court has . . . recognized the tribes created by Governor Stevens as the entities receiving treaty rights," and that such rights "were to be enjoyed communally." Oregon I, 29 F.3d at 484. Furthermore, "[r]ights under a treaty vest with the tribe at the time of the signing of the treaty." Id., citing United States v. Washington, 520 F.2d 676, 692 (9th Cir. 1975). Applying this criteria, the court explained,

Page 5 - OPINION AND ORDER

> The Yakima Treaty of 1855 envisioned the creation of a successor tribe, a "Yakima Nation" composed of all the people represented by the signatories to the Treaty. The government intended all Indians represented by signatories to the Yakima Treaty to move to the newly established Yakima Reservation and comprise the Yakima Nation. The "Yakima Nation" that actually came into existence, however, was not the same as that originally envisioned. It was composed solely of the Indians who moved to the reservation established by the 1855 Yakima Treaty.

Id. at 485.

Nevertheless, the Ninth Circuit noted,

> The present Yakima Nation was recomposed in 1974 and has exercised treaty rights as a successor to the entities that signed the original 1855 Yakima Treaty. As Judge Boldt explained in United States v. Washington, 384 F. Supp. [312,] 381 [W.D. Wash. 1974], "the Yakima Indians have continued to assert their off-reservation fishing rights, including fisheries in the case area." The Yakima Nation has thus continually exercised the off-reservation fishing rights and continued the fishing culture of the original signatories to the 1855 treaty.

Id. at 486. Finally, the Ninth Circuit held that neither Colville nor any of its constituent bands such as the Wenatchi "retain[ed] any treaty fishing rights accorded signatories to the 1855 treaty." Id. "Rather, we conclude that by deliberately separating from the Yakima Nation, these tribes failed to maintain political cohesion with the tribal entity in which the treaty fishing rights are vested." Id.

In 1999, Colville again sought to intervene in the action, which was opposed. This time, Colville stated it sought to intervene solely to protect its *on*-reservation fishing rights. Judge Marsh denied the motion to intervene as untimely because it was filed thirty-one years after the litigation commenced and ten years after its original motion to intervene. Judge Marsh also found that Colville's interests in upstream resources was too remote to be within the proper subject matter of the case.

In June 2003, Yakama moved to enjoin Colville from fishing at Icicle Creek, which I

Page 6 - OPINION AND ORDER

construed as a motion for permanent injunctive relief. Colville argued that the right of the Wenatchi to fish at the disputed location does not depend on the treaty rights that have been adjudicated in this case, but rather on a new theory regarding the 1894 Agreement between the United States and Yakama. Colville argued that in this Agreement, the Wenatshapam fishery, where Icicle Creek is located, was separated from the Yakama Nation and any rights Yakama had to the land or fishery under the 1855 Treaty were terminated. Yakama primarily argued that under the doctrines of issue and claim preclusion, Colville was precluded from raising its argument that it is entitled to fish at Icicle Creek by virtue of the 1894 Agreement. I accepted Yakama's argument, holding that "Colville is precluded from raising the claims put forward in these proceedings" and declining to "reach the issues of whether Yakama lost rights under the 1894 agreement and Colville gained the same." United States v. Oregon, Opinion, No. 68-513-KI (D. Or. Aug. 18, 2003) (#2355). I issued an injunction enjoining Colville, its constituent tribes, and tribal members from fishing on Icicle Creek in any manner not consistent with Washington State law.

The Ninth Circuit reversed and remanded, "conclud[ing] that Colville is not precluded by res judicata from asserting the claim of the Wenatchi Tribe to fishing rights at the Wenatshapam Fishery based on the 1894 Agreement." Oregon II, 470 F.3d at 818.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate

through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

Yakama moves for a declaration that:

> The Wenatchee River Basin, and particularly the area of Icicle Creek, constitutes a "usual and accustomed" fishing place of the Yakama Nation pursuant to the Treaty with the Yakama, June 9, 1855 (12 Stat. 951), subject to administration and control by the Yakama Nation; and that the group calling itself the "Colville/Wenatchi Constituent Tribe" has no such right.

Yakama Mot. for Partial Summ. J. at 1-2. It later appears to narrow its request, as in its reply memorandum it seeks a conclusion about "what rights did Yakama obtain in 1855–regardless of what may or may not have happened 40 years later." Yakama Reply at 3.

