Rob Roy Smith, OSB #00398
Email: rrsmith@ktslaw.com
Marthy Hernandez, WSBA #60618
Email: mahernandez@ktslaw.com
Kilpatrick Townsend & Stockton, LLP
1420 Fifth Avenue, Suite 3700
Seattle, Washington 98101
Tel: (206) 467-9600; Fax: (206) 623-6793

Alexander M. Mallory, SBA #036261
Email: amallory@ktslaw.com
Kilpatrick Townsend & Stockton, LLP
6909 E. Greenway Pkwy, Suite 100
Scottsdale, AZ 85254
Tel: (602) 726-7312

William F. Bacon, ISB #2766
Email: bill.bacon@sbtribes.com
General Counsel, Shoshone-Bannock Tribes
Monte Gray, ISB #5988
Email: monte.gray@sbtribes.com
P.O. Box 306
Fort Hall, Idaho 83203
Tel: (208) 221-0357

Attorneys for Shoshone-Bannock Tribes

# UNITED STATES DISTRICT COURT
# DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br><br> STATE OF OREGON, *et al.*, <br><br> Defendants. | Case No. 3:68-cv-00513 <br><br> SHOSHONE-BANNOCK TRIBES' FIRST AMENDED COMPLAINT |

SHOSHONE-BANNOCK TRIBES'
FIRST AMENDED COMPLAINT - 1
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

The Shoshone-Bannock Tribes ("Shoshone-Bannock" or the "Tribes"), bring this First Amended Complaint and allege as follows:

## I. INTRODUCTION

1. The Shoshone-Bannock, a sovereign nation and signatory to the Fort Bridger Treaty of 1868 ("Fort Bridger Treaty" or the "Treaty), files this First Amended Complaint to protect and preserve its rights and resources as secured under federal law.

2. Since time immemorial, the Shoshone-Bannock have fished the waters of the Columbia River Basin and its tributaries, relying on these ecosystems to sustain its culture, identity, and way of life. The Tribes' deep connection to the anadromous fish that migrate through these waters is more than a matter of subsistence; it is a sacred trust and an enduring legacy that defines their existence.

3. The rights secured pursuant to its Treaty reflect this profound relationship, securing for the Shoshone-Bannock the ability to fish and hunt on the "unoccupied lands of the United States." This right represents a living guarantee under the supreme law of the land, ensuring the Tribes' continued ability to harvest anadromous fish throughout the region.

4. Despite the Tribes' commitment to conservation and responsible stewardship, the health of the anadromous fish populations that once teemed the Columbia River Basin and its tributaries—the headwaters in which the Shoshone-Bannock occupy—have been devastated by external exploitation and mismanagement of downriver users.

5. Through this action, the Shoshone-Bannock seek to affirm and enforce the rights guaranteed to them under the Fort Bridger Treaty, to ensure the equitable preservation and allocation of the anadromous fish resources, and to preserve their cultural heritage for future generations.

SHOSHONE-BANNOCK TRIBES'
FIRST AMENDED COMPLAINT - 2
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

6. The Shoshone-Bannock stand before this Court not only as a plaintiff-intervenor but as a voice for the salmon and the waters that sustain them.

7. The Tribes' therefore seek recognition of their rightful role in the management and preservation of these shared resources in the Columbia Basin and its tributaries.

8. In doing so, the Tribes reaffirm their sacred duty to protect and perpetuate the gifts of nature, entrusted to them by their ancestors, for the benefit of all.

## II. PARTIES

9. As Plaintiff-Intervenor, the Shoshone-Bannock Tribes comprise a single federally recognized Indian tribal government and signatory to the Fort Bridger Treaty of 1868 (15 Stat. 673, ratified Feb. 26, 1869, proclaimed Feb. 24, 1869), possessing a secured interest and a shared responsibility for the management of the anadromous fish resources that migrate throughout the Columbia River Basin and its tributaries.

