KOALANI KAULUKUKUI, WSBA No. 50642
EDWARD D. CALLOW, WSBA No. 30484
State of Washington Office of the Attorney General
1125 Washington Street SE, P.O. Box 40100
Olympia, Washington 98504-0100
Telephone: 360-664-8977
Attorneys for Defendant-Intervenor State of Washington

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:68-cv-513-SI |
| Plaintiff, | |
| and | **WASHINGTON'S MOTION TO DISMISS SHOSHONE-BANNOCK TRIBES' FIRST AMENDED COMPLAINT FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM AGAINST WASHINGTON AND MEMORANDUM IN SUPPORT** |
| **THE CONFEDERATED TRIBES OF THE WARM SPRINGS RESERVATION OF OREGON; THE CONFEDERATED TRIBES AND BANDS OF THE YAKAMA NATION; THE CONFEDERATED TRIBES OF THE UMATILLA INDIAN RESERVATION; NEZ PERCE TRIBE;** and **SHOSHONE-BANNOCK TRIBES**, | |
| Intervenor-Plaintiffs, | **Rules 12(b)(1) and 12(b)(6)** |
| v. | |
| **STATE OF OREGON**, | |
| Defendant, | |
| and | |
| **STATE OF WASHINGTON and STATE OF IDAHO**, | |
| Intervenor-Defendants. | |

WASHINGTON'S MOTION TO DISMISS

1

## I.    LCR 7-1(a)(1) CERTIFICATION OF PRE-FILING CONFERRAL

In accordance with Local Rule 7-1, during a telephone conference held on November 17, 2025, Washington and the Shoshone-Bannock Tribes conferred about the issues raised in this Motion. Despite a good faith effort to resolve the dispute, the parties have been unable to do so.

## II.    MOTION

Defendant-Intervenor State of Washington hereby moves the Court pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for an Order dismissing the Shoshone-Bannock Tribes' (SBT) claims against Washington in its First Amended Complaint (Complaint) for lack of standing and for failure to state a claim. Washington joins the arguments advanced by the Stevens-Palmer Treaty Tribes in support of their Joint Motion to Dismiss but writes separately to emphasize that SBT's Complaint fails to allege any particularized harm. Even taking the allegation in the Complaint that SBT holds treaty-protected, off-reservation fishing rights throughout the entire Columbia River basin as true, SBT fails to establish how their alleged interests have been invaded or harmed by Washington in a manner that is concrete, particularized, and actual or imminent and that could be redressed by this Court. This is fatal to their claims against Washington under Rule 12(b)(1). Furthermore, under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, SBT fails to state a claim for which this Court can grant relief because they allege no "actual controversy" against Washington as required under the Act. Accordingly, Washington respectfully requests the Court dismiss all claims against it in SBT's Complaint under Rules 12(b)(1) and 12(b)(6).

\\

\\

\\

WASHINGTON'S MOTION TO DISMISS

2

### III.    LEGAL MEMORANDUM IN SUPPORT OF MOTION

**A.  Standard of Review**

A lack of standing is properly raised in a Rule 12(b)(1) motion to dismiss and deprives the Court of subject-matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A dismissal for lack of standing, and accordingly lack of subject matter jurisdiction, under Rule 12(b)(1) and 12(h)(3) can be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A factual challenge to a party's standing "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction" while in a facial challenge "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id*. Washington facially challenges SBT's standing, and because SBT's lack of standing is apparent on the face of its Complaint, the Court should grant this motion and dismiss SBT's claims pursuant to Rules 12(b)(1) and 12(h)(3).

Dismissal under Rule 12(b)(6) is appropriate when a complaint lacks "sufficient facts to support a cognizable legal theory." *See Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombley,* 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. On a motion to dismiss, factual allegations of the complaint are taken as admitted, but legal

WASHINGTON'S MOTION TO DISMISS

conclusions couched as factual allegations are not. *Id*. Because SBT's Complaint on its face fails to allege any actual controversy, it should be dismissed pursuant to Rule 12(b)(6).

**B. SBT's Complaint Fails to Establish Article III Standing and Should be Dismissed for Lack of Subject Matter Jurisdiction Pursuant to Rules 12(b)(1) and 12(h)(3)**

Federal judicial authority is confined to resolution of "Cases" and "Controversies" pursuant to Article III of the United States Constitution. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "Under Article III, federal courts do not adjudicate hypothetical or abstract disputes." *Id*. Nor do they "issue advisory opinions." *Id*. at 424. To meet the Article III case or controversy requirement, SBT bear the burden to establish they have "standing to invoke the jurisdiction of the federal courts." *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1142 (9th Cir. 2024). To establish standing, SBT "must show (i) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC*, 594 U.S. at 423 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "Standing is a threshold matter" that is essential to the Court's subject matter jurisdiction. *Bates v. United Parcel Serv., Inc.,* 511 F.3d 974, 985 (9th Cir. 2007). Without it, "the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). SBT fails to meet their burden to establish Article III standing because, even construing the factual allegations in the Complaint in favor of SBT, those allegations "are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039.

