IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, et al. | ) | |
| Plaintiffs, | ) | Case No. 3:68-cv-00513-SI |
| v. | ) | September 24, 2025 |
| STATE OF OREGON, et al. | ) | |
| Defendants. | ) | |

TELEPHONIC SCHEDULING CONFERENCE

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE MICHAEL H. SIMON

UNITED STATES DISTRICT COURT JUDGE

TELEPHONIC APPEARANCES

FOR THE PLAINTIFF(S):
CODY MCBRIDE
DOJ-Enrd
PO Box 7611
Ben Franklin Station
Washington, DC 20044

FOR INTERVENOR PLAINTIFF CONFEDERATED TRIBES of the WARM SPRINGS RESERVATION OF OREGON:
BRENT H. HALL
Hall Law PC
PO Box 945
Walla Walla, WA 99362

FOR INTERVENOR PLAINTIFF CONFEDERATED TRIBES and BANDS of the YAKAMA NATION:
THOMAS ZEILMAN
Law Offices of Thomas Zeilman
PO Box 34
Yakima, WA 98907

FOR INTERVENOR PLAINTIFF CONFEDERATED TRIBES of the UMATILLA INDIAN RESERVATION:
GARRETT LEE BROWN
Confederated Tribes of the Umatilla Indian Reservation
Office of Legal Counsel
46411 Timine Way
Ste Olc
Pendleton, OR 97801

FOR INTERVENOR PLAINTIFF NEZ PERCE TRIBE of IDAHO:
DAVID JAMES CUMMINGS
Nez Perce Tribal Executive Committee
Office of Legal Counsel
PO Box 305
Lapwai, ID 83540

JANE GARRETT STEADMAN
Kanji & Katzen, PLLC
811 1st Avenue
Suite 640
Seattle, WA 98104

TELEPHONIC APPEARANCES

(Continued)

FOR INTERVENOR PLAINTIFF SHOSHONE-BANNOCK TRIBE:

ROB SMITH
Kilpatrick Townsend & Stockton LLP
1420 5th Avenue
Suite 3700
Seattle, WA 98101

WILLIAM BACON
Shoshone-Bannock Tribes
Office of Tribal Attorneys
PO Box 306
Fort Hall, ID 83203

FOR DEFENDANT STATE OF OREGON:

AUSTIN D. SAYLOR
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201

CHRISTINA L. BEATTY-WALTERS
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201

DEANNA J. CHANG
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201

FOR INTERVENOR DEFENDANT STATE OF WASHINGTON:

EDWARD D. CALLOW
Office of the Attorney General
Public Lands and Conservation Division
1125 Washington St. SE
PO Box 40100
Olympia, WA 98504

KOALANI KAULUKUKUI
Office of the Attorney General
Public Lands and Conservation Division
1125 Washington St. SE
PO Box 40100
Olympia, WA 98504

TELEPHONIC APPEARANCES

(Continued)

FOR INTERVENOR DEFENDANT STATE OF IDAHO:

OWEN MORONEY
Idaho Attorney General's Office
600 South Walnut
PO Box 25
Boise, ID 83707

KATHLEEN E. TREVER
Idaho Attorney General's Office
600 South Walnut
PO Box 25
Boise, ID 83707

COURT REPORTER:

Jill L. Jessup, CSR, RMR, RDR, CRR, CRC
United States District Courthouse
1000 SW Third Avenue, Room 301
Portland, OR 97204
(503)326-8191

* * *

TRANSCRIPT OF PROCEEDINGS

(September 24, 2025)

(Telephonic hearing:)

THE COURT: Good morning, everyone.

This is Judge Simon.

Do we have our court reporter on the line?

THE COURT REPORTER: I'm here, Judge.

Good morning.

THE COURT: Good morning. Thank you.

All right. We are here in United States of America, et al. v. State of Oregon, et al. Case Number 3:68-cv-00513. This is Judge Simon.

And let me ask: Who is appearing on behalf of Plaintiff United States?

If you're speaking, we can't hear you.

There's no one here for the United States?

All right. As of right now, it doesn't appear that anyone is appearing for the United States.

Who is appearing on behalf of Intervenor-Plaintiff Confederated Tribes of the Warm Springs Reservation of Oregon?

MR. HALL: Good morning, Your Honor.

This is Brent Hall, appearing on behalf of Warm Springs.

THE COURT: Thank you, Mr. Hall.

And let me ask you: Do we have any expectation of whether the United States will or will not be appearing?

MR. HALL: My expectations are --

MR. McBRIDE: Apologies, Your Honor.

THE COURT: Go ahead, Mr. Hall.

MR. McBRIDE: I apologize, Your Honor.