As an initial matter, the State of Washington correctly points out there is no case or controversy for the court to declare Yakama's right to fish at the larger "Wenatchee River Basin," as opposed to just Icicle Creek. See Oregon II, 470 F.3d at 810 (describing claim to be about "fishing rights at the Wenatshapam Fishery on Icicle Creek"). In addition, I address only Yakama's narrower request that I determine as a matter of law what rights Yakama obtained in 1855; the question of whether Yakama ceded its rights to the fishery pursuant to the 1894 Agreement is an issue reserved for trial.

Yakama asks me to grant summary judgment in its favor on the basis of the prior rulings summarized above, in addition to what it contends are the undisputed material facts. Specifically, Yakama contends that previous cases determined "who holds the Treaty rights of

Page 8 - OPINION AND ORDER

the <u>signatories</u> of the Treaty of 1855." Yakama Reply at 4. The Wenatchi signed the 1855 Treaty. Judge Marsh, however, concluded that "Colville has failed to establish that . . . descendants [of the signatory tribes] are entitled to exercise rights reserved to the Wenatchi, Entiat, Chelan and Columbia who signed the Treaty as part of the 'Yakima Nation.'" <u>Oregon</u>, 787 F. Supp. at 1571. Rather, he found "the administrators of those rights, as reflected in the 1855 treaties, are The Confederated Tribes and Bands of the Yakima Indian Nation and The Nez Perce Tribe of Idaho." <u>Id.</u> at 1572.

The Ninth Circuit affirmed this holding, stating,

> We . . . agree with the result reached by the district court that the descendants of the Wenatchi, Entiat, Columbia, Chelan, and Palus tribes now living on the Colville Reservation are not entitled to exercise treaty fishing rights. We reach this result because we conclude that the constituent tribes when they entered the Colville Confederacy did not retain any treaty fishing rights accorded signatories to the 1855 treaty. . . . Rather, we conclude that by deliberately separating from the Yakima Nation, these tribes failed to maintain political cohesion with the tribal entity *in which the treaty fishing rights are vested.*

<u>Oregon I</u>, 29 F.3d at 486 (emphasis added).

Finally, in <u>Oregon II</u>, the Ninth Circuit summarized its earlier decision, stating,

> We went on, however, to affirm Judge Marsh's decision that neither Colville nor the Wenatchi had off-reservation fishing rights flowing from the 1855 Treaty. In doing so, we also noted that the parties agreed that the Wenatchi, Entiat, Chelan, Columbia and Palous Tribes were all signatories to the 1855 Treaty, but that "[t]he Yakima Treaty of 1855 envisioned the creation of a successor tribe, a 'Yakima Nation' composed of all of the people represented by the signatories to the Treaty." The five tribes never moved to the reservation created for the Yakama Nation, *which was the entity in which the treaty rights vested.*
>
> We further observed that the present Yakama Nation was recomposed in 1974 and has exercised treaty rights as a successor to the entities that signed the original 1855 Treaty. We concluded that, "by deliberately separating from the Yakima Nation, these tribes failed to maintain political cohesion with the tribal entity in which the *treaty fishing rights* are vested."

Page 9 - OPINION AND ORDER

Oregon II, 470 F.3d at 814-15 (internal citations omitted) (emphasis added in Oregon II). In short, Yakama asserts prior decisions have determined that the Wenatchi fishing rights vested in Yakama upon the signing of the 1855 Treaty.

Colville points out that, "without any apparent sense of irony, . . . Yakama claims that the 1855 Treaty vested Yakama with all of the fishing rights of the Wenatchi people, while it now deprives the Wenatchis of those same rights." Colville Resp. at 1. First, it challenges Yakama's interpretation of the cases summarized above, and argues that Yakama, as it exists today, did not acquire the Wenatchi rights. Second, it contends that under the 1855 Treaty, the Wenatshapam fishery was not a "usual and accustomed" off-reservation fishing site, but was an on-reservation fishery under Article X.[2]

On the first point, Colville concedes that the Ninth Circuit held the Wenatchi waived their treaty fishing rights when they refused to move to the Yakama Reservation, but it argues "it certainly did not hold, nor would it, that Yakama thereby acquired the rights of the Wenatchi Tribe." Colville Resp. at 8. Yakama admits Judge Marsh described Yakama as the "administrator" of the 1855 Treaty rights, but asserts "[n]othing in the district court's opinion states that Yakama acquired and still 'administers' off-reservation fishing rights to the fishing stations of the signatory tribes that did not remain a part of the Yakama Nation." Colville Resp. at 8, n.5. It suggests that the Ninth Circuit's opinion in Oregon I was focused on whether the Wenatchi had a right to exercise treaty rights under the 1855 Treaty, and did not determine the "scope of the treaty rights vested in Yakama, and whether its Article III treaty rights include

---

[2]As a result of my decision to rely on Yakama's narrower request for relief in its reply memorandum, I do not address Colville's argument that Yakama ceded its rights to the fishery pursuant to the 1894 Agreement. That is an issue reserved for trial.