10. As Plaintiff-Intervenor, the Nez Perce Tribe is a federally recognized Indian tribal government and signatory to the Treaty of 1855 (12 Stat. 957, ratified April 17, 1867, proclaimed April 20, 1867), possessing a secured interest and a shared responsibility for the management of the anadromous fish resources that migrate throughout the Columbia River Basin and its tributaries.

11. As Plaintiff-Intervenor, the Confederated Tribes and Bands of the Yakama Nation is a federally recognized Indian tribal government and signatory to the 1855 Treaty with the Yakamas, (12 Stat. 951, ratified Mar. 8, 1859, proclaimed April 18, 1859), possessing a secured interest and a shared responsibility for the management of the anadromous fish resources that migrate throughout the Columbia River Basin and its tributaries.

SHOSHONE-BANNOCK TRIBES'
FIRST AMENDED COMPLAINT - 3
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

12. As Plaintiff-Intervenor, the Confederated Tribes of the Warm Springs Reservation is a federally recognized Indian tribal government and signatory to the 1855 Treaty of Wasco, Columbia River, Oregon Territory with the Taih, Wyam, Tenino, & Dock-Spus Bands of the Walla-Walla, and the Dalles, Ki-Gal-Twal-La, and the Dog River Bands of the Wasco, (12 Stat. 963, ratified March 8, 1859, proclaimed April 18, 1859), possessing a secured interest and a shared responsibility for the management of the anadromous fish resources that migrate throughout the Columbia River Basin and its tributaries.

13. As Plaintiff-Intervenor, the Confederated Tribes of the Umatilla Indian Reservation is a federally recognized Indian tribal government and signatory to the 1855 Treaty Between the Cayuse, Umatilla and Walla Walla Tribes, (12 Stat. 945, ratified March 8, 1859, proclaimed April 11, 1859), possessing a secured interest and a shared responsibility for the management of the anadromous fish resources that migrate throughout the Columbia River Basin and its tributaries.

14. As the signatory partner to each treaty listed above, the United States of America appears as plaintiff in its capacity as trustee for each federally recognized plaintiff-intervenor tribe.

15. On behalf of their citizens, the States of Oregon, Idaho, and Washington are defendants in this action, each possessing a shared responsibility for the management of the anadromous fish resources that migrate through the Columbia River Basin and its tributaries.

### III.  JURISDICTION AND VENUE

16. The District Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action arises directly under the Fort Bridger Treaty with the Shoshone-Bannock Tribes, (15 Stat. 673, ratified Feb. 26, 1869, proclaimed Feb. 24, 1869), and the Constitution and

SHOSHONE-BANNOCK TRIBES'
FIRST AMENDED COMPLAINT - 4
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

laws of the United States, including but not limited to the following: the Interstate and Indian Commerce Clauses, U.S. Const. art. I, § 8, cl. 2 & 3; the Supremacy Clause, U.S. Const. art. VI, cl. 2; and federal common law.

17. The District Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1362, because Shoshone-Bannock is a federally recognized Indian Tribe and this matter arises under the Constitution, Laws, and Treaties of the United States.

18. This Court has jurisdiction to grant the declaratory and injunctive relief requested in this action under the Declaratory Judgment Act. 28 U.S.C. §§ 2201 and 2202.

19. Venue lies with this Court pursuant to 28 U.S.C. § 1391(b).

### IV.  FACTUAL ALLEGATIONS

20. To determine the scope of a secured, off-reservation treaty right, the treaty must be examined within its historical context and interpreted as the Indians would have naturally understood its terms at the time they signed that treaty.

21. The terms of the treaties are carried out, so far as possible, in accordance with a spirit which generously recognizes the full obligation of the United States to protect the interests of its treaty partner.

22. Any analysis must take into account the entire narrative of the treaty parties and the treaty's negotiations.

### The Shoshone-Bannock Tribes

23. The Shoshone-Bannock have occupied, inhabited, and made use of the major river systems in the western United States since time immemorial including, but not limited to: the Salmon River, the Snake River, the John Day River, the Grande Ronde River, and the Columbia River and its tributaries which provide the water and fish resources to the Columbia

SHOSHONE-BANNOCK TRIBES'
FIRST AMENDED COMPLAINT - 5
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

River Basin and its drainage systems; as well as, but not limited to, the Missouri and Colorado River systems.