**1. SBT fails to allege any concrete and particularized injury-in-fact**

The First Amended Complaint expands the scope of SBT's alleged treaty right from beyond the Snake River and Salmon River basins to throughout the entire Columbia River basin. *Compare* Dkt. 1305 (original Complaint) ¶ 13 ("Aboriginally, bands of Shoshone and Bannock

WASHINGTON'S MOTION TO DISMISS

Indians inhabited vast regions of present-day Idaho and adjoining states, including the Salmon River country, the Snake River country, and the length of what is now Southern Idaho.") *with* Dkt. 2676 (First Amended Complaint) ¶ 23 (alleging SBT "have occupied, inhabited, and made use of the major river systems in the western United States since time immemorial including, but not limited to: the Salmon River, the Snake River, the John Day River, the Grande Ronde River, and the Columbia River and its tributaries which provide the water and fish resources to the Columbia."). Even "construing the factual allegations in the complaint in favor of the plaintiffs[,]" *Montana Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 979 (9th Cir. 2013), SBT fails to allege an invasion of or harm to its alleged right to fish throughout the Columbia River in a manner that is concrete and particularized and actual or imminent.

First, SBT's allegation of harm appears to be tied to a reduction in the number of salmon returning to Idaho to spawn. Dkt. 2676, Complaint ¶ 42 ("The continued reduction in the number of salmon *returning to Idaho* for spawning has prompted the Shoshone-Bannock to impose strict fishing regulations on its members in an effort to preserve and restore anadromous fish runs.") (emphasis added). The Complaint is devoid of any allegation of harm tied to the newly alleged scope of SBT's treaty right to fish throughout the entire Columbia River basin, such as an alleged threat of prosecution for exercising the alleged right within the state of Washington but outside of Washington's fishing regulations. *Skokomish Indian Tribe v. Goldmark*, 994 F. Supp. 2d 1168 (W.D. Wash. 2014) is instructive. That case involved the Skokomish Indian Tribe's interpretation of the Treaty of Point No Point, which it alleged reserved to its members the right to hunt and gather on open and unclaimed lands without regard to state regulations. *Id.* at 1174-75. The District Court for the Western District of Washington held the Skokomish Indian Tribe had standing to challenge state hunting regulations because they "alleged a genuine threat of imminent

WASHINGTON'S MOTION TO DISMISS

prosecution." *Id*. at 1179. This required the Skokomish Indian Tribe to (1) articulate a concrete plan to violate state law, (2) allege the state communicated a specific warning or threat to initiate enforcement proceedings, and (3) show a history of past state enforcement. *Id*. SBT make no such allegations here. Nor do they posit any other theory demonstrating any concrete and particularized injury-in-fact relevant to the allegation that they hold fishing rights throughout the entire Columbia River basin.

Second, the Complaint acknowledges that any restriction on SBT's alleged treaty fishing rights have been self-imposed. Dkt. 2676, Complaint ¶¶ 42-45. SBT "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). Self-imposed restrictions are not an actual, concrete injury and are insufficient to establish Article III standing.

Third, even if self-imposed restrictions could be considered concrete harm, the Complaint itself acknowledges those restrictions occurred "prior to 2024[.]" Dkt. 2676, Complaint ¶ 43. "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016), *as revised* (May 24, 2016). Here, the Complaint points to past restrictions SBT has imposed upon itself to curtail its members' ability to fish, Dkt. 2676, Complaint ¶ 43, but it does not allege that any such restrictions are continuing or will be imminently imposed. The Complaint alleges at some point SBT self-imposed "a total closure of salmon fishing for conservation purposes[,]" Dkt. 2676, Complaint ¶ 44, but again fails to allege when such a closure occurred and whether the total closure remains in place or will be imminently reestablished. The U.S. Supreme Court has made clear that "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." *City of Los Angeles v.*

*Lyons*, 461 U.S. 95, 103 (1983). Alleged self-imposed fishing restrictions that occurred prior to 2024 are not sufficient to establish standing.

### 2.   SBT fails to allege any injury-in-fact that is fairly traceable to Washington

Even assuming SBT alleged adequately some concrete and particularized and actual or imminent injury, SBT fails to show, as it must, that the injury is fairly traceable to Washington's conduct. *Lujan*, 504 U.S. at 560 ("there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'") (quoting *Simon v. Eastern Kentucky Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976)). The only allegation in the Complaint that potentially suggests a causal link to an asserted injury states: "The loss of life suffered by the anadromous fish is the direct result of Defendants' failure to recognize the need for these fish to reach the headwaters of their home-streams." Dkt. 2676, Complaint ¶ 48. Even if Washington's alleged "failure to recognize the need for these fish to reach the headwaters of their home-streams" is conduct that can be legally challenged, this assertion is contrary to the record in this case. Since 1977, Washington has been a party to the management agreements signed by the parties to this case and entered as court orders, which serve to establish harvest limits based upon important conservation considerations such as "minimum 'escapement' levels for all Columbia River runs with quotas low enough to protect the weakest runs." *United States v. Oregon*, 913 F.2d 576, 579–80 (9th Cir. 1990); *see also United States v. Oregon*, 699 F. Supp. 1456, 1459 (D. Or. 1988), *aff'd*, 913 F.2d 576 (9th Cir. 1990) (original five-year management plan, approved in 1977, "set conservation goals for each fish species, established fishing regulations and provided for the establishment of future management techniques."). These agreements clearly acknowledge limitations upon harvest which Washington incorporates into its

WASHINGTON'S MOTION TO DISMISS

fishing regulations. SBT fails to allege some causal connection between Washington's conduct and any alleged injury.