This is Cody McBride, representing the United States.

THE COURT: All right. Thank you, Mr. McBride.

And that takes you off the hook, Mr. Hall.

All right. Who is appearing for Intervenor-Plaintiff Confederated Tribes and Bands of the Yakama Nation?

MR. ZEILMAN: Your Honor, this is Thomas Zeilman, appearing on behalf of Yakama.

THE COURT: Good morning.

And, by the way, folks, if I have in any way mispronounced or misidentified the correct name of your client, will you please correct me so I make sure that our records are correct as well.

MR. ZEILMAN: Yes, Your Honor.

THE COURT: Who's appearing on behalf of Confederated Tribes of the Umatilla Indian Reservation?

MR. BROWN: Good morning, Your Honor.

This is Garrett Brown, appearing for the Confederated Tribes of the Umatilla Indian Reservation.

THE COURT: Good morning, Mr. Brown. Thank you.

Who's appearing on behalf of Intervenor-Plaintiff Nez Perce Tribe of Idaho?

MR. CUMMINGS: Good morning, Your Honor.

This is Dave Cummings, appearing on behalf of the Nez Perce Tribe.

With me, on the line, is Jane Steadman for the Nez Perce Tribe.

THE COURT: Good morning, Mr. Cummings.

Good morning, Ms Steadman. Thank you.

Who's appearing on behalf of Intervenor-Plaintiff -- is it Sha-shone or Sha-shoney? And -- I'm sorry -- Shoshone-Bannock?

MR. SMITH: Sha-shoney.

Your Honor, this is -- good morning -- Robert Smith with Kilpatrick Townsend on behalf of Shoshone-Bannock, and I believe that Mr. Bill Bacon is on the line as well.

MR. BACON: Correct.

THE COURT: Very good. Thank you, Mr. Smith.

Thank you. Good morning, Mr. Bacon.

All right. Am I correct that those are all of the intervenor-plaintiffs that we have in the case?

Anyone know of any others, or is anyone appearing for any other intervenor-plaintiff?

I'm hearing none.

Who is appearing today for Defendant State of Oregon?

MS. BEATTY-WALTERS: Good morning, Your Honor.
This is Christina Beatty-Walters. With me is Austin Saylor, and I believe also on the line is Diana Chang.

THE COURT: All right. Thank you, Ms. Beatty-Walters. Good morning.
Who's appearing on behalf of Intervenor-Defendant State of Washington?

MS. KAULUKUKUI: Good morning, Your Honor.
This is Koalani Kaulukukui on behalf of the State of Washington, and joining me is Edward Callow.

THE COURT: Good morning. And thank you, Ms. Kaulukukui.
And good morning, Mr. Callow.
Who's appearing on behalf of Intervenor-Defendant State of Idaho?

MR. MORONEY: Good morning, Your Honor.
This is Owen Moroney, and with me in the room is Kathleen Trever.

THE COURT: Good morning, Mr. Moroney and Ms. Trever.
Do we have any other intervenor-defendants in this case? I don't think so.
All right. And I believe we've already taken care of this, but I don't think that there are currently any amicus curiae participating.

If anyone wants to participate going forward as an amicus, they should file a motion for leave to do so.

I'll hear from the other parties, but my practice generally is to allow amici to be heard, at least when appropriate, but I don't show any current amici in this case.

Is there any amici on the line?

All right. Thank you, all.

All right. So I've already reopened the case. I've allowed the filing of the first amended complaint. The first amended complaint now has been filed as of September 8, 2025. That is Docket 2676.

In a few moments, I'm going to invite comments from counsel on an appropriate schedule, but I just -- since this is my first appearance in this case, I wanted to let you know a couple of things: One is I know that Judge King had this case for quite some time; and then it was passed on to Judge Mosman, who had the case for about eight years, approximately; and now the case has recently been reassigned to me.

I really don't know very much about the background of this particular case. I have read, not only the first amended complaint, but also the various motions and responses and oppositions that you all have filed in the last -- let's say last 45 days, since mid-August, or so.

I've read that. I don't know much about the background of the case, as I've said.

And, frankly, I'd appreciate -- maybe, let's begin, very briefly, I'd appreciate someone telling me what you recommend I read. I'm not asking for you to tell me the background of the case now. I see that the case began in 1968. I was 11 years old at the time.

I also just picked up Charles Wilkinson's book *Treaty Justice*, and I assume you're familiar with that. I have not yet begun it, but I will begin reading it soon. But is there anything else that anyone recommends that I read to promptly and efficiently get up to speed on what I should know in this case, whether it be existing orders from the District Court, Ninth Circuit decisions that have been referenced from some of those orders, any other secondary literature books or law review articles or other articles, anything that you -- that anyone would recommend that might be helpful and efficient for me -- to help get me up to speed on this case?