Page 10 - OPINION AND ORDER

access to the aboriginal fishing location of the Wenatchi." Colville Resp. at 11.

On the second point, Colville agrees that the Wenatchi was a signatory to the 1855 Treaty. It contends, however, that while the other signatories were required to move to the Yakama Reservation, Article X of the 1855 Treaty created a separate reservation for the Wenatchi. As a result, at the time of the 1855 Treaty, the Wenatshapam fishing rights were on-reservation fishing rights, not off-reservation "usual and accustomed" rights. Colville contends, then, that the Wenatchi had treaty fishing rights under Article X until 1894, and Yakama cannot rely on that right to support its claim that it held Article III off-reservation fishing rights.

Without relying on any cases, the United States agrees with Yakama that "at Treaty time," the Wenatchi fished at the Wenatshapum Fishery as described in Article X of the 1855 Treaty, that the Wenatchi was a party to the 1855 Treaty, and that Yakama now administers the fishing rights under that Treaty. The State of Washington asserts that Icicle Creek is a usual and accustomed fishing place of Yakama under Article III of the 1855 Treaty.

As Colville concedes, Judge Marsh and Oregon I held the Wenatchi waived treaty fishing rights when the Wenatchi refused to move to the Yakama reservation. Contrary to Colville's assertion, however, Judge Marsh and Oregon I concluded that Yakama held the treaty rights of the original signatories. Neither Judge Marsh nor the Oregon I court imposed any limitations on just which of those signatories' rights Yakama was charged with administering.[3] Indeed, in addition to the portions of Judge Marsh's opinion I quote above, I note that at the end of his opinion Judge Marsh stated,

Finally, to the extent that individual members of the Colville Confederacy seek to

---

[3] In his factual findings, Judge Marsh noted the testimony of Celia Dick who "testified about Wenatchi efforts to continue fishing in the Icicle River." Oregon, 787 F. Supp. at 1565.

Page 11 - OPINION AND ORDER

> pursue treaty fishing rights, they are free to do so through the Yakima Nation and Nez Perce Tribe, the administrators of the 1855 and 1867 treaty rights at issue. I recognize the practical problems that such a suggestion creates based upon current Yakima and Nez Perce enrollment ordinances which require members to be enrolled in the tribe to exercise rights and which provide that no member may also be an enrolled member of another tribe. However, regulation of individual fishing rights within the tribe is a matter within the exclusive jurisdiction of the Yakima and Nez Perce Tribes and any amendment to their enrollment ordinances should be sought through those tribes.

Id. at 1571-72. In sum, the undisputed material facts and prior cases demonstrate that the Wenatchi was a party to the 1855 Treaty, and that all fishing rights of the original signatories, including the Wenatchi, vested in Yakama at the signing of the treaty.

Nevertheless, factual issues surround the interpretation of the 1855 Treaty as to the scope of any fishing rights Yakama received. It is undisputed that the Wenatchi fished at the Wenatshapum Fishery as described in Article X of the 1855 Treaty. Article X of the 1855 Treaty set aside the Wenatshapam fishery, while Article III granted the right to take fish at all "usual and accustomed places." Accordingly, the question remains whether the Wenatshapam fishery was encompassed in the Article III grant of off-reservation fishing rights. This is not an issue that was resolved by previous courts. As a result, I cannot conclude as a matter of law that the Wenatshapam fishery was a Yakama "usual and accustomed fishing place" under Article III.

///
///
///
///
///
///

## CONCLUSION

For the foregoing reasons, Yakama's Motion for Partial Summary Judgment (#2486) is denied, except to the extent I confirm previous opinions issued by the Honorable Malcolm F. Marsh and the Ninth Circuit.

IT IS SO ORDERED.

Dated this _11th_ day of April, 2008.

_/s/ Garr M. King_
Garr M. King
United States District Judge