24. The Shoshone-Bannock traveled extensively, following these river systems and animal migrations throughout a region that consists today of six states and portions of Canada, intentionally seeking resources that could not be obtained elsewhere.

25. By many accounts, the ancestors of today's Shoshone-Bannock ranged over a broad area, including, but not limited to, an area from the Sweetwater River in Wyoming to the Clackamas and Multnomah Rivers in Oregon, and from the Missouri River in Montana to the Humboldt in Nevada.

26. Today, the descendants of the Shoshone and Bannock peoples live on the Fort Hall Reservation in southern Idaho as enrolled members of the Shoshone-Bannock Tribes.

27. As a testament to their vast network, the tribal members at Fort Hall share ancestries with other reservations, including but not limited to those of Duck Valley, Wind River, Umatilla, Warm Springs and other reservations in the Mountain West and Pacific Northwest regions.

28. Present day Shoshone-Bannock tribal members continue to hold entitlements to these shared river systems due to their peoples' historical use, and because their ancestors negotiated federal treaties and other binding agreements with the United States, intentionally secured continuing rights and access to these systems and the resources each provide.

**Fort Bridger Treaty of 1868 and the Rights Reserved**

29. From the first treaty with the Delawares in 1787 until the end of treaty-making in 1871, hundreds of treaties were negotiated and entered between the federal government and

SHOSHONE-BANNOCK TRIBES'
FIRST AMENDED COMPLAINT - 6
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

various bands and tribes of Indians; each treaty being unique, depending on that tribe and/or band's relationship with the United States.

30. Many of the treaties negotiated in the 1860s can be separated into two groups: "hostile" treaties, and "friendly" treaties.

31. Hostile treaties, such as the Medicine Lodge Creek, Fort Laramie, and Navajo treaties, aimed to neutralize hostile territories, with the beginning of each treaty setting that tone: "From this day forward all war between the parties to this agreement shall forever cease." And while these treaties granted vast swaths of land to the tribes, each stood as an effort to calm relations, impose restrictions on off-reservation rights and travel, as well as create a corridor through the central plains for non-Indian settlement.

32. In stark contrast, the more friendly treaties—such as the Shoshone-Bannock's Fort Bridger Treaty—represented a means of continued friendship with the United States, beginning with the phrase: "From this day forward, peace between the parties to this treaty shall forever continue." Again, this simple statement and the treaty negotiations set the tone and must frame the narrative in which a court interprets its terms.[1]

33. On the surface, the Fort Bridger Treaty appears similar to others (a call for reservations, schools, and allotments), but an important difference exists in the off-reservation

---

[1] "[T]he great council and your great Father in Washington sent out a Commission to have a talk with the Indian **tribes in the west, to make peace with such as were hostile**, and to arrange with all of them that hereafter, there should be no more war between the white men and the Indians . . . **The Shoshone and Bannocks are at peace with the whites, and have been for years**. All we have to do therefore is to arrange matters, that there may never hereafter be a cause of war between them. There are a great many white men in your country now, and as soon as the Railroad is completed there will be many more. They will wish to remain and make homes here, and your great Father desires that they should do so . . .

He [U.S. President] wishes, however, to set apart a portion of it [aboriginal domain] for your permanent homes, and into which no white men will be permitted to come or settle. Upon this reservation he wishes you to go with all your people as soon as possible and to make it your permanent home, **but with permission to hunt wherever you can find game**." GENERAL L.C. AUGUR, *Indian Peace Commissioner and Negotiator of Fort Bridger Treaty of 1868* (July 3, 1868) (emphasis added).

SHOSHONE-BANNOCK TRIBES'
FIRST AMENDED COMPLAINT - 7
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

land use language which indicates a distinctly different attitude toward the Tribes that maintained friendly relations with the United States.

34. Importantly, the Fort Bridger Treaty is one of the last two Indian treaties negotiated and ratified; therefore, the United States held a depth of experience in negotiating and drafting a treaty's terms.