Moreover, to meet the fairly traceable prong of Article III standing, the action SBT challenges cannot be "'the result of the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560–61 (quoting *Simon,* 426 U.S. at 41–42) (cleaned up). Multiple factors can contribute to a reduced abundance of fish reaching Idaho, such as dams along the Columbia, Snake, and Salmon Rivers and climate change. *See, e.g., Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv*., 184 F. Supp. 3d 861, 873–74 (D. Or. 2016) ("The best available information indicates that climate change will have a significant negative effect on the listed populations of endangered or threatened" Columbia River salmonids."); *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv*., 422 F.3d 782, 799 (9th Cir. 2005) (upholding preliminary injunction where District Court found summer dam operations could cause irreparable harm to salmonids). SBT must establish that any alleged injury is fairly traceable to Washington and not the result of third-party actions, and they fail to do so.

### 3. SBT fails to allege an injury-in-fact that could be redressed by judicial relief

"To satisfy the Article III case or controversy requirement, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." *Iron Arrow Honor Soc. v. Heckler*, 464 U.S. 67, 70 (1983). SBT seeks an "adjudication of its alleged off-reservation treaty rights throughout the Columbia River Basin and its corresponding tributaries, and full-party participation in management planning[.]" Dkt. 2676, Complaint ¶ 50. SBT already have "full party participation" in the case and Management Agreement negotiations to the extent they wish to participate. *See* Dkt. 1380 (order allowing SBT's motion to intervene); *United States v. Oregon*, 913 F.2d at 586 ("the district court amended the [1988 Columbia River Fish Management Plan] to

WASHINGTON'S MOTION TO DISMISS

ensure them full participation despite their uncertain status."); Dkt. 2640 (All Parties' Joint Motion & Stipulated Order Submitting Negotiation of a Successor United States v. Oregon Management Agreement to Mediation, which includes SBT). Accordingly, ordering the relief SBT requests could not redress any alleged injury-in-fact. Rather, SBT asks the Court to issue an advisory opinion on the scope of its alleged treaty fishing rights. Because the Court does not have authority under the Constitution to issue advisory opinions, the Complaint should be dismissed. *TransUnion LLC*, 594 U.S. at 424.

C. **SBT's Complaint Fails to Establish an "Actual Controversy" as Required by the Declaratory Judgment Act and Should be Dismissed for Failure to State a Claim Pursuant to Rule 12(b)(6)**

"The Declaratory Judgment Act provides that, '[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting 28 U.S.C. § 2201(a)). "[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *Id.* at 127 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)). Because SBT fail to establish Article III standing for the reasons outlined above and in the Stevens-Palmer Treaty Tribes' Joint Motion to Dismiss, SBT also fail to establish an "actual controversy" for purposes of the Declaratory Judgment Act, and their Complaint should be dismissed on this independent basis.

## IV.    CONCLUSION

For the reasons set forth above, Washington respectfully requests the Court dismiss SBT's Complaint under Rules 12(b)(1) and 12(b)(6) for lack of Article III standing and failure to state a claim upon which relief can be granted.

WASHINGTON'S MOTION TO DISMISS

DATED this 19th day of November, 2025.

NICHOLAS W. BROWN
Attorney General

*s/ Koalani Kaulukukui*
KOALANI KAULUKUKUI, WSBA No. 50642
Assistant Attorney General

*s/ Edward D. Callow*
EDWARD D. CALLOW, WSBA No. 30484
Senior Counsel

State of Washington Office of the Attorney General
Public Lands and Conservation Division
1125 Washington Street SE
P.O. Box 40100
Olympia, Washington 98504-0100
Telephone: 360-664-8977 (Kaulukukui)
            360-664-2854 (Callow)
Email: koalani.kaulukukui@atg.wa.gov
       ted.callow@atg.wa.gov

*Attorneys for Defendant-Intervenor*
*State of Washington*

WASHINGTON'S MOTION TO DISMISS

10

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2025, I electronically filed the foregoing Washington's Motion to Dismiss Shoshone-Bannock Tribes' First Amended Complaint for Lack of Jurisdiction and Failure to State a Claim Against Washington and Memorandum in Support with the Clerk of the Court for the United States District Court – District of Oregon via the CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the CM/ECF system.

DATED this 19th day of November, 2025.

*s/Danni K. Egen Friesner*
DANNI K. EGEN FRIESNER
Paralegal
Public Lands and Conservation Division