Let's begin this by asking plaintiffs and intervenor-plaintiffs. Anything you all would recommend?

And just identify yourself before speaking, please.

Anybody want to say anything?

I normally give about five or six seconds of silence.

MR. HALL: Your Honor, this is Brent Hall with

Warm Springs.

Actually, I would recommend the original complaints that were filed in the case, and in the *Sohappy* case that was consolidated with this one from 1968.

Judge Belloni's 1969 pretrial order and his -- his transcript of his full opinion of 1969 -- April 1969, I believe it was. The opinion in 1974, and I think it -- we can forward the cites to your courtroom deputy and all parties for these, but the 1974 proceeding.

There was a Ninth -- the Ninth Circuit opinion in 1983 -- opinion in 718 F.2d 299. And if Your Honor is interested, the -- let me -- Columbia River Inter-Tribal Fish Commission put together a summary of the case that we can forward to Your Honor and circulate to all here.

THE COURT: Sure. That all sounds excellent.

And let me ask you this: Because you probably know that the Court's electronic docket and filing system only goes back about 20-something years, to about Docket 1100, give or take, I obviously have access to easily -- easy access to any of the reported decisions -- anything that is an F.Supp or F2.d, I can get that myself, but -- so if you could give me the cites to those, I'll read those.

But if it's any pleadings that you're talking about -- the original complaint, any transcripts -- would it be too much of a burden to ask you to put those together and either

file them electronically or at least provide them to me in paper or PDF, whatever is easier or more convenient for you and for everyone else?

Is that too much of a burden to ask?

MR. HALL: That is not a burden, Your Honor, and we would be happy to do that.

THE COURT: Thank you so much Mr. Hall.

And I'll leave it to you to confer with others.

If you file it electronically at the Court's request, then everyone will have access to it. If you send it to me only in paper or even by PDF, emailed to my courtroom deputy, other people may have access -- may need access to it or want it. So I'll leave that in your hands.

But if the other counsel can communicate with Mr. Hall, if you all have access to it and you don't need additional copies, that's fine. If you do, maybe file it electronically in the docket so that now, going forward, it will be in the electronic docket.

And if any of these need to be filed under seal, you have the Court's permission to file matters under seal if things previously were confidential.

And so thank you in advance, Mr. Hall.

MR. HALL: Certainly, Your Honor.

THE COURT: Now let me ask any of the defendants, including the intervenor-defendants, anything you would add

to that list that I should read?

All right. I'm hearing none.

All right. So right now I think the main order of business now is to schedule a deadline.

I'm sorry. Did someone want to say something?

Okay. So to schedule a deadline for defendants and intervenor-defendants to respond to the first amended complaint, Docket 2676, it was filed September 8th. I note that some of the defendants have indicated that they would like 60 days to respond.

I note that Shoshone-Bannock Tribes basically expressed some concern with that as it being too long. I'm really at a loss, given how little I know about the case so far, to understand what practical significance it would be or practical prejudice might be caused by giving intervenor-defendants and defendants 60 days to respond.

Although let me begin by asking, Ms. Beatty-Walters, on behalf of defendants, do you still want 60 days from September 8th, or what is your current position?

MS. BEATTIE-WALTERS: Your Honor, we understand that the Columbia River Tribes intervenor-plaintiffs are -- have a proposed schedule that we think is reasonable. So we would be happy to hear them recite that schedule to the Court.

THE COURT: Oh, very good. All right.

Who will speak on behalf of the intervenor-plaintiffs about the proposed schedule?

MR. HALL: Thank you, Your Honor.

This is Mr. Hall again, representing Warm Springs, and it's been my privilege to work with the previous (indiscernible) and Columbia River for over 20 years now.

THE COURT REPORTER: Mr. Hall, could you speak up a little bit?

MR. HALL: Yes. Thank you very much.

And please continue to remind me if I'm not speaking loud enough.

Is this better?

UNIDENTIFIED SPEAKER: It's a little better.

MR. HALL: Hopefully, it is. Okay. Let me switch off of my headset.

THE COURT: Mr. Hall, if you're switching right now, that's fine. If you're speaking, we can't hear you.

Mr. Hall, if you're speaking, we can't hear you. You are silent.

Mr. Hall, can you hear me? We cannot hear you.

Mr. Hall, let's try this another way. We can't hear you, sir.

Brent, this is not working. Do you want to hang up and try calling in again?

Mr. McBride, can you hear me?

MR. McBRIDE: Yes, Your Honor, I can hear you.

THE COURT: Okay. All right. So it's on Brent's side. Not ours.