35. An examination into the plain words of the Fort Bridger Treaty demonstrates an intention for far less control over the Tribes, as its words prove vague and less restrictive, intentionally preserving expansive off-reservation rights. This result becomes clear when the Fort Bridger Treaty is compared to the earlier treaties with tribes in the Pacific Northwest, such as the Stevens Treaties.

36. Accordingly, when the Shoshone-Bannock people signed and agreed to their Treaty's terms, the Shoshone-Bannock understood they secured rights to harvest food throughout vast areas of unsettled lands and waterways for the purpose of continuing subsistence and their lifeways.

37. The result of these negotiations is memorialized in Article IV of the Treaty:

> [T]hey shall have the right to hunt **on the unoccupied lands of the United States** so long as game may be found thereon, and so long as peace subsists among the whites and Indians on the borders of the hunting districts.

(emphasis added).

38. A plain reading of this unambiguous Treaty provision concludes there is no serious geographical question or limitation to the rights reserved; unlike, for example, the more limiting language "The right of taking fish, at all usual and accustomed grounds and stations, is further secured to said Indians in common with the citizens of the territory" as found in the Stevens Treaties.

SHOSHONE-BANNOCK TRIBES'
FIRST AMENDED COMPLAINT - 8
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

39. And while no section or other part of the Treaty references the term "fish" or "fishing," the particular languages used at the treaty negotiations did not employ separate verbs to distinguish between hunting and fishing, but instead used a general term for hunting, which then included the noun corresponding to the object (either animal or plant) sought: i.e. to "hunt" fish. The Shoshone verb was "tygi" while the corresponding Bannock term was "hoawai"; both were defined as meaning "to obtain wild food." (*See State v. Tinno*, 94 Idaho 759 (1972)).

40. Accordingly, the English terminology translated to the Shoshone-Bannock leaders at the treaty council would naturally have understood the term "hunt" to encompass the act of "fishing", "gathering" and "hunting" on "the unoccupied lands of the United States."

41. The right secured by the Shoshone-Bannock is the right to fish (and hunt) off-reservation on "the unoccupied lands of the United States." Because the Columbia River and its tributaries are unoccupied lands of the United States, and the Shoshone-Bannock historically fished throughout the same, the Shoshone-Bannock understood they secured in perpetuity the priority right to fish throughout the unoccupied areas of the Columbia River Basin and its tributaries.

**Actions Which Shoshone-Bannock Complain**

42. The continued reduction in the number of salmon returning to Idaho for spawning has prompted the Shoshone-Bannock to impose strict fishing regulations on its members in an effort to preserve and restore anadromous fish runs.

43. Specifically, the Shoshone-Bannock have, prior to 2024: restricted Treaty fishing only to members who are permanent Reservation residents; limited the take of chinook salmon; restricted fishing to only ceremonial and subsistence fishing; shortened fishing seasons; restricted fishing to designated areas; and, in some cases, restricted fishing to symbolic off-

SHOSHONE-BANNOCK TRIBES'
FIRST AMENDED COMPLAINT - 9
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

season fishing whereby tribal members act as if they are fishing in memory of the once plentiful resource.

44. These severely restrictive fishing regulations reached their peak when the Shoshone-Bannock Tribal Fish and Game Commission ordered a total closure of salmon fishing for conservation purposes.

45. Beside these self-imposed regulations dating from 1975, the Shoshone-Bannock have taken significant steps to protect and improve the spawning habitat of the "wild runs" which are of prime importance to the Tribes.

46. Shoshone-Bannock's good faith efforts toward conservation of the depleted anadromous fish runs over the past five decades have not sufficiently increased fish numbers within the unoccupied lands of the United States in which the Tribes' reserved the right to off-reservation fish.

47. Indeed, Shoshone-Bannock is apparently the only tribe to pay the price for commercial exploitation of this sacred resource by both the non-Indians and by the other tribes simply because, "Shoshone[-Bannock] treaty rights have been recognized to include the right to fish, but have not been more specifically defined." *United States. v. State of Oregon*, 913 F.2d 576, 586 (9th Cir. 1990).