Brent, we can't hear you.

Mary, will you send Mr. Hall an email and tell him that, if he's speaking, we can't hear him?

Mr. Hall, are you with us? If you're responding, I can't hear you.

And, Mr. McBride, I'm assuming you cannot hear Mr. Hall either; is that correct?

MR. McBRIDE: That is correct. I could not hear Mr. Hall.

THE COURT: Okay. Folks, my courtroom deputy is going to call Mr. Hall on another line, but we'll keep this line open.

Does someone else know the proposed schedule? And I'll just write it down while we wait for Mr. Hall to come back.

MR. ZEILMAN: Your Honor, this is Tom Zeilman from the Yakama Nation. I'm going to try to pull it up on my computer.

THE COURT: Thank you.

MR. ZEILMAN: If I can.

MR. HALL: Your Honor, this is Brent Hall with Warm Springs rejoining.

THE COURT: Oh, good. Now we can hear you, and

you sound much clearer. Thank you, Mr. Hall.

Thank you.

Jacob, would you get Mary, please?

Okay. Mr. Hall, we are ready for your proposed schedule.

MR. HALL: Thank you, Your Honor. My apologies.

And also I apologize to the other parties for not being able to hear that fantastic recitation I just gave to myself.

THE COURT: All right. No apologies needed on my end.

Go ahead.

MR. HALL: Thank you, Your Honor.

We propose motions to dismiss be filed on November 19, 2025. We would then -- the responses to those motions to dismiss would be due on January 20, 2026. Replies in support of the motion to dismiss on February 19, 2026.

Should the Court then deny the motions to dismiss, we would propose that answers be due within two weeks of the Court's order. And then within three weeks of the Court's order on the motions to dismiss, should those motions be denied, the parties would confer and then submit a proposed schedule for proceedings on the complaint.

THE COURT: All right. So what I heard is --

MR. HALL: I have a number of factors.

Go ahead, Your Honor.

THE COURT: What I just heard is motions to be dismissed -- motions to dismiss to be filed November 19th of this year. Responses January 20th of 2026. Replies February 19 -- February 19, 2026. And then, if the motion to dismiss is denied, then answers due two weeks after the Court's order.

And let me ask if anyone objects to that proposed schedule.

MR. SMITH: Your Honor, this is Mr. Smith on behalf of the Shoshone-Bannock Tribes. This is the -- this is the first I have heard of this schedule. Although it sounds as though it has been discussed with other parties, it was not discussed with us.

I will say, from my perspective, as we indicated in our briefing, the parties -- although the amended complaint was officially filed on September 8th, the parties have been aware of the amended complaint since May, when there was a meet-and-confer on this issue.

So it seems as though providing two full months to file motions to dismiss seems excessive. I would note that, if Your Honor does keep that November 19th filing date for motions to dismiss, I would ask for some additional time to respond, seeing how the response deadline that is suggested for Shoshone-Bannock would encompass the Thanksgiving

holiday, Christmas, and New Year's. So we would respectfully ask for a little bit more time for that.

The other issue I would just raise for Your Honor is I would assume that Shoshone-Bannock will be facing multiple motions to dismiss from various defendant parties, as well as from the plaintiff intervenors. And if that's the case, we would ask for some page limits to be imposed so that there's not just a deluge of papers that is filed on us whenever those motions to dismiss are due.

THE COURT: Sure. That's interesting.

Well, first of all, let me ask you, Mr. Smith: If I do allow motions to be -- motions to dismiss to be filed on November 19th, would that cause any unfair or undue prejudice to the Shoshone-Bannock Tribe's position -- I'm sorry -- Shoshone-Bannock Tribe's position, as opposed to requiring a motion to be filed sooner rather than later?

And, of course, I'll give you accommodation for the -- for the winter holidays.

MR. SMITH: Yeah. Your Honor, no, I cannot -- I cannot say that it would be prejudicial.

THE COURT: Okay. That's fine.

And did I hear -- maybe between the lines and maybe within the lines themselves, did I hear that you would anticipate motions to dismiss to be filed not only by some of the defendants but potentially some of the other

intervenor-plaintiffs?

MR. SMITH: Yes. Yes. Your Honor, Shoshone-Bannock anticipates that the strongest opposition may, in fact, come from the other plaintiff-intervenor tribes.

THE COURT: All right. Understood.

Let me go back to Mr. Hall. Was there a reason why you did not confer with Mr. Smith before proposing this schedule?

MR. HALL: So, Your Honor, the Oregon response that was filed requested 60 -- a minimum of 60 days to respond, and then Shoshone-Bannock objected to that in its reply. So we thought we had the response of Shoshone-Bannock already stated before the Court that they wanted to proceed more quickly.