48. The loss of life suffered by the anadromous fish is the direct result of Defendants' failure to recognize the need for these fish to reach the headwaters of their home-streams.

49. At the present time, the Shoshone-Bannock have little way to protect its priority Treaty resource from over-harvest by downriver commercial and sport fishermen.

50. Pursuant to its Treaty with the United States and its perpetual interests therein, the Shoshone-Bannock hereby request an adjudication of its off-reservation treaty rights

SHOSHONE-BANNOCK TRIBES'
FIRST AMENDED COMPLAINT - 10
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

throughout the Columbia Basin and its corresponding tributaries, and full-party participation in management planning to protect its interests of preserving, perpetuating, maintaining and enhancing the anadromous fish runs and to gain its rightful, equitable share of a responsible allocation of harvestable fish throughout the Columbia River Basin and its tributaries.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

DECLARATION OF SHOSHONE-BANNOCK TREATY FISHING RIGHTS
THROUGHOUT THE COLUMBIA BASIN AND ITS TRIBUTARIES

51. Shoshone-Bannock hereby incorporates all preceding paragraphs of the Complaint as if fully stated herein.

52. The Shoshone-Bannock negotiated and signed the Fort Bridger Treaty with the United States, securing, among other things, its pre-existing fishing culture as federal property rights.

53. The Shoshone-Bannock traditionally fished throughout vast areas of the United States, including the Columbia Basin and its tributaries.

54. The Shoshone-Bannock's treaty-reserved off-reservation right to fish encompasses the "unoccupied lands of the United States," which includes the Columbia Basin and its tributaries.

55. As rights secured by treaty with the United States, these rights represent the supreme law of the land and must continue against the United States and its grantees, as well as against the States and counties, and their grantees.

56. The Shoshone-Bannock's right to fish off-reservation is a secured priority interest in the fishery resource throughout the Columbia Basin and its tributaries and must therefore be recognized in any management decisions of the anadromous fish resource throughout the same.

SHOSHONE-BANNOCK TRIBES'
FIRST AMENDED COMPLAINT - 11
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

## SECOND CAUSE OF ACTION

<u>ENJOIN FISHING BY DOWNRIVER USERS THAT THREATENS THE PRESERVATION OF WILD RUNS OF ANADROMOUS FISH SPAWNING WITHIN THE UNOCCUPIED LANDS OF THE UNITED STATES SUBJECT TO THE RESERVED TREATY FISHING RIGHTS OF THE SHOSHONE-BANNOCK</u>

57. Shoshone-Bannock hereby incorporates all preceding paragraphs of the Complaint as if fully stated herein.

58. The Shoshone-Bannock's treaty right to fish off-reservation is a secured priority interest in the fishery resource throughout the Columbia Basin and its tributaries.

59. The Shoshone-Bannock are located near the headwaters of the Snake River, a historical primary tributary and spawning destination for wild anadromous fish.

60. The proliferation of the anadromous fish resource represents a priority to all parties involved in this matter.

61. Pursuant to this priority, the United States, the tribes, and the states entered into numerous management resource plans to, among other things, responsibly harvest and protect these anadromous fish runs.

62. Holding a treaty-secured priority interest in these anadromous fish runs, the Shoshone-Bannock must be recognized as a party-in-interest, equal to all other parties in interest.

63. As an equal, the Shoshone-Bannock's off-reservation treaty fishing right must be considered in any management decisions of the anadromous fish resource throughout the Columbia River Basin and its tributaries.

64. As an equal, the Shoshone-Bannock must be included in any future renegotiation of any fish management plan agreed to pursuant to the continued jurisdiction of this Court.

SHOSHONE-BANNOCK TRIBES'
FIRST AMENDED COMPLAINT - 12
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

65. As an equal, the Shoshone-Bannock are entitled to an equitable share of any harvestable allocation made available to plaintiff-intervenor Indian tribes and other citizens represented by the States of Oregon, Washington, and Idaho.