We would, of course, have an LR 7.1 conference with them prior to filing these motions to dismiss, but -- but you're correct, Your Honor. We did not run this by counsel for Shoshone-Bannock before we presented it to you today.

THE COURT: Okay. I mean, because I certainly understand what you're saying in terms of why you're proposing November 19th and your understanding of Shoshone-Bannock's position, but you also added in their response time without conferring with them if that's an adequate time for them to respond.

So right now I will schedule motions to dismiss to be due no later than November 19, 2025.

Let me go back now to Mr. Smith.

When would you like the deadline for responding to the November 19th motions to dismiss? You tell me any reasonable date.

MR. SMITH: Your Honor, how about February 2nd --

THE COURT: All right.

MR. SMITH: -- 2026.

THE COURT: Sure. And let me double-check on something.

Mr. Hall, or anyone else, any objections to responses being due on February 2, 2026?

MR. HALL: No objections from Warm Springs, Your Honor.

THE COURT: All right. Well, I don't need to hear "No." If anyone has any objections, speak now.

All right. Hearing none, responses are due February 2, 2026.

We'll go back to you, Mr. Hall. It looked like you previously requested about a month for reply briefs. So if that's still your request, how about March 2nd for reply briefs?

MR. HALL: That works for Warm Springs, Your Honor.

THE COURT: And anyone have any objections to replies being due March 2nd?

All right. Then I'll set responses due February 2nd and replies due March 2nd. And we'll try to move relatively efficiently on this.

Does anyone anticipate right now that oral argument will or will not be helpful? Anybody have any strong views on that right now?

MR. HALL: Your Honor, Brent Hall, Warm Springs Tribe. I anticipate that it will be helpful.

THE COURT: All right. Then --

MR. SMITH: And, Your Honor, this is Mr. Smith.

I would agree with Mr. Hall.

THE COURT: All right. Then, if you all are fairly comfortable that these are realistic deadlines and no one's going to ask for motions to postpone, I'm fine with scheduling oral argument now.

So is everybody feeling pretty comfortable that these deadlines are realistic and are not likely to be met with motions for extension?

MR. HALL: Yes, Your Honor.

THE COURT: Okay. Given what I'm expecting to receive and the way you all have been describing it, I would like to give myself about a month to read everything after the replies come in and would be looking to maybe early

April for an oral argument. Maybe about a month out. Let's take a look at our calendars for that.

Let's see. Mary, I'm showing a jury trial on -- let's see -- on Meyers on March 30th. Is that trial likely to go forward, or you don't know?

DEPUTY COURTROOM CLERK: I don't know anything about that.

THE COURT: All right. Well, that trial begins March 30th, and it's scheduled for five days. And then we have our next trial. We have a Markman hearing on April 6th. It looks like the 7th, 8th, and 9th are pretty wide open, and the 7th and 9th are probably better for me, and I would like to allocate at least a half a day for this oral argument.

So, folks, does anybody have any preferences or objections looking between Tuesday, April 7th, or Thursday, April 9th?

Let me double-check.

MR. SMITH: Your Honor?

THE COURT: Yeah, go ahead.

MR. SMITH: This is Mr. Smith for Shoshone-Bannock.

I would strongly prefer April 7th, the Tuesday, just because I do have a potential conflict on Thursday, the 9th.

THE COURT: All right. Then let's everybody look

at April 7th, that Tuesday.

I think that will work for us, Mary. Am I right?

DEPUTY COURTROOM CLERK: Yes.

THE COURT: Anybody have any objections or problems with oral argument on Tuesday, April 7th?

MR. HALL: Your Honor, this is Brent Hall. I note that that is spring break in Washington, but I'm sure my family can give me a half day's relief.

THE COURT: Okay. Thank you.

I'm assuming Friday, April 10th, wouldn't make it easier for you.

MR. HALL: No. Thank you, Your Honor. I prefer the 7th.

THE COURT: Okay. All right. So hearing no objection to oral argument on April -- Tuesday, April 7th, let's start it at 9:00 a.m.; and right now we'll block out 9:00 to noon.

But, Mary, just between us, let's not schedule anything that afternoon either. So in case we have to go longer, we'll go longer. Let's just now set this for a three-hour oral argument.

We'll schedule it to be held in Courtroom 15B, but if anyone would rather appear virtually by video or by telephone, that's fine too. Just let Mary know. So anyone who can and wants to appear in person will be welcome in the

courtroom. Anyone who wants to appear or would rather appear by telephone or video, we'll make accommodations for that as well. So that's no problem. And so we'll deal with that on April 7th.

Is there anything else that we should discuss?