66. As an equal, any activity by downriver users that threatens the preservation of wild anadromous fish runs and spawning locations within the fishing areas of the Shoshone-Bannock Tribes must be enjoined.

## PRAYER OF RELIEF

WHEREFORE, the Tribes hereby respectfully demand and pray for judgment against Defendants and the following relief:

A. An order declaring the Shoshone-Bannock secured the treaty right to fish off-reservation throughout the Columbia Basin and its tributaries.

B. An order declaring the Shoshone-Bannock possess a shared, secured priority interest in the fishery resource throughout the Columbia Basin and its tributaries.

C. An order declaring the Shoshone-Bannock are entitled to an equitable share of any harvestable allocation made available to plaintiff-intervenor Indian tribes and other citizens represented by the States of Oregon, Washington, and Idaho.

D. An order enjoining all parties to recognize the Shoshone-Bannock's off-reservation treaty fishing right in any management decisions of the anadromous fish resource throughout the Columbia Basin and its tributaries, including through equal participation in any future negotiation of any fish management plans agreed to pursuant to the continued jurisdiction of this Court.

E. An order enjoining any fishing by downriver users that threatens the preservation of Treaty anadromous fish runs relied upon by the Shoshone-Bannock Tribes.

SHOSHONE-BANNOCK TRIBES'
FIRST AMENDED COMPLAINT - 13
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

F.  An order granting such other and further relief as the Court may deem just and equitable.

DATED this 8th day of September, 2025.

By: /s/ Rob Roy Smith
Rob Roy Smith, OSB #00398
Email: rrsmith@kilpatricktownsend.com
Marthy Hernandez, WSBA #60618
Email: mahernandez@ktslaw.com
Kilpatrick Townsend & Stockton, LLP
1420 Fifth Avenue, Suite 3700
Seattle, Washington 98101
Tel: (206) 467-9600; Fax: (206) 623-6793

Alexander M. Mallory, SBA #036261
Email: amallory@ktslaw.com
Kilpatrick Townsend & Stockton, LLP
6909 E. Greenway Pkwy, Suite 100
Scottsdale, AZ 85254
Tel: (602) 726-7312

William F. Bacon, ISB #2766
Email: bill.bacon@sbtribes.com
General Counsel, Shoshone-Bannock Tribes
Monte Gray, ISB #5988
Email: monte.gray@sbtribes.com
P.O. Box 306
Fort Hall, Idaho 83203
Tel: (208) 221-0357

*Attorneys for Shoshone-Bannock Tribes*

SHOSHONE-BANNOCK TRIBES'
FIRST AMENDED COMPLAINT - 14
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

# CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2025, I electronically filed the foregoing with the Clerk of the Court and upon all parties in this matter whose names appear on the official service list as registered in the Court's CM/ECF filing system, using the CM/ECF system.

DATED this 8th day of September, 2025.

By: */s/ Rob Roy Smith*
Rob Roy Smith, OSB #00398
Email: rrsmith@kilpatricktownsend.com
Marthy Hernandez, WSBA # 60618
Email: mahernandez@ktslaw.com
*Pro Hac Vice Application to be filed*
Kilpatrick Townsend & Stockton, LLP
1420 Fifth Avenue, Suite 3700
Seattle, Washington 98101
Tel: (206) 467-9600; Fax: (206) 623-6793

Alexander M. Mallory, SBA #036261
Email: amallory@ktslaw.com
*Pro Hac Vice Application to be filed*
Kilpatrick Townsend & Stockton, LLP
6909 E. Greenway Pkwy, Suite 100
Scottsdale, AZ 85254
Tel: (602) 726-7312

William F. Bacon, ISB #2766
Email: bill.bacon@sbtribes.com
General Counsel, Shoshone-Bannock Tribes
Monte Gray, ISB #5988
Email: monte.gray@sbtribes.com
P.O. Box 306
Fort Hall, Idaho 83203
Tel: (208) 221-0357

*Attorneys for Shoshone-Bannock Tribes*

SHOSHONE-BANNOCK TRIBES'
FIRST AMENDED COMPLAINT - 15
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600