Although let me go back to Mr. Hall. What's your best estimate -- I do not want to put any pressure on your very generous offer, but what's your best estimate on whether you can get those materials either to me or filed in the docket? Within a couple of weeks? Would maybe two weeks be enough time for you?

MR. HALL: Yes, it will be, Your Honor. And hopefully it will be early next week.

THE COURT: Great. Okay.

And with respect to the request by Mr. Smith for page limits, I think what we should do is right now say that, under the local rules, the page limits of 35 pages will be the limitation. If somebody really finds that they need more than that, you're welcome to file a motion, and I'll consider it; but if we're going to have multiple motions to dismiss, my recommendation would be that the various movants confer among themselves. They can sort of divide up the topics or the types of arguments and then keep it to the 35 pages, and each can join in the motions of the other.

So let's say we have three arguments. Maybe Movant 1

will take the lead on Argument 1. Movant 2 will take the lead on Argument 2. Movant 3 will take the lead on Argument 3. And you can all just file one-pagers or incorporate them into the motions, that you join in the motions of the other folks, the other movants. That way you can all keep to your 35-page limit per party. And, of course, I will give Shoshone-Bannock leave right now to go beyond 35 pages, given that, most likely, you are going to be responding to a number of motions that may be as long as 35 pages each.

Does that sound fair and reasonable to everybody?

Well, I'll put it this way: Any objections from anyone to that approach?

All right. Hearing none, then that's what it will be.

Is there anything else that anyone would like to discuss this morning?

I'll start with Mr. McBride.

MR. McBRIDE: Nothing else from me, Your Honor.

THE COURT: Thank you.

Mr. Hall.

MR. HALL: Well, Your Honor, I would like to address, briefly, the confidentiality breach --

THE COURT: Sure.

MR. HALL: -- on the -- thank you, Your Honor.

We appreciate the Court quickly granting the motion to

seal as an initial step; however, these treaty tribes don't feel that simply sealing that breach is sufficient to address the harm.

The offending language is still before the Court; and so you may ask, "Well, what's the problem with that?"

Well, the problem, in our mind, with that is that knowing that these types of breaches can be then put before the Court even under seal -- it really chills the nature of the full and frank discussions that we need to have in the mediations as we continue to debate and try to reach a common resolution of what are really very sticky issues.

And it also chills and undermines the cooperative way the parties have developed of working together in this case over the last two decades-plus. So we continue to believe the proper remedy is to redact and refile the motion that was filed under seal.

THE COURT: All right. Mr. Smith, do you want to briefly respond?

MR. SMITH: Thank you, Your Honor.

I feel we've fully responded to this already, but we believe the proper remedy is to seal the issue. As we indicated to the Court, Shoshone-Bannock felt compelled to respond to allegations that had been made by the State of Oregon.

We did not believe that there was, in fact, a breach of

confidentiality. I would say that Mr. Hall should say "alleged breach" because Shoshone-Bannock disagrees that there was any breach. But we thought the appropriate remedy was to seek to seal. And, of course, Your Honor did grant that motion, which we certainly appreciate. We don't believe the redaction and refiling is necessary here.

THE COURT: All right. Let me go back to you, Mr. Hall.

What positive purpose -- what -- what value will be achieved by striking, redacting, and refiling a redacted version?

Mr. Hall, if you're speaking, we're back in the state of not hearing you.

Mr. Hall?

Mr. Hall, if you're speaking, we cannot hear you.

Mr. Hall?

MR. HALL: Thank you, Your Honor.

I again apologize for dropping the call. This headset is going directly into the trash after this hearing.

THE COURT: Okay. So the question on the table was -- I assume you heard Mr. Smith, but back to you, I mean, what benefit would now be achieved -- given that I've sealed the reply that you contend was the offending document, what benefit would be achieved by actually striking that reply and directing and allowing Mr. Smith to

file -- refile a redacted version? What's the benefit of that?

MR. HALL: Thank you, Your Honor.

It really provides reassurance to the parties that mediation confidentiality will not be breached moving forward, that the Court doesn't stand for any breaches of confidentiality like this, which really is sort of a basic rule. We have a mediation order in this case even about the confidentiality, and one of the main reasons for that confidentiality is so that the states, the intervenor-defendants, can speak clearly and freely and not worry about some of their comments being subject to, for example, public disclosure under the public records laws of the states.

But even more so, I think it sends a strong signal that the parties have developed a way of working together to develop these management agreements at the Court's urging. The Court respects the way they work together, encourages the full and frank discussions among the parties, that the parties know will be protected within that safe mediation space and not then inappropriately put before the district court while the mediations are going on.

THE COURT: All right. I understand your position.

Let me respond this way: Given what Mr. Smith has said

Shoshone-Bannock doesn't believe that there has been a breach -- I don't know enough about the case. I have not reviewed the parties' mediation agreement. I don't know enough about the issues to be able to decide now whether there has or has not been a breach. Both you and Mr. Smith are officers of the court and are also very well-respected, very talented advocates; so I accept that your argument is that there has been a breach, but I accept Mr. Smith's argument there hasn't.

If there really is an issue that I need to decide, of course, I will; but that would be after briefing and giving every party an opportunity to be heard on that question, and I'm really not quite sure that's the best way to accomplish the objective that you've just described.

Perhaps a better way to accomplish that objective is for the parties to confer, and perhaps either Warm Springs and Shoshone-Bannock taking the lead on this to see if there needs to be any revisions or maybe even guidelines or protocols revised on the mediation agreement so that everybody will clearly understand what is and is not covered by the -- by the confidentiality agreement.

It appears that, from what Mr. Smith has said, Shoshone-Bannock does not believe that what they did violated the confidentiality agreement.

It appears, from what, Mr. Hall, you've said, that Warm

Springs does believe they violated it.

As I said, I am not currently in a position to decide that issue one way or the other. But assuming everybody's acting in good faith, maybe that points to the need for further dialogue and maybe even a drafted memorandum of understanding or a set of protocols so that these types of disputes are less likely to arise in the future so that everybody knows exactly what will and will not be in violation.

I mean, I'll assure you, Mr. Hall, and everybody else, I take these confidentiality agreements among the parties very seriously. So, if you want me to say now that I take them seriously, of course, I do; and I do, but I'm not prepared to make a finding on whether there was or was not a breach, at least not without further briefing and argument and consideration.

So perhaps the best course of action is for there to be dialogue further between the parties that think there was a breach and the parties that think there was not a breach and see if additional written MOUs or protocols, or things like that, might help reduce this disagreement in the future.

So let me leave it at that right now.

MR. CUMMINGS: Your Honor?

THE COURT: Go ahead. Go ahead.

MR. CUMMINGS: Your Honor?

THE COURT: Go ahead.

MR. CUMMINGS: If I may, this is Dave Cummings for the Nez Perce Tribe.

THE COURT: Yes.

MR. CUMMINGS: And I appreciate your confirmation of the critical nature of mediation confidentiality. It's such an important aspect to any mediation in U.S. v. Oregon, I think I find myself in the place of being the longest-serving representative of any of the parties, and so over the past 30 years there have been two, if not three, mediation orders, filed with the Court, that took months to negotiate. Those are binding orders of the Court.

I appreciate your suggestion about the parties conferring. I might offer an additional suggestion, respectfully, that Judge Beckerman assist with this, because she is handling the mediation. At the outset of the mediation, we renewed our commitment under the existing mediation orders of the Court, and I think she is best positioned to assist the parties to determine whether an order to show cause of why this isn't a mediation violation or to reassure us that what looks like a breach to us was, in fact, not a breach; but I think that might be an additional opportunity to ensure, especially as we're dealing with this mediation on an expedited basis, that we're all continuing to operate the way we have for the past

30 years.

Thanks.

THE COURT: Well, let me meet you halfway there, but I'm not going to go all the way. Because I've sometimes served as a role of a mediator myself, and I recognize how critically important it is that all parties believe that the mediator is acting neutrally, and I have every confidence in Judge Beckerman. I'm sure the parties do too. If not, they should. But I think it might interfere with that if she were to make a recommendation to me as to whether or not there was or was not a breach. Whoever disagrees with that might question her impartiality going forward, and I don't want that to happen.

But that said -- and here's how I'll meet you halfway: If based upon this disagreement -- and I want the parties to confer. Based upon this disagreement, I think that the people that believe that there was a breach should confer with the people that think there wasn't. Because I'm sure the people -- I'm sure Mr. Smith and the Shoshone-Bannock Tribe, who say that they don't believe that there was a breach, would agree with the basic principle that the mediation agreement shouldn't be breached. I can't imagine --

Mr. Smith, am I correct in that? That you would agree, in principle, that the mediation agreement should not be

breached. It's just your position that, in this case, it wasn't. Am I correct, Mr. Smith?

MR. SMITH: That's correct, Your Honor. And Shoshone-Bannock fully supports the importance of that confidentiality and those binding agreements.

THE COURT: Right. So, therefore, what really has -- appears to be the situation here is that there's a misunderstanding or a -- rather, a disagreement -- a disagreement among the parties, in terms of what constitutes a breach and what doesn't, and that is where prospectively, or going forward, it might be helpful for the parties and now, with the assistance of Judge Beckerman, to come up with some additional guidelines -- maybe protocols, maybe MOUs, maybe amendments to the existing mediation confidentiality agreement -- so that there was no longer any doubt.

Maybe, Mr. Cummings or Mr. Hall, you're correct that there was a breach here, and I'll accept Mr. Smith's representations now that that was unintentional or inadvertent. Or perhaps Mr. Smith is right, and there wasn't a breach, but still Mr. Hall and Mr. Cummings and their clients believe that -- well, that still shouldn't have been put in a publicly filed document.

Well, going forward, those types of disagreements can be reduced or even eliminated by some better clarity of what is and is not subject to confidentiality and what will

trigger -- and what will constitute a breach and what won't constitute a breach.

So that's where I recommend parties confer further, and we all accept Mr. Cummings's suggestion that, if you want some assistance from our mediator, Judge Beckerman, in coming up with that type of forward-looking solution, that's fine. Ask her to do that with you. And then draft something.

If you want me to then sign off on it as a formal order, submit it to me. And if it's stipulated, of course, I'll sign it. But I think that's the better way to approach things going forward than to spend the time needed for people to file some type of order to show cause that I will have to resolve.

So that's what I'm suggesting right now. If that doesn't work, you're always welcome to get back to me either with a request for another telephone conference or filing a formal motion, but I think that's the best way to proceed going forward, at least until I learn more about this case.

All right. So, with that, anything further, Mr. Hall?

MR. HALL: Nothing further from me, Your Honor.

THE COURT: Thank you.

Anything further, Mr. Zeilman?

MR. ZEILMAN: No, Your Honor?

THE COURT: Mr. Brown, anything further?

MR. BROWN: No, Your Honor.

THE COURT: Thank you.

Anything further we should discuss this morning, Mr. Cummings or Ms. Steadman?

MR. CUMMINGS: No. Thank you, Your Honor.

THE COURT: Thank you.

Mr. Smith or Mr. Bacon?

MR. SMITH: Your Honor, very quickly, one item.

THE COURT: Sure.

MR. SMITH: On the items that Mr. Hall offered to pull together, just so I'm clear, I want to make sure that Shoshone-Bannock is included in the opportunity to review those materials and potentially add something. I think all the parties should. So is it -- am I correct in understanding that the attorneys will sort of confer together and then agree on a filing for Your Honor? Is that the plan that you were thinking of?

THE COURT: That would be my preference.

Mr. Hall, can you do that with Mr. Smith?

MR. HALL: We can do that, Your Honor.

THE COURT: Thank you so much.

And thank you for that suggestion, Mr. Smith.

MR. SMITH: Thank you, Your Honor. Nothing further.

THE COURT: Thank you.

For the State of Oregon, anything further, Ms. Beatty-Walters or Mr. Saylor or Ms. Chang?

MS. BEATTIE-WALTERS: Nothing further, Your Honor, from Oregon.

THE COURT: Thank you.

From Washington, Mr. Callow or Ms. Kaulukukui?

MS. KAULUKUKUI: Nothing further, Your Honor.

THE COURT: Ms. Kaulukukui, can you tell me one more time how to pronounce your name?

MS. KAULUKUKUI: Sure. It's Ka-oo-loo-ku-koo-ee.

THE COURT: Thank you.

All right. Anything further from Idaho, Mr. Moroney or Ms. Trever?

MR. MORONEY: Nothing further, Your Honor.

THE COURT: All right. Thank you all for calling in, and I look forward to getting up to speed on this case, and I'll appreciate everyone's assistance in helping me to do that.

Take care, everybody.

(Hearing concluded at 10:47 a.m.)

C E R T I F I C A T E

United States of America, et al. v. State of Oregon, et al.

3:68-cv-00513-SI

Telephonic Scheduling Conference

September 24, 2025

I certify, by signing below, that the foregoing is a true and correct transcript, to the best of my ability, of the telephonic proceedings heard via conference call, taken by stenographic means. Due to the telephonic connection, parties appearing via speakerphone or cell phone or wearing masks due to coronavirus, speakers overlapping when speaking, speakers not identifying themselves before they speak, fast speakers, the speaker's failure to enunciate, and/or other technical difficulties that occur during telephonic proceedings, this certification is limited by the above-mentioned reasons and any technological difficulties of such proceedings occurring over the speakerphone at the United States District Court of Oregon in the above-entitled cause.

A transcript without an original signature, conformed signature, or digitally signed signature is not certified.

/s/Jill L. Jessup, CSR, RMR, RDR, CRR, CRC

Official Court Reporter Signature Date: 11/19/2025
Oregon CSR No. 98-0346 CSR Expiration Date: 9/30/2026