Rob Roy Smith, OSB #003932
Email: rrsmith@ktslaw.com
Marthy Hernandez, WSBA #60618
Email: mahernandez@ktslaw.com
Kilpatrick Townsend & Stockton, LLP
1420 Fifth Avenue, Suite 3700
Seattle, Washington 98101
Tel: (206) 467-9600; Fax: (206) 623-6793

Alexander M. Mallory, SBA #036261
Email: amallory@ktslaw.com
Kilpatrick Townsend & Stockton, LLP
6909 E. Greenway Pkwy, Suite 100
Scottsdale, AZ 85254
Tel: (602) 726-7312

William F. Bacon, ISB #2766
Email: bill.bacon@sbtribes.com
General Counsel, Shoshone-Bannock Tribes
Monte Gray, ISB # 5988
Email: monte.gray@sbtribes.com
P.O. Box 306
Fort Hall, Idaho 83203
Tel: (208) 221-0357

Attorneys for Shoshone-Bannock Tribes

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br><br>STATE OF OREGON, *et al.*,<br><br>Defendants. | Case No. 3:68-cv-00513<br><br>SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE IN OPPOSITION TO MOTIONS TO DISMISS FIRST AMENDED COMPLAINT<br><br>HEARING DATE: APRIL 7, 2026 |

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - i
CASE NO. 3:68-cv-00513

Kilpatrick, Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION AND STATEMENT OF THE CASE.................................................2

    A.  Shoshone-Bannock's Treaty As Construed By This Court ...............................3

    B.  United States v. Oregon ...................................................................................5

    C.  *United States v. Oregon* Is A Multi-Sovereign Dispute Forum; It Is Not, And Never Has Been, Only About The Stevens Treaty Tribes ...................................7

    D.  All Parties Agree This Court Is The Correct Forum For Multi-Sovereign Disputes For All Treaty Right Adjudications ...................................................................9

II. LEGAL STANDARDS .............................................................................................12

    A.  Federal Rule of Civil Procedure 12(b)(1)—Lack of Subject Matter Jurisdiction .......................................................................................................................12

    B.  Federal Rule of Civil Procedure (12)(b)(6)—Failure to State a Claim .............12

    C.  Federal Rule of Civil Procedure (12)(e)—More Definite Statement.................13

III. ARGUMENT ............................................................................................................14

    A.  The Parties Waived Their Right To Assert Rule 12(b) Defenses That Were Available When The Shoshone-Bannock Filed Their Original Complaint ........14

    B.  The Article III Standing Argument Ignores The Law Of The Case ...................16

    C.  The Shoshone-Bannock Possess Article III Standing.........................................18

        1.  The Shoshone-Bannock have Suffered a Concrete and Particularized Injury ....................................................................................................19

        2.  The Injury is Traceable to the Opposing Parties' Actions .....................23

        3.  The Shoshone-Bannock's Injury will be Redressed by a Favorable Ruling ....................................................................................................29

    D.  The Shoshone-Bannock Has Established An "Actual Controversy" As Required By The Declaratory Judgment Act ...................................................................30

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - ii
CASE NO. 3:68-cv-00513

Kilpatrick, Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

E.     The Shoshone-Bannock Have Stated A Claim Upon Which Relief May Be Granted...................................................................................................31

F.     The Eleventh Amendment Does Not Protect Oregon.........................................33

G.     There is No Need for a More Definite Statement .................................................36

IV.     CONCLUSION.............................................................................................................37

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - iii
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Aholelei v. Dep't of Pub. Safety*,
5
    488 F.3d 1144 (9th Cir. 2007) ......................................................................35

6

*Am. States Ins. Co. v. Kearns*,
    15 F.3d 142 (9th Cir. 1994) ..........................................................................30

7

*Ashcroft v. Iqbal*,
8
    556 U.S. 662 (2009)......................................................................13, 31, 32

9

*Bell Atl. Corp. v. Twombly*,
10
    550 U.S. 544 (2007)..........................................................................31, 32

11

*Bethel Native Corp. v. Dep't of Interior*,
    208 F.3d 1171 (9th Cir. 2000) ......................................................................33

12

*Brooks v. Caswell*,
13
    2016 WL 866303 (D. Or. 2016)..............................................................14, 15

14

*Cardenas v. Anzai*,
15
    311 F.3d 929 (9th Cir. 2002) ........................................................................19

16

*Commonwealth v. Trump*,
    888 F.3d 52 (3d Cir. 2018)............................................................................16

17

*Conservation Force v. Salazar*,
18
    646 F.3d 1240 (9th Cir. 2011) ......................................................................12

19

*Culinary Workers Union v. Del Papa*,
20
    200 F.3d 614 (9th Cir. 1999) ........................................................................23

21

*DeSoto v. Yellow Freight Sys., Inc.*,
    957 F.2d 655 (9th Cir. 1992) ........................................................................13

22

*Dreier v. United States*,
23
    106 F.3d 844 (9th Cir. 1996) ........................................................................21

24

*Edelman v. Jordan*,
    415 U.S. 651 (1974)......................................................................................33

25

*FW/PBS, Inc. v. Dallas*,
26
    493 U.S. 215 (1990)......................................................................................18

27

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - iv
CASE NO. 3:68-cv-00513

Kilpatrick, Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

*Gonzales v. Gorsuch*,
   688 F.2d 1263 (9th Cir. 1982) ........................................................29

*Griffin v. Cedar Fair, L.P.*,
   817 F. Supp. 2d 1152 (N.D. Cal. 2011) ...........................................13

*Idaho v. Coeur d'Alene Tribe of Idaho*,
   521 U.S. 261 (1997)..........................................................................33

*Internet Products LLC v. LLJ Enterprises, Inc.*,
   2020 WL 6883430 (D. N.J. 2020) ...................................................14

*Kokkonen v. Guardian Life Ins. of Am.*,
   511 U.S. 375 (1994)..........................................................................12

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
   591 U.S. 657 (2020) .........................................................................17

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007)....................................................................25, 30

*Neveu v. City of Fresno*,
   392 F. Supp. 2d 1159 (E.D. Cal. 2005)................................13, 36, 37

*New Hampshire v. Maine*,
   532 U.S. 742 (2001)..........................................................................11

*Newby v. Enron Corp.*,
   443 F.3d 416 (5th Cir. 2006) ...........................................................16

*Palm Springs Med. Clinic, Inc. v. Desert Hosp.*,
   628 F. Supp. 454 (C.D. Cal. 1986) ..................................................36

*Pascal v. Concentra, Inc.*,
   2020 WL 4923974 (N.D. Cal. 2020) ...............................................14

*Principal Life Ins. Co. v. Robinson*,
   394 F.3d 665 (9th Cir. 2005) ...........................................................30

*Puyallup Tribe v. Dep't of Game*,
   391 U.S. 392 (1968)............................................................................5

*Ruiz v. Estelle*,
   161 F.3d 814 (5th Cir. 1998) ...........................................................16

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) .........................................................12

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - v
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

*Sagan v. Apple Comput., Inc.*,
874 F. Supp. 1072 (C.D. Cal. 1994) ............................................................37

*Skokomish Indian Tribe v. Goldmark*,
994 F. Supp. 2d 1168 (W.D. Wash. 2014).............................................19

*Sohappy v. Smith*,
302 F. Supp. 899 (D. Or. 1969) .................................................... *passim*

*Sohappy v. Smith*,
529 F.2d 570 (9th Cir. 1976) .............................................3, 6, 26, 27

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016).............................................................................18

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ...........................................................13

*State v. Cutler*,
708 P.2d 853 (Idaho 1985).................................................................4

*Town of Chester v. Laroe Ests. Inc.*,
581 U.S. 433 (2017).............................................................................16

*Trademaven Clearing, LLC v. Hood*,
2012 WL 1108119 (E.D. Tex. 2012) .................................................37

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)..........................................................................23

*United States v. Braren*,
338 F.3d 971 (9th Cir. 2003) ...........................................................30

*United States v. Crookshanks*,
Nos. CR 77-168, CR 77-169, CR 77-170 (D. Or. Nov. 30, 1977) ...............27, 34

*United States v. Oregon*,
122 F.R.D. 571 (D. Or. 1988) ......................................................7, 8

*United States v. Oregon*,
2011 WL 13377660 (D. Or. Mar. 11, 2011)........................................28

*United States v. Oregon*,
657 F.2d 1009 (9th Cir. 1981) .................................................... *passim*

*United States v. Oregon*,
699 F.Supp. 1456 (D. Or. 1988), *aff'd*, 913 F.2d 576 (9th Cir. 1990), *cert denied*, 501 U.S. 1250 (1991) .............................................. *passim*

*United States v. Oregon,*
   718 F.2d 299 (9th Cir. 1983) ...................................................................21

*United States v. Oregon,*
   787 F.Supp. 1557 (D.Or. 1992) ...............................................................21

*United States v. Oregon,*
   913 F.2d 576 (9th Cir. 1990) ........................................................... *passim*

*United States v. Washington,*
   384 F. Supp. 312 (W.D. Wash. 1974), *aff'd and remanded,* 520 F.2d 676
   (9th Cir. 1975)............................................................................. *passim*

*Warth v. Seldin,*
   422 U.S. 490 (1975)...................................................................................19

*Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n,*
   443 U.S. 658 (1979)...................................................................................35

*White v. Lee,*
   227 F.3d 1214 (9th Cir. 2000) ..................................................................12

*Wolfe v. Strankman,*
   392 F.3d 358 (9th Cir. 2004) ....................................................................12

**Statutes**

15 Stat. 673 ........................................................................................................3

28 U.S.C. § 1331.............................................................................................35

28 U.S.C. § 2201(a) ..................................................................................30, 31

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1388
   (3d ed. 2004) .........................................................................................15

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - vii
CASE NO. 3:68-cv-00513

Kilpatrick, Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

Plaintiff-Intervenor Shoshone-Bannock Tribes (the "Shoshone-Bannock") submit this consolidated Response[1] in Opposition to the state of Washington's Motion to Dismiss (Dkt. 2681), the Confederated Tribes of the Umatilla Indian Reservation, the Confederated Tribes of the Warm Springs Reservation of Oregon, the Confederated Tribes and Bands of the Yakama Nation, and the Nez Perce Tribe ("Stevens Treaty Tribes") Joint Motion to Dismiss (Dkt. 2682) and the state of Oregon's Motion to Dismiss (Dkt. 2683). The three motions overlap substantially. Oregon requests dismissal for lack of jurisdiction under Eleventh Amendment immunity, lack of standing, or, alternatively, for failure to state a claim. Washington requests dismissal for lack of standing and failure to state a claim. The Stevens Treaty Tribes also request dismissal for lack of standing and failure to state a claim, or in the alternative, for a more definite statement.

Read together, the six sovereigns' motions paint an extremely limited picture of the purpose of this Court's on-going jurisdiction and present a regressive standing theory that would require a Shoshone-Bannock tribal member to get arrested for fishing on the banks of the Columbia River for this case to be heard. *See generally id.* The motions to dismiss grossly distort what this case is about. Despite the opposition parties' efforts to exclude Shoshone-Bannock's already recognized reserved treaty rights from the case and to conveniently recast their prior positions, not to mention Oregon's spurious immunity claim, nothing about Shoshone-Bannock's claims manufacture conflict or litigate hypothetical disputes.

Rather, the First Amended Complaint ("FAC") seeks what the Nez Perce, Warm Springs, and Umatilla tribes lack, and precisely what this Court and the opposing parties have repeatedly

---

[1] This Consolidated Response complies with the page and word limit requirements of L.R. 7-2(b)(1) because Shoshone-Bannock is entitled to file three separate responses totaling 33,000 words, or in the alternative, 105 pages.

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 1
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

acknowledged was coming: a judicial determination to specifically define the reach of a reserved treaty right, so that it may be applied coherently to present-day management, allocation, and the protection of the Columbia River Basin fishery resource.  *United States v. Oregon*, 657 F.2d 1009, 1015 (9th Cir. 1981) ("The original action, by seeking a declaration of treaty fishing rights, sought to apportion the Columbia River anadromous fishery among competing sovereigns."); Dkt. 2682 at 24 ("[Shoshone-Bannock] still has not established that it possesses treaty fishing rights that would entitle it to any specific share of the fisheries.").  In so doing, the FAC alleges a real and ongoing dispute among sovereigns with adverse legal interests, concrete injury flowing from the absence of adjudication, and relief that only this Court is uniquely positioned to provide. At the pleading stage, that is more than sufficient.

As detailed below, the FAC alleges Article III standing, states substantive treaty-based claims, and provides sufficient factual detail to withstand dismissal under Rules 12(b)(1) and 12(b)(6).  Because the Shoshone-Bannock have established subject-matter jurisdiction, standing, an actual controversy, and a plausible claim for relief within this Court's retained *in rem* jurisdiction, the motions to dismiss should be denied, and this case should proceed to adjudication on the merits.

## I.     INTRODUCTION AND STATEMENT OF THE CASE

For more than four decades, this Court has exercised continuing jurisdiction to resolve competing sovereign claims to the Columbia River fishery, to define the scope of treaty rights, and to ensure the fair and lawful management of a shared and finite resource.  The FAC seeks to adjudicate where and how much fish the Fort Bridger Peace Treaty reserved for the Shoshone-Bannock.  The FAC fits squarely within this framework.

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 2
CASE NO. 3:68-cv-00513

Kilpatrick, Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

## A.  Shoshone-Bannock's Treaty As Construed By This Court

The Shoshone-Bannock, collectively, comprise a single sovereign tribal nation, federally-recognized and beneficiary to a federal treaty with the United States.  *See* Fort Bridger Treaty with the Shoshone-Bannock Tribes, concluded on July 3, 1868, ratified on Feb. 24, 1869 (15 Stat. 673) (the "Peace Treaty").  Pursuant to its Peace Treaty, the Shoshone-Bannock agreed, among other things, to reside on a fraction of their vast original homeland, Dkt. 2418-678 at 5, and in exchange, the Shoshone-Bannock understood they forever preserved aspects of their culture as federal property rights.  Critical to this dispute, the plain language of Article IV's off-reservation rights provision is intentionally expansive:

> The Indians herein named agree . . . **they shall have the right to hunt on the unoccupied land of the United States so long as game may be found thereon**, and as long as peace subsists among the whites and Indians on the borders of the hunting districts.

Treaty, art. IV, 15 Stat. 673 (emphasis added).  By its plain language, the Peace Treaty departs from the more limiting reservation of right language of the Stevens Treaty Tribes[2] as it imposes only four conditions on the Shoshone-Bannock's reserved rights: (1) the land must belong to

---

[2] In *United States v. Washington*, the court examined the Stevens Treaty fishing clause, which provides "[t]he right of taking fish, at all usual and accustomed grounds and stations, is further secured to said Indians, in common with all citizens of the territory."  *United States v. Washington,* 384 F. Supp. 312, 331 (W.D. Wash. 1974), *aff'd and remanded,* 520 F.2d 676 (9th Cir. 1975).  The court concluded "every fishing location where members of an Indian tribe customarily fished from time to time at and before treaty times, however distant from the then usual habitat of the tribe, and whether or not other tribes then also fished in the same waters, was a usual and accustomed ground or station" at which the treaty tribe reserved the right to fish." *Id.* at 332.  This adjudication necessarily limits the exercise and management of Stevens Treaty fishing rights to the geographic scope of those nonexclusive usual and accustomed places. *Id.* at 407.  The court further concluded the phrase "in common with all citizens of the territory" secured to the Stevens Treaty Tribes a fifty-percent allocation of the fishery resource. *Id.* at 343.  These rulings have been adopted into this case as to the Stevens Treaty Tribes. *Sohappy v. Smith*, 529 F.2d 570, 574 (9th Cir. 1976).

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 3
CASE NO. 3:68-cv-00513

Kilpatrick, Townsend & Stockton LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

"the United States," (2) the land must be "unoccupied," and the Shoshone Bannock may hunt (3) "so long as game may be found" on the unoccupied federal land, and (4) "so long as peace subsists among the whites and Indians on the borders of the hunting districts." *Id.* Indeed, contemporary treaty minutes and early judicial interpretations reflect this provision was understood by the Shoshone-Bannock to preserve a wide-ranging right across lands not settled by non-Indian communities. As General Auger explained during the 1868 negotiations, the Shoshone-Bannock would be permitted to "hunt wherever you can find game," even as they were encouraged to establish permanent homes on a reservation. *State v. Cutler*, 708 P.2d 853, 863 (Idaho 1985) (Bistline, J., dissenting) (quoting Auger Minutes). Chief Washakie likewise stated he wanted "the privilege of going over the mountains to hunt where I please," reflecting an understanding the reserved right extended broadly across the surrounding landscape. *Id.* at 858.

The Shoshone-Bannock's reserved treaty "right to hunt" has already been judicially construed by the Ninth Circuit in this case, and the Idaho Supreme Court before it, to include the "right to fish." *United States v. Oregon*, 913 F.2d 576, 586 n.8 (9th Cir. 1990) (citing *State v. Tinno*, 497 P.2d 1386 (Idaho 1972)). However, the specifically defined reach of the Shoshone-Bannock's reserved treaty right to fish "on the unoccupied lands of the United States" has not. It is that lack of an adjudication as to scope of the Shoshone-Bannock's reserved treaty rights this Court is now asked to resolve. As the Ninth Circuit put it thirty-six years ago, "[t]he Shoshone[-Bannock] treaty rights have been recognized to include the right to fish, **but have not been more specifically defined**." *Id.* at 586 (emphasis added).

That the scope of the Shoshone-Bannock's treaty right to fish has not been "specifically defined" is no secret: the Columbia River Management Agreements developed in this case by the parties and approved by this Court have repeatedly acknowledged this "uncertain status." *Id.*

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 4
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

All parties have consequently been on notice such an adjudication is unresolved, all "other parties recognize that Shoshone[-Bannock] treaty rights should be protected," *id.*, and all other parties understand that "once their rights are determined . . . [the existing Columbia River Management Agreement] may be amended to incorporate their harvest and correlative rights as determined." *United States v. Oregon*, 699 F.Supp. 1456, 1464 (D. Or. 1988), *aff'd*, 913 F.2d 576 (9th Cir. 1990), *cert denied*, 501 U.S. 1250 (1991). Without adjudication, the Shoshone-Bannock's ability both to exercise and manage their treaty fishing rights in the Columbia River Basin remains constrained.

## B.  *United States v. Oregon*

The present dispute traces its origins to two cases filed in 1968 to protect tribal members' off-reservation fishing rights from state overreach. The first was *Sohappy v. Smith*, 302 F. Supp. 899 (D. Or. 1969), brought by fourteen members of the Confederated Tribes and Bands of the Yakama Nation. The second, reflected in the caption of this case, was *United States v. Oregon*, brought by the United States itself. "Each suit was brought against the State of Oregon to define the Indians' treaty right to take fish 'at all usual and accustomed places' on the Columbia River and its tributaries." *United States v. Oregon*, 699 F. Supp. at 1458. The plaintiffs sought judicial determination of the extent to which Oregon could regulate treaty fishing activities following the Supreme Court's decision in *Puyallup Tribe v. Dep't of Game*, 391 U.S. 392 (1968). The Stevens Treaty Tribes subsequently intervened as plaintiffs in the action brought by the United States. *Sohappy*, 302 F. Supp. at 899. The two cases were consolidated.

On July 8, 1969, the Honorable Robert C. Belloni issued an opinion affirming the supremacy of federal treaty rights over conflicting state law and regulation. Judge Belloni held "[t]he treaty Indians, having an absolute right to that fishery [the Columbia River and its

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 5
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

tributaries], are entitled to a fair share of the fish produced by the Columbia River system." *Id.* at 911. He further held "the state cannot so manage the fishery that little or no harvestable portion of the run remains to reach the upper portions of the stream[s] where the historic Indian places are mostly located." *Id.* Recognizing the dynamic and multi-sovereign nature of the dispute, the court concluded "[c]ontinuing the jurisdiction of this court in the present case may, as a practical matter, be the only way of assuring the parties an opportunity for timely and effective judicial review." *Id.*

As a result, "[a]ny party at anytime [may] apply to the court for a subsequent modification of any provision of th[e original] decree where the continued application of the decree has become inequitable or impracticable." *United States v. Oregon*, 699 F. Supp. at 1459 (citing *Sohappy v. Smith*, 529 F.2d at 572).

Despite these rulings, the states of Washington and Oregon continued efforts to regulate treaty fishing and, in 1974, closed the Columbia River to Indian commercial fishing. *Sohappy*, 529 F.2d at 572. This Court determined those actions violated the original decree and failed to protect treaty rights or ensure the tribes' "fair share" of the fish. *Id.* The Court amended its 1969 judgment to declare "[t]he Indian treaty fishermen are entitled to have the opportunity to take up to 50 percent of the harvest of the spring Chinook Salmon run destined to reach the tribes' usual and accustomed grounds and stations." *Id.* The Ninth Circuit affirmed, noting that its sister case, *United States v. Washington*, reached a similar allocation and, in future disputes, "the district court will have the benefit of *United States v. Washington* . . . to aid in its future determinations." *Id.* at 574. Administration of these shared allocations ultimately produced the modern Columbia River Basin management regime.

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 6
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**C.   *United States v. Oregon* Is A Multi-Sovereign Dispute Forum; It Is Not, And Never Has Been, Only About The Stevens Treaty Tribes**

This Court approved the first Columbia River Management Agreement in 1977, titled "A Plan for Managing Fisheries on Stocks Originating from the Columbia River and its Tributaries above Bonneville Dam." *United States v. Oregon*, 699 F. Supp. at 1459. The Agreement established conservation objectives, fishing regulations, and mechanisms for future management. *Id.* In 1982, two tribes gave notice of their intent to withdraw or renegotiate the Agreement, prompting this Court to order renewed negotiations. *Id.*

During those negotiations, the state of Idaho and the Shoshone-Bannock were granted intervention to protect their interests in the Columbia River fishery. *United States v. Oregon*, 122 F.R.D. 571, 573 (D. Or. 1988). When a modified agreement was released in 1988, both Idaho and the Shoshone-Bannock objected. The Shoshone-Bannock opposed provisions that qualified their status and geographically limited their participation. *United States v. Oregon*, 699 F. Supp. at 1464-65. This Court amended the Agreement to recognize the Shoshone-Bannock's "full status as a party," but left regional limitations in place based on the understanding "by their own statements, the Shoshone-Bannock Tribes agree that the scope of their 1868 treaty fishery rights have not been determined, nor should it have been," because the Tribe had not yet sought adjudication. *Id.* at 1465-66. Since then, this Court has approved each successive management agreement which expressly preserved the right of "the Shoshone-Bannock [to] pursue litigation on their complaint in intervention or any other claims they may have concerning" the Peace Treaty. *See* 2018-2027 *United States v. Oregon* Management Agreement, Dkt. 2607-1 at 7.

As this history demonstrates, *United States v. Oregon* evolved from a tribal-member enforcement action into a comprehensive, continuing forum "to apportion the Columbia River

anadromous fishery among competing sovereigns" that share overlapping governmental, cultural, and treaty-based interests. *United States v. Oregon*, 657 F.2d at 1015. Although the Stevens Treaty Tribes attempt to re-cast this case as solely about one group of entities and their rights (conveniently, their own), *see* Dkt. 2682 at 3, this mischaracterization is both a significant understatement and runs counter to the United States' understanding of the case it brought:

> We [the United States] are unaware of any statement that may have been made on behalf of the United States in *U.S. v. Oregon* or elsewhere, that no tribes other than the four who are parties to that suit have usual and accustomed fishing places on the Columbia River. **The most that we believe has been said is that no other tribe has been found or determined to have such rights**. In any event, we agree such a statement would be immaterial [to a] Tribe's right to seek [a] determination . . . Nor do we believe that any implication should be drawn as to the existence or nonexistence of [that Tribe's] treaty fishing rights on the Columbia River from the omission of the . . . Tribe from *U.S. v. Oregon* or the failure of the United States to have included a claim on behalf of that tribe in that litigation. ([For example, in *United States v. Washington*] the United States filed suit on behalf of only seven tribes in the case area. But such limitation was never intended to imply that we thought only those seven had treaty fishing rights in the area.).

*United States v. Washington*, No. 9213, Dkt. 1630 at 2 (Mem. of U.S. Re Quinault Request to Determine Treaty Fishing Places Outside the Case Area (Nov. 21, 1975)) (emphasis added).

Accordingly, this case is correctly viewed as concerning all present and future sovereign interests in "the entire Columbia River." *United States v. Oregon*, 657 F.2d at 1016. Thus, the Court's jurisdiction extends from "[t]he mouth of the Columbia," *United States v. Oregon*, 122 F.R.D. at 576, to any "particular tributary or area[s] where [the salmon] spawn," *Sohappy*, 302 F. Supp. at 910, and encompasses the full geographic and ecological scope of the Columbia River system. That system includes not only the nonexclusive usual and accustomed fishing places of the Stevens Treaty Tribes, but also the "unoccupied lands of the United States" throughout the mainstem and the Columbia Basin in which the Shoshone-Bannock expressly retained treaty fishing rights under the Peace Treaty. Falsely framing *United States v. Oregon* as a proceeding

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 8
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

"tethered" to one treaty or one group of tribes proves inconsistent with the case's history, the United States' own understanding of the litigation it initiated, and this Court's longstanding exercise of jurisdiction over competing sovereign interests and treaty rights that converge within the Columbia River.  *See* Dkt. 2682 at 3.

### D. All Parties Agree This Court Is The Correct Forum For Multi-Sovereign Disputes For All Treaty Right Adjudications

Resolving multi-sovereign disputes—particularly disputes concerning the scope of any tribe's treaty rights in the Columbia Basin—is the central purpose of this Court's continued jurisdiction in *United States v. Oregon*.  All parties acknowledged this function, at least until they filed their motions to dismiss.

As recently as a few years ago, when the Court considered administratively closing this case, all parties opposed closure, emphasizing the necessity of a judicial forum to resolve multi-sovereign disputes, including treaty rights adjudications like this one.   The United States explained:

> The Judgment in *United States v. Oregon*, 68-cv-513, encompasses issues beyond the harvest and production measures agreed upon in the Management Agreement because the case and associated Judgment are about treaty fishing rights and the continued protection of those treaty rights . . . For example, enforcement of the Judgment **necessarily involves the geographical scope of these treaty fishing rights, potential disputes among Tribes regarding usual and accustomed fishing places, and fishery management actions in tributaries to the Columbia River that lie outside the Management Agreement, but that potentially affect the fair and equitable sharing of the resource**.

Dkt. 2618 at 9-10 (emphasis added).   The United States further clarified the parties sought confirmation that "[t]here continues to be a judicial forum for civil resolution of the disputes that arise affecting the Treaty fishing rights that are subject matter of case 68-513." *Id.* at 11-12 (citing Dkt. 2619 at 2.).

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 9
CASE NO. 3:68-cv-00513

Kilpatrick, Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

Notably, although the Stevens Treaty Tribes now argue adjudication to specifically define Shoshone-Bannock's treaty rights as directed by the Ninth Circuit somehow falls outside the scope of this case, *see* Dkt. 2682 at 9, 18-19, they previously took the opposite position.  In opposing closure, the Stevens Treaty Tribes explained:

> The Court's retained jurisdiction in this case has been needed to resolve disputes . . . among parties regarding other issues that have fallen outside the scope of those [management] plans. . . . The harvest and allocation management agreements the parties negotiate are only "partial settlements," and the Court's retained jurisdiction ensures that it can address disputes that arise within the scope of this case aside from any agreement or consent decree.

Dkt. 2619 at 11-12.  They further described this litigation as "the saga of Pacific Northwest Native American treaty fishing rights; a saga that has spanned many generations and over forty years of federal litigation.  If history is our guide, it will not be the last chapter written."  *Id*. at 24 (internal citations omitted).  And, they warned closure would:

> [B]e fundamentally inequitable, unfair, and work manifest injustice to all parties to effectively overturn the law of this case and retain jurisdiction only to enforce the 2018 Agreement entered into by the parties . . . Such a posture eliminates the only existing judicial forum with any subject matter jurisdiction for civil resolution of the disputes that may arise affecting the Treaty fishing rights that are the subject of this case.

*Id.* at 27.  The Stevens Treaty Tribes further acknowledged, because of sovereign immunity, dismissal of this case would "effectively deprive the parties of a forum in which to have Treaty fishing rights issues decided" and make intergovernmental disputes "virtually impossible, as a practical matter, to adjudicate."  *Id.* at 18-19. And, importantly, the Stevens Treaty Tribes emphasized "**[t]his Court's retained jurisdiction is necessary to resolve disputes . . . outside the Agreement that may affect Treaty Fishing Rights**," including disputes not covered by management plans. *Id.* at 23 (emphasis added); *see also id.* at 24 (citing *United States v. Oregon*, 2008 WL 3834169 (D. Or. Aug. 13, 2008), *aff'd sub nom. United States v. Confederated Tribes*

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 10
CASE NO. 3:68-cv-00513

Kilpatrick, Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

*of Colville Indian Rsrv.*, 606 F.3d 698 (9th Cir. 2010) (adjudicating non-party tribe's claim to fishery) for the proposition that treaty fishing rights disputes involving even non-parties have been resolved within *United States v. Oregon*).

The States echoed these concerns. Idaho explained dismissal "may have the practical effect of depriving parties of an effective forum to resolve disputes" due to sovereign immunity and time limitations. Dkt. 2626 at 2. Oregon emphasized the importance of "the ongoing availability of the federal forum for disputes that arise affecting the Treaty fishing rights that are subject matter of case 68-513." Dkt. 2627 at 2. Washington agreed. *See* Dkt. 2628.[3] Shoshone-Bannock's treaty rights are undeniably among those that are already the "subject matter of [this] case." *United States v. Oregon*, 913 F.2d at 586.

It is within this judicial and factual framework the Shoshone-Bannock's instant request for adjudication to specifically define its treaty fishing rights under the Peace Treaty as applied to the Columbia River and its tributaries must be considered. That the Peace Treaty is not a Stevens Treaty is true but beside the point. As recognized by this Court, the Ninth Circuit, and by all parties to the Columbia River Management Agreements since 1988, the specified reach of

---

[3] The parties should be judicially estopped from making a 180-degree turn on their prior positions to argue against Shoshone-Bannock now. The doctrine of judicial estoppel codifies the rule "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation omitted). The *New Hampshire* Court identified three factors typically inform the decision whether to apply judicial estoppel. First, "a party's later position must be 'clearly inconsistent' with its earlier position." *Id.* at 750 (internal quotation omitted). Second, the party must have "succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception either the first or the second court was misled." *Id.* (internal quotation omitted). Finally, the Court considers whether "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair determinant on the opposing party if not estopped." *Id.* at 751. All three of the *New Hampshire* factors are met here.

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 11
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

this clause, as understood by the Shoshone-Bannock at the time of treaty signing, has never been adjudicated, leaving the scope of the Tribes' treaty fishing rights undefined within this forum – a forum all parties have previously argued is the correct place for such a right to be adjudicated.

## II.    LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(1)—Lack of Subject Matter Jurisdiction

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction.  Federal courts are courts of limited jurisdiction, and the party invoking jurisdiction bears the burden of establishing it.  *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994), Fed. R. Civ. P. 12(b)(1).

A jurisdictional challenge under Rule 12(b)(1) may be either facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Where, as here, the challenge is facial, the Court's review is confined to the allegations in the complaint.  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  The challenger asserts only that the allegations, taken as true, are insufficient on their face to invoke federal jurisdiction.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In resolving a facial challenge, the Court assumes the truth of the complaint's factual allegations and draws all reasonable inferences in favor of the nonmoving party.  *Wolfe*, 392 F.3d at 362.

### B.  Federal Rule of Civil Procedure (12)(b)(6)—Failure to State a Claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011), Fed. R. Civ. P. (12)(b)(6).  Dismissal is appropriate only where the complaint lacks a cognizable legal theory or fails to allege sufficient facts under a cognizable theory.  *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 12
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009), Fed. R. Civ. P. 8(a)(2). While detailed factual allegations are not required, a complaint must allege more than labels, conclusions, or a formulaic recitation of elements. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, the complaint must allege sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Id.* (quoting *Twombly*, 550 U.S. at 570).

In evaluating a Rule 12(b)(6) motion, the Court accepts the complaint's factual allegations as true and construes them in the light most favorable to the nonmoving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). If dismissal is warranted, leave to amend should be granted unless amendment would be futile. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992), Fed. R. Civ. P. 12(b)(6).

## C. Federal Rule of Civil Procedure (12)(e)—More Definite Statement

Federal Rule of Civil Procedure 12(e) permits a motion for a more definite statement only where a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The rule is designed to address unintelligible pleadings, not to require greater factual detail. *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1169 (E.D. Cal. 2005). Such motions are generally disfavored, as pleadings need only provide fair notice of the nature of the claims asserted. *Griffin v. Cedar Fair, L.P.*, 817 F. Supp. 2d 1152, 1154 (N.D. Cal. 2011). Accordingly, a Rule 12(e) motion should not be granted where a defendant has framed a responsive pleading. *Id.* (quoting *Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F. Supp. 940, 949 (E.D. Cal. 1981)).

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 13
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

# III.    ARGUMENT

Accepting the Shoshone-Bannock's allegations as true, and reading the FAC within the proper context of the continuing jurisdiction exercised in this case, the Court possesses subject matter jurisdiction to hear the dispute to specifically define the Shoshone-Bannock's reserved treaty fishing rights.  Moreover, there is nothing vague about the FAC given the Shoshone-Bannock's history in this case since intervention, the parties' Management Agreements, and the parties previous acknowledgement of the effect of the still unadjudicated rights of the Shoshone-Bannock on fish allocation and management within the Columbia Basin.

## A. The Parties Waived Their Right To Assert Rule 12(b) Defenses That Were Available When The Shoshone-Bannock Filed Their Original Complaint

When the Shoshone-Bannock filed its original complaint, only the Warm Springs Tribe answered.  *See* Dkt. 1395.  Thus, as a threshold matter, by failing to answer or otherwise respond to the Shoshone-Bannock's original complaint, the Stevens Treaty Tribes and the states of Oregon and Washington waived their right to assert Rule 12(b) defenses that were available at that time.

A defendant may assert a Rule 12(b) defense against an amended complaint only to the extent the defense challenges a "new matter" not contained in the original complaint.  *See Brooks v. Caswell*, 2016 WL 866303, at *3 (D. Or. 2016) (denying defendant's motion to dismiss amended complaint alleging same causes of action as original complaint and concluding defendant waived its 12(b)(6) defense by failing to assert defense against original complaint); *Pascal v. Concentra, Inc.*, 2020 WL 4923974, at *2 (N.D. Cal. 2020) (same); *Internet Products LLC v. LLJ Enterprises, Inc.*, 2020 WL 6883430, at *2 (D. N.J. 2020) (noting that a plaintiff's amended complaint "does not—and should not—automatically revive any defenses and objections" waived by defendant in response to the original complaint, including a

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 14
CASE NO. 3:68-cv-00513

Kilpatrick, Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

12(b)(6) defense); Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1388 (3d ed. 2004) ("The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in a timely fashion prior to the amendment of the pleading; conversely, a Rule 12 defense that becomes available because of new matter in the amended complaint may be asserted by motion.").

The Shoshone-Bannock's FAC does not contain a new matter. The FAC seeks the same relief as its original complaint and as expressly and repeatedly reserved in past management plans, namely to specifically define the scope of the Shoshone-Bannock's off-reservation treaty rights in the Columbia River and its tributaries. Dkt. 2607-1 at 7 ("The Shoshone-Bannock [may] pursue litigation on their complaint in intervention or any other claims . . . concerning the Shoshone-Bannock Tribes' Fort Bridger Treaty of July 3, 1868."). The FAC does not add new claims, does not challenge new conduct by Defendants, nor does it introduce new legal theories.

Instead, the FAC updates its factual allegations to reflect developments over the past thirty years and underscores the Shoshone-Bannock's need for a secured fair and equitable share of its treaty allocation. Because the FAC does not include a new matter, the Stevens Treaty Tribes and the states of Oregon and Washington waived their right to assert Rule 12(b) defenses now. The Court should accordingly follow its precedent and deny their motions on this ground alone. *See Brooks*, 2016 WL 866303, at *3 (finding that amendments to an initial complaint that "appear merely to correct insufficient allegations and flesh out arguments that were previously bare" do not create a "new" basis on which to assert a motion to dismiss).

1

2    **B.  The Article III Standing Argument Ignores The Law Of The Case**

3        Even if the Court were to reach the merits of Defendants' Rule 12(b) motions, their

4    Article III standing arguments fail for two independent reasons grounded in settled law

5    governing intervention and this Court's retained jurisdiction.

6        First, no rule requires plaintiff intervenors to establish an independent basis for standing

7    when they seek the same relief as existing plaintiffs in a pending case.  Courts are clear that

8    "Article III does not require intervenors to independently possess standing where the intervention

9    is into a subsisting and continuing Article III case or controversy and the ultimate relief sought

10   by the intervenors is also being sought by at least one subsisting party with standing to do so."

11   *Ruiz v. Estelle*, 161 F.3d 814, 829-30 (5th Cir. 1998); *see also Newby v. Enron Corp.*, 443 F.3d

12   416, 422 (5th Cir. 2006) ("[T]here is no Article III requirement that intervenors have standing in

13   a pending case . . ."); *Commonwealth v. Trump*, 888 F.3d 52, 57 n. 2 (3d Cir. 2018) (proof of

14   Article III standing is only necessary when a proposed defendant intervenor is seeking relief

15   beyond that requested by the originally named defendants).  Put differently, Article III standing

16   is required of intervenors seeking "different" or "additional" relief from parties with standing in

17   the case.  *Town of Chester v. Laroe Ests. Inc.*, 581 U.S. 433, 439-40 (2017).

18       That is not the case here.  The Shoshone-Bannock seek the same relief against the

19   Defendant States that the Stevens Treaty Tribes also sought when they joined this continuing

20   jurisdiction case: to recognize and protect reserved treaty rights so the tribe and tribal members

21   can manage and exercise those rights in the Columbia River Basin.  *Compare* FAC at 13-14 *with*

22   Dkts. 2-1334 at 8-9 (Umatilla Compl.); 2-1344 (Warm Springs Compl.); 2-1347 at 9 (Yakama

23   Compl.); *and* 2-1320 at 8-10 (Nez Perce Compl).  Given that the Shoshone-Bannock seek no

24   relief beyond that previously sought by the plaintiffs and plaintiff-intervenors already in this

25

26

27

case, it need not possess its own Article III standing to proceed and the Court can likewise reject this basis for the motions to dismiss on this ground alone. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 673, 674 n.6 (2020) (lower court "erred by inquiring into [defendant-intervenor's] independent Article III standing").

Second, and independently dispositive, Defendants' standing arguments disregard the scope and effect of this Court's retained jurisdiction. The judgment in *United States v. Oregon* expressly provides that "[a]ny party at any time may apply to the Court for a subsequent modification of any provision of this decree where the continued application of the decree has become inequitable or impracticable." Dkt. 2618-3 ¶ 4; *see United States v. Oregon*, 699 F. Supp. at 1459 (citing *Sohappy*, 529 F.2d at 572). That provision is deliberately broad, and it means what it says.

Courts administering continuing jurisdiction treaty cases have repeatedly rejected attempts to impose heightened standing barriers on parties invoking that jurisdiction. In *United States v. Washington*, when the Makah Tribe invoked the court's retained jurisdiction to seek adjudication of the treaty fishing territories of the Quinault Indian Nation and the Quileute Tribe, Quinault moved to dismiss for lack of standing, arguing that Makah's alleged injury was speculative and not imminent.[4] The district court rejected that argument, explaining that its retained jurisdiction encompassed determinations of treaty fishing locations and that "any party [could] invoke th[e] Court's jurisdiction to make [such a] determination." Order on Motions to Dismiss, *United States v. Washington*, No. C70-9213 (Subproceeding 09-1), Dkt. 86 at 4 (W.D. Wash. Sept. 28, 2011). The court emphasized that this framework "sets a fairly low bar for

---

[4] *Quinault Indian Nation's Motion to Dismiss and Memorandum in Support of Motion to Dismiss the Makah Tribe's Request for Determination re Quileute and Quinault Usual and Accustomed Fishing Grounds in the Pacific Ocean*, *United States v. Washington*, No. C70-9213 (Subproceeding 09-1), Dkt. 51 (W.D. Wash. June 15, 2010).

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 17
CASE NO. 3:68-cv-00513

establishing standing," which was satisfied by allegations that unresolved treaty rights disputes may interfere with the exercise of fishing rights. *Id.*

The same reasoning applies here. This Court likewise retained jurisdiction to allow "[a]ny party at any time" to seek relief where continued application of existing arrangements proves inequitable or impracticable. Dkt. 2618-3, at ¶ 4. The Shoshone-Bannock now invoke that jurisdiction, alleging interference with the exercise and protection of its treaty-reserved fishing rights resulting from the absence of adjudication to specifically define those rights. In a continuing jurisdiction, *in rem* proceeding designed to resolve competing sovereign claims to a shared resource, that showing is sufficient. Defendants' attempt to impose a heightened Article III standing requirement ignores both the law of the case and the settled operation of treaty adjudications under retained jurisdiction. The Shoshone-Bannock have therefore satisfied the "low bar" required for standing, and Defendants' motions should be denied.

**C. The Shoshone-Bannock Possess Article III Standing**

Assuming the Shoshone-Bannock must independently show standing, the FAC details specific harms to the Shoshone-Bannock's treaty-reserved right to fish on the unoccupied lands of the United States sufficient for Article III standing at the pleading stage.

Article III limits the judicial power of federal courts to actual cases or controversies. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). To satisfy this requirement, a plaintiff must allege (1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). As the party invoking federal jurisdiction, the Shoshone-Bannock bear the burden of establishing these elements. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990). At the pleading stage, however, the Shoshone-Bannock need only

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 18
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

allege facts that, taken as true, plausibly establish standing. *Warth v. Seldin*, 422 U.S. 490, 518 (1975). On a motion to dismiss for want of standing, the "court[ ] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Cardenas v. Anzai*, 311 F.3d 929, 933 (9th Cir. 2002) (internal quotation omitted). Thus, "[a]t the pleading stage," as in this case, "general factual allegations of injury resulting from the defendant's conduct may suffice . . ." *Id.* (internal quotation omitted).

This standard is easily met with respect to the Shoshone-Bannock's claims for a declaration of treaty status. This is particularly true given that courts have recognized that deprivation of treaty rights is sufficient by itself to establish standing. *Skokomish Indian Tribe v. Goldmark*, 994 F. Supp. 2d 1168, 1178-79 (W.D. Wash. 2014) (holding that Skokomish "would demonstrate an injury in fact for purposed [sic] of establishing Article III standing by alleging, as it has, hunting and gathering Treaty rights that Washington State officials have expressly disclaimed.").

### 1. The Shoshone-Bannock have Suffered a Concrete and Particularized Injury

The Shoshone-Bannock allege anadromous fish populations in the Columbia Basin—central to their cultural and subsistence lifeways—have been "devastated by external exploitation and mismanagement of downriver users." FAC ¶ 4. Shoshone-Bannock further describe the "continued reduction in the number of salmon returning to Idaho for spawning," *id.* ¶ 42, which has required them to "impose strict fishing regulations on [their] members in an effort to preserve and restore anadromous fish runs," including "a total closure of salmon fishing for conservation purposes." *Id.* ¶¶ 43-44. These are not abstract grievances; they represent concrete, particularized injuries to Shoshone-Bannock's treaty rights and their community's subsistence and culture caused by Defendants.

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 19
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Under the Peace Treaty, the Shoshone-Bannock reserved the right to fish "on the unoccupied lands of the United States." Fort Bridger Treaty art. IV. As all parties have acknowledged, the specifically defined reach of that right has never been adjudicated. The absence of adjudication has concrete and present consequences. Because the scope of the Shoshone-Bannock's treaty fishing right remains undefined, the Shoshone-Bannock are excluded from participating as a full sovereign manager within their reserved fishing territory—namely, the Columbia River Basin and its tributaries.

That exclusion is reflected in the governing management agreements. For example, the 2018-2027 Management Agreement recognizes the Shoshone-Bannock as a managing entity only for the Salmon River sub-basin "and such other sub-basin areas as may subsequently be agreed upon by the affected parties." Dkt. 2607-1 at 67. No such additional areas have been agreed upon. As a result, the Shoshone-Bannock are excluded from management and production authority throughout its claimed treaty fishing grounds, restricting its ability to ensure the anadromous fish that migrate through those waters "reach the upper portions of the stream where the historic Indian places are mostly located." *Sohappy*, 302 F.Supp. at 911; *see* Dkt. 2676 ¶¶ 42, 46.

This injury is neither speculative nor hypothetical. The Stevens Treaty Tribes themselves concede "[i]nterference with the exercise of treaty protected rights is a cognizable legal injury." Dkt. 2682 at 24. Here, the Shoshone-Bannock allege they possess a federal treaty right to fish throughout the Columbia River Basin, FAC ¶¶ 2, 23, 28, 41; the opposing parties dispute that right and, as a result, exclude the Tribes from meaningful co-management and from exercising their reserved rights outside narrowly defined areas. *Id.* ¶¶ 61-64. Although the Stevens Treaty Tribes respond to the factual allegations of limited fishery management planning by contending

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 20
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

that the Shoshone-Bannock may "participate" in management plan negotiations, they simultaneously acknowledge the practical limitations that prevent the Tribes from exercising influence or authority beyond those limited areas.  Dkt. 2682 at 17-18. The injuries alleged in this case thus flow directly from the opposing parties' conduct.

The harm is ongoing and recurring.  Each fishing season, the Shoshone-Bannock are denied the opportunity to participate as a full manager of their treaty-reserved fishery, resulting in lost harvest opportunities and diminished ability to protect fish destined for their traditional spawning grounds.  FAC ¶¶ 56, 65.  In overseeing this litigation, the Court has repeatedly recognized that recurring allocation and management disputes constitute continuing injuries sufficient to satisfy Article III.  *See, e.g.*, *United States v. Oregon*, 718 F.2d 299, 302 (9th Cir. 1983); *United States v. Oregon*, 657 F.2d 1009, 1012 n.7 (9th Cir. 1981); *United States v. Oregon*, 787 F.Supp. 1557, 1560 (D.Or. 1992).  The allegations in the FAC are sufficient to establish injury in fact.

The injury in fact argument boils down to a suggestion there is no actual adversity.  But that's simply not true.  The Nez Perce Tribe and the states of Oregon and Washington have, in particular, publicly stated their opposition to Shoshone-Bannock treaty rights.  In correspondence with the National Oceanic and Atmospheric Administration,[5] the Nez Perce Tribe stated that "unless and until such time as the [Shoshone-Bannock] judicially establish that the Treaty of Fort Bridger entitles them to treaty fisheries," any Shoshone-Bannock fishing must come from Oregon's allocation.  Nez Perce Letter to NOAA re 'NOAA's Draft ESA' at 4 (Sept.

---

[5] In determining subject matter jurisdiction, courts may consider materials outside the pleadings. *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996).

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 21
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

12, 2011) (herein after "Nez Perce Letter" attached as Ex. 1).[6]  The Nez Perce further explained "as a legal matter, there *are no* '[Shoshone-Bannock] fishing areas' in these sub-basins, as the [Shoshone-Bannock] have never taken action to have their assertions recognized or judicially determined." *Id.* at 8 (emphasis in original).  The Nez Perce concluded:

> [T]he best that can be said for the Shoshone-Bannocks' claim of allocation and injunctive rights is that the existence and nature of such rights is undetermined . . . Such a judicial determination [of the SBT assertions] must first settle whether such rights exist.  If they do, it must be determined what share the Shoshone-Bannocks are entitled to, and which of the existing parties must give up a part of their allocation to the Shoshone-Bannocks.

> *Id.* at 10, note 7.

The state of Oregon went further:

> [R]eiterat[ing] the need to resolve the long standing jurisdictional debate regarding the status of the Shoshone-Bannock Tribes (SBT) treaty fishing rights in Northeast Oregon.  [Because w]ithout resolution, Oregon and the other *US v Oregon* parties cannot appropriately manage or enforce any of the fisheries contemplated under the Plan or the current *US v Oregon* agreement.

Oregon Letter to NOAA re Comments on Northeast Oregon Fishery Plans at 1 (Sept. 12, 2011) (attached as Ex. 2).  Oregon even called upon the United States to move forward, as trustee for the Shoshone-Bannock, with such an adjudication:

> While some tribes have asked for Oregon's assistance resolving this dispute, we do not have the legal authority, appropriate forum or historical expertise to attempt to make a determination on this jurisdictional point.  The Federal government does, however, as the tribes' trustee.  We ask that as the trustee you exercise that authority in as timely a manner as possible.

---

[6] Umatilla Agreed: "Any fisheries that may be conducted by the SBT . . . shall be counted against the State of Oregon's allocation, unless and until such time as the SBT judicially establishes that the Treaty of Fort Bridger or any other legal theory entitles them to the treaty fisheries . . ." *See* Umatilla Letter to NOAA re Comment on Northeast Oregon Fishery Plans at 2 (Sept. 12, 2011) (attached as Ex. 3).

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

1  *Id.* Not to be outdone, Washington State threatened "that Shoshone-Bannock tribal members

2  [will be] subject to Washington State law when they hunt for Chinook salmon in the mainstem

3  Snake River in Washington State." Nez Perce Letter at 10 (citing State of Washington, Attorney

4  General's Office Letter to Shoshone-Bannock Tribal Attorneys (June 11, 2002)).[7]

5

6  Taken together, these statements confirm what the Motions to Dismiss attempt to

7  obscure: there is clear, present, and entrenched adversity between the sovereigns as to the scope

8  of the Shoshone-Bannock's treaty rights. The opposing parties' aggressive disputing of both the

9  Shoshone-Bannock's interpretation of the Peace Treaty and the scope of the rights reserved

10  thereunder proves the existence of a multi-sovereign dispute requiring an exercise of this Court's

11  jurisdiction to resolve.

12

13  **2.   The Injury is Traceable to the Opposing Parties' Actions**

14  The opposing parties argue the FAC fails to allege injuries fairly traceable to their

15  actions. *See* Dkt. 2681 at 7; Dkt. 2682 at 20; Dkt. 2683 at 7. That argument misunderstands

16  both the nature of the injury alleged and the structure of this case.

17  Causation requires a showing the "injury is fairly traceable to the defendants" conduct,

18  not that any single defendant acted alone or with unlawful intent. *TransUnion LLC v. Ramirez*,

19  594 U.S. 413, 423 (2021). The FAC clearly alleges the "loss of life suffered by the anadromous

20  fish is the direct result of Defendants' failure to recognize the need for these fish to reach the

21  headwaters of their home-streams." FAC ¶ 48. The FAC repeatedly asserts the States and other

22  Tribes "possess a shared responsibility for the management of the anadromous fish resources

23

24

25

26  [7] The Ninth Circuit has found a threat by a state official to refer a matter to a county attorney for
enforcement to be sufficient for purposes of Article III standing analysis. *See Culinary Workers
Union v. Del Papa*, 200 F.3d 614, 617-18 (9th Cir. 1999) (finding attorney general's threat "to
refer prosecution to 'local criminal authorities'" sufficient for purposes of Article III standing).

27

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 23
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

that migrate through the Columbia River Basin and its tributaries." *Id.* ¶ 15.  It further alleges

the opposing parties dispute the Shoshone-Bannock's treaty rights and, on that basis, exclude the

Shoshone-Bannock from co-management and from protecting fish destined for their spawning

grounds.  *Id.* ¶¶ 41, 47-49.  This alleged shared management responsibility, the Shoshone-

Bannock's alleged treaty interest in the fishery resource, coupled with the Shoshone-Bannock's

allegations of downriver over-harvest and regulatory failure proves sufficient at the pleading

stage to connect the Shoshone-Bannock's injuries to the actions of the other sovereigns.

This logic becomes more sound where, in a retained *in rem* jurisdiction proceeding such

as this one, injury flows not from a single enforcement action, but from systemic exclusion from

the failed management and allocation of the *res* itself.  The parties "cannot so manage the fishery

that little or no harvestable portion of the run remains to reach the upper portions of the stream

where the historic Indian places are moistly located."  *Sohappy*, 302 F.Supp at 911.  The

Shoshone-Bannock allege little harvestable fish reach many of its traditional fisheries because

the resource is being managed without recognition of its treaty rights, and the opposing parties

refuse to allow it to participate as a full sovereign manager in the Columbia Basin absent

adjudication.  FAC ¶ 43-48.  The Shoshone-Bannock's alleged injuries are therefore fairly

traceable to the collective conduct of the opposing parties in administering the fishery through

the Management Agreements that do not fully recognize or honor the Shoshone-Bannock's

preserved treaty interests.

### a.  Judicial Clarification Renders the Injuries Legally Cognizable

There is fundamental problem with the opposing parties' "direct" injury argument; it

ignores the past half-century of treaty rights litigation.  Insisting the Shoshone-Bannock must

demonstrate direct injury or interference as a prerequisite to adjudication, while simultaneously

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 24
CASE NO. 3:68-cv-00513

Kilpatrick, Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

1   maintaining no injury can exist because the right has not yet been defined, creates a structural

2   impasse: adjudication is demanded to establish injury, yet adjudication is opposed because injury

3   has not been shown.  In this way, the opposing parties' "direct" injury argument offers nothing

4   more than a strawman for them to attack.

5        Federal treaty fishing cases have long recognized adjudication—not enforcement—

6   represent the proper means for resolving this dilemma.  The alternative would require tribal

7   members to engage in fishing activity in disputed locations, subject themselves to state

8   enforcement action, and then litigate the legality of those actions through criminal or quasi-

9   criminal proceedings in some county court.  That is precisely the cycle of conflict and uncertainty

10  that continuing jurisdiction cases like *United States v. Oregon* and *United States v. Washington*

11  sought to prevent.  In fact, the Supreme Court has made clear a party need not "expose himself

12  to liability before bringing suit to challenge the basis for the threat," and an actual controversy

13  exists where the dispute is real and immediate, even if the plaintiff seeks judicial clarification

14  rather than confrontation.  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007).

15  This principle applies with even greater force in a continuing jurisdiction treaty case, where the

16  purpose of the forum is to resolve competing sovereign claims to a shared resource before

17  enforcement or allocation conflicts arise.  The Shoshone-Bannock are therefore not required to

18  manufacture conflict or risk criminal sanction to obtain adjudication of the scope of their treaty

19  rights.  Adjudication through declaratory relief based on adverse actions of states allows treaty

20  rights to be defined in an orderly civil forum, and if cognizable, applied to the injuries alleged.

21  This process does not require Shoshone-Bannock to manufacture enforcement conflicts in order

22  to vindicate federal property rights.

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 25
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

1

2

**b. The Absence of Legally Cognizable Rights Makes Ongoing Resource Injury Traceable to the Opposing Parties**

3

The absence of adjudication is not a neutral condition.  It is itself a concrete injury.

4

Without an adjudicated definition of the scope of its treaty fishing rights, it remains clear the

5

Shoshone-Bannock are undeniably excluded by competing sovereigns from equal participation

6

in fishery management throughout the Columbia River Basin, are unable to protect their treaty-

7

reserved resources, and are denied meaningful access to judicial relief when downstream actions

8

impair the fishery so "little or no harvestable portion of the run remains to reach the upper

9

10

portions of the stream where the historic Indian places are mostly located." *Sohappy*, 302 F.

11

Supp. at 911.

12

Accordingly, the Shoshone-Bannock have asked this Court for a declaration of its "treaty

13

right to fish off-reservation throughout the Columbia Basin and its tributaries."  FAC ¶ 29-41,

14

51-56.  Specifically defining the scope of treaty fishing rights in this manner is the foundation

15

of *United States v. Oregon* and *United States v. Washington*.  As the history of these cases

16

17

demonstrate, which tribes may participate in particular fisheries—and on what terms—is

18

determined on a case-by-case basis through judicial adjudication initiated when a tribe seeks a

19

determination of its treaty rights.[8]  *See United States v. Washington*, 384 F.Supp. 312, 419 (W.D.

20

Wash. 1974), *aff'd and remanded*, 520 F.2d 676 (9th Cir. 1975).

21

22

[8] This Court has "the benefit of *United States v. Washington* . . . to aid in its future

23

determinations," for adjudicating treaty fishing rights within a continuing-jurisdiction

framework.  *United States v. Oregon*, 529 F.2d at 574.  In *United States v. Washington,* a party

24

files a "Request for Determination" to briefly set "forth the factual nature of the request and any

legal authorities and argument which may assist the court, along with a statement that

25

unsuccessful efforts have been made by the parties to resolve the matter, whether a hearing is

required, and any factors which bear on the urgency of the request" to start a new case within

26

the case.  *Washington*, 384 F. Supp. at 419.  This structured process preserves judicial control

27

over the fishery resource, ensures orderly development of the record, and provides a familiar and

proven mechanism for resolving treaty-right adjudications among competing sovereigns—one

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 26
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

The Shoshone-Bannock's request aligns with this Court's continued jurisdiction. As the Ninth Circuit explained, "[t]he original action, by seeking a declaration of treaty fishing rights, sought to apportion the Columbia River anadromous fishery among competing sovereigns. It thus has been recognized as analogous to an equitable action *in rem*." *United States v. Oregon*, 657 F.2d 1009, 1015 (9th Cir. 1981). "In such an action, 'a court possessed of the res in a proceeding *in rem*, such as one to apportion a fishery,'" *id.*, means "the court has taken control of property to assure its proper use." *United States v. Crookshanks*, Nos. CR 77-168, CR 77-169, CR 77-170, at 4-5 (D. Or. Nov. 30, 1977) (Order denying motions to dismiss prosecutions of violations of the Temporary Restraining Order entered by Judge Belloni). For example, "[t]he *res* in bankruptcy is the estate of the bankrupt. The *res* here is the right to take fish in the Columbia." *Id.* Accordingly, to establish a claim to the fishery resource within the Columbia River system, the Shoshone-Bannock must establish its right to take fish in the specific locations claimed in the forum that has retained *in rem* jurisdiction over that property.

The Shoshone-Bannock's FAC to adjudicate the scope of its reserved treaty right is therefore part of this Court's ongoing jurisdiction to apportion the fishery and must be read in conjunction with all that has happened in this case, not the least of which is the opposing parties repeated vociferous opposition to the Shoshone-Bannock's exercise of its treaty rights in the Columbia Basin. The Court has approved management agreements on the understanding the Shoshone-Bannock's treaty fishing rights had "not been determined" precisely because adjudication had not yet been sought. *United States v. Oregon*, 699 F. Supp. at 1466. Without

---

that the Ninth Circuit has expressly recognized as instructive in administering *United States v. Oregon*. *See United States v. Oregon*, 529 F.2d at 574. The Court should look to the request for determination process as a guide in considering the factual sufficiency of the Shoshone-Bannock's FAC.

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 27
CASE NO. 3:68-cv-00513

Kilpatrick, Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

a judicial determination of what "the unoccupied lands of the United States" meant to the Shoshone-Bannock at treaty time in relation to the Columbia Basin, the Shoshone-Bannock stand restricted from meaningfully participating as a sovereign manager within the entire Columbia River fishery regime, leaving their members unable to lawfully exercise the fishing rights their ancestors intended to preserve in the Columbia River and its tributaries by Treaty.

The opposition of the other sovereigns is accordingly real and direct, as alleged by paragraphs 61-65 of the FAC related to management planning of the fishery and access to Columbia River fish. As stated by the Stevens Treaty Tribes previously, "the Shoshone-Bannock Tribes have no 'management responsibilities' because they have no fishing rights . . . [which can only operate] 'consistent with legally enforceable tribal rights,' which the [Stevens Treaty] Tribes argue are absent here." *United States v. Oregon*, 2011 WL 13377660, at *7 (D. Or. Mar. 11, 2011). To believe the opposing parties can repeatedly ignore the Shoshone-Bannock's rights to fish in the Columbia Basin, restrict it from any meaningful participation in that Basin without adjudication, and still claim no injury exists to authorize this Court to adjudicate that alleged right pursuant to its continuing jurisdiction strains credulity. Unless the other sovereigns want a repeat of the 1960s fish wars, the complained of actions in the management context is direct injury enough for the required determination of the scope of the Shoshone-Bannock's reserved treaty right.[9] *See* FAC ¶ 49-50, 61-66.

---

[9] If this were a new case, filed without the benefit of decades of continuing jurisdiction and repeated statements of the parties' opposition to the treaty rights the Shoshone-Bannock seeks to define within the confines of the case, the opposition parties' argument might have some weight. However, this Court's retained jurisdiction exists precisely to resolve foundational questions among the sovereigns related to treaty rights, such as the Shoshone-Bannock's adjudication of the scope of their already established treaty fishing rights.

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 28
CASE NO. 3:68-cv-00513

Kilpatrick, Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

### 3. The Shoshone-Bannock's Injury will be Redressed by a Favorable Ruling

Redressability is also satisfied. "Redressability requires an analysis of whether the court has the power to right or to prevent the claimed injury." *Gonzales v. Gorsuch*, 688 F.2d 1263, 1267 (9th Cir. 1982).

Here, the Shoshone-Bannock have asked for, among other things, "[a]n order enjoining all parties to recognize the Shoshone-Bannock's off-reservation treaty fishing right in any management decisions of the anadromous fish resource throughout the Columbia Basin and its tributaries, including through equal participation in any future negotiation of any fish management plans agreed to pursuant to the continued jurisdiction of this Court." FAC p. 13-14. These are not mere requests for advisory opinions: if granted, the relief would address the alleged harm by directly impacting management and allocation of the fishery resource.

It is without question a judicial adjudication of the scope of the Shoshone-Bannock's treaty fishing rights would directly remedy the injuries alleged by defining the scope of the treaty right in Oregon and enabling their participation as a full sovereign manager within the Columbia River Basin. Recognition of those rights would allow the Shoshone-Bannock to engage meaningfully in future management decisions, protect fish destined for their traditional spawning grounds, and prevent the recurrence of the harms alleged in the FAC. FAC ¶ 61-66. This is precisely what the Court has retained jurisdiction to determine.

The opposing parties emphasize the Shoshone-Bannock's treaty rights have "never been presumed" and it has "taken no action to adjudicate the nature and scope of [those] rights." Dkt. 2682 at 17-18; Dkt. 2683 at 6. That is precisely the point. This action seeks the adjudication all parties acknowledge has never occurred. The Shoshone-Bannock's injury arises from that absence of adjudication and from the continued exclusion that absence produces. The injury is

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

real, ongoing, and redressable by the relief requested. Taken together, the Shoshone-Bannock has alleged facts that are more than sufficient to demonstrate concrete and particularized injuries flowing from other sovereigns' actions adverse to its treaty rights in the Columbia Basin, that the harm is actual and directly traceable to those parties' actions, and these injuries may be cured by the requested treaty right determinations. Article III standing is not legitimately in question.

### D. The Shoshone-Bannock Has Established An "Actual Controversy" As Required By The Declaratory Judgment Act

The Declaratory Judgment Act authorizes federal courts to "declare the rights and other legal relations of any interested party" in a "case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). The Act's "actual controversy" requirement is coextensive with Article III's case or controversy limitation. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)); *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994).

In the declaratory judgment context, the inquiry is whether "the facts alleged, under all the circumstances, show there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127; *United States v. Braren*, 338 F.3d 971, 975 (9th Cir. 2003). The focus is on whether the dispute presents a concrete and present clash of legal rights. That standard is satisfied where, as here, the parties actively dispute the existence and scope of federal rights that govern present-day management, allocation, and use of a shared resource. *See Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). And the immediacy of this controversy is underscored by the parties' repeated recognition that absent judicial resolution, treaty fishing disputes cannot be resolved through negotiated management alone.

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 30
CASE NO. 3:68-cv-00513

Kilpatrick, Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

The Shoshone-Bannock allege an ongoing and concrete dispute with the opposing parties regarding the existence, specified reach, and management consequences of their treaty-reserved rights under the Fort Bridger Peace Treaty.  The opposing parties expressly contest those rights and refuse to recognize or implement them absent adjudication.  That dispute affects present allocation and management decisions within the Columbia River Basin and therefore carries immediate legal and practical consequences.  It is immediate, adversarial, and real—not hypothetical or abstract—and it directly affects present fishery activities and management decisions within this Court's retained *in rem* jurisdiction.

Because the Shoshone-Bannock have established Article III standing, they have necessarily established an "actual controversy" sufficient to support declaratory relief under § 2201(a).  *Id.* ("[T]he Declaratory Judgment Act is identical to Article III's constitutional case or controversy requirement.") (internal quotations omitted).

### E. The Shoshone-Bannock Have Stated A Claim Upon Which Relief May Be Granted

To survive dismissal under Rule 12(b)(6), "a complaint need only contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), Fed. R. Civ. P. 12(b)(6).  Rule 8 does not require detailed factual allegations; it requires fair notice of the claim and the grounds upon which it rests.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  At this stage, the Court must accept the Shoshone-Bannock's factual allegations as true and draw all reasonable inferences in their favor.  *Id.*

The Stevens Treaty Tribes argue the FAC is "devoid of sufficient facts" and leaves them "guessing" as to the conduct at issue and, therefore, fails to state a claim for relief.  Dkt. 2682 at 25, 28.  That contention is belied by both the face of the FAC and the history of this litigation,

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 31
CASE NO. 3:68-cv-00513

Kilpatrick, Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

which they seek to ignore.  The FAC provides ample factual context regarding Shoshone-Bannock's historical and ongoing use of the Columbia Basin fisheries, FAC ¶¶ 23–28, the nature and scope of the treaty right, *id.* ¶¶ 29–41, and the specific injuries suffered.  *Id.* ¶¶ 42–49.  The FAC identifies the parties shared management responsibilities, *id.* ¶ 15, their failure to manage the fishery to protect the Shoshone-Bannock treaty right, *id.* ¶ 48, and the resulting harm to its fishery and culture.  *Id*.  At the pleading stage, these factual allegations suffice to "raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Moreover, the Shoshone-Bannock's claim—that they possess treaty-reserved fishing rights under the Peace Treaty applicable to the Columbia River Basin and its tributaries, and those rights have never been adjudicated—is neither novel nor obscure.  It has been expressly acknowledged by this Court, by the United States, and by the opposing parties themselves for decades.  *See* infra § I.E.  The Ninth Circuit recognized the Shoshone-Bannock's treaty rights "have not been finalized" and "have not been more specifically defined."  *United States v. Oregon*, 913 F.2d at 586 n.8.  The Management Agreements likewise acknowledge the Shoshone-Bannock reserved the right to pursue adjudication of their Fort Bridger Peace Treaty claims in this forum.  *See* Dkt. 2607-1 at 7 ("[T]he Tribes may pursue litigation on [their] complaint in intervention or any other claims … concerning the Shoshone-Bannock Tribes' Fort Bridger Treaty of July 3, 1868.").  The United States similarly recognized, as early as 1986, the Shoshone-Bannock intended to establish treaty rights applicable to the Columbia River mainstem.  *See* Dkt. 2418-935 at 6.

At the pleading stage, the Shoshone-Bannock are not required to prove the specifically defined reach of their treaty rights, quantify harvest shares, or resolve competing sovereign

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 32
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

claims.  Those are merits questions reserved for adjudication; precisely the relief the FAC seeks.  In a continuing jurisdiction case designed to adjudicate treaty fishing rights among competing sovereigns, a claim seeking determination of an unadjudicated treaty right states a cognizable legal theory and plausibly alleges entitlement to relief.

Because the FAC provides fair notice of the Shoshone-Bannock's claims, identifies the treaty provision at issue, alleges concrete injury arising from the absence of adjudication, and seeks relief squarely within this Court's retained jurisdiction, dismissal under Rule 12(b)(6) is unwarranted.

### F.  The Eleventh Amendment Does Not Protect Oregon

The state of Oregon attempts an Eleventh Amendment argument as a means to avoid litigating this dispute.  Dkt. 2683 at 5.  This argument turns out to be as specious as it looks at first blush.

Under the Eleventh Amendment, an unconsenting State is generally immune from suits brought in federal court by private parties, including Indian tribes.  *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997).  That immunity, however, does not apply to actions brought by the United States.  *Bethel Native Corp. v. Dep't of Interior*, 208 F.3d 1171, 1173 (9th Cir. 2000).  Nor does it bar proceedings that fall within a federal court's retained jurisdiction over an equitable decree enforcing treaty rights against the State itself.

Oregon does not dispute the Eleventh Amendment posed no bar to the original 1968 enforcement action brought by the United States.  *See* Dkt. 2683 at 5.  Instead, Oregon creatively argues—without any supporting authority—it is immune from the Shoshone-Bannock's claims because the United States is not presently acting "on their behalf."  *Id.*  That argument

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 33
CASE NO. 3:68-cv-00513

Kilpatrick, Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

1    misapprehends both the procedural posture of this case and the nature of the Court's continuing

2    jurisdiction.

3          This action is not a new suit against Oregon.  It represents an ongoing federal

4    enforcement proceeding in which the Court expressly retained jurisdiction to resolve treaty

5    claims and "for disposition of the remaining claims of the parties or to grant further or amended

6    relief upon application of any of the parties."  Dkt. 2618-3 at ¶ 4.  That retained jurisdiction

7    encompasses precisely the type of determination sought here: adjudication of the nature and

8    scope of a party's reserved treaty rights to properly allocate and manage "the res in a proceeding

9    *in rem*, such as one to apportion a fishery."  *Crookshanks*, Nos. CR 77-168, CR 77-169, CR 77-

10   170, at 4-5.

11

12         Consistent with that framework, the Shoshone-Bannock were permitted to intervene in

13   1986 to "gain an equitable share of a responsible allocation of harvestable fish for Treaty

14   ceremonial and subsistence needs."  Dkt. 2418-968 at 4.  The United States supported

15   intervention and expressly recognized "the court should reserve for separate trial the questions

16   regarding the meaning and purpose of [the Tribes'] treaty, and the nature and extent of that tribe's

17   legal and equitable interests in the anadromous fish resource."  Dkt. 2418-935 at 2.  The

18   Shoshone-Bannock's present request falls squarely within that reservation of issues.

19

20         The Ninth Circuit has repeatedly confirmed the Shoshone-Bannock's treaty fishing rights

21   have never been fully adjudicated.  *United States v. Oregon*, 913 F.2d at 586 n.8 ("The Shoshone

22   treaty rights have been recognized to include the right to fish, but have not been more specifically

23   defined.").  That unresolved status is not a jurisdictional defect; as Oregon understands, it is the

24   very reason the Court retained continuing jurisdiction in the first instance.  Dkt. 2627 at 2

25   (Oregon emphasizing the importance of "the ongoing availability of the federal forum for

26

27

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 34
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

1    disputes that arise affecting the Treaty fishing rights that are subject matter of case 68-513.").

2    The Court's subject matter jurisdiction in this case arises from the treaties under 28 U.S.C. §

3    1331.  That jurisdiction extends to all treaty-based fishing in the Columbia River Basin.

4            Oregon's attempt to characterize the Shoshone-Bannock's claims as a late, independent

5    action fails as a matter of law.  Dkt. 2683 at 6.  The Supreme Court and Ninth Circuit have

6    recognized treaty fishing adjudications are equitable proceedings analogous to actions *in rem*, in

7    which the court exercises continuing authority over the shared resource itself. *Washington v.*

8    *Washington State Commercial Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 690 n.32 (1979).

9    In such proceedings, a court "possessed of the res … may enjoin those who would interfere with

10   that custody." *Id.*

11           That principle applies with even greater force here, where Oregon was the original

12   defendant, remains subject to the decree, and has participated for decades in management plans

13   and court-supervised allocations addressing the same fishery that have harmed the Shoshone-

14   Bannock.  *See United States v. Oregon*, 657 F.2d at 1014-16 (holding that retained jurisdiction

15   over treaty fishing decrees permits ongoing modification and enforcement, and rejecting

16   immunity-based objections in that context).

17           Oregon's litigation conduct further confirms the absence of Eleventh Amendment

18   protection.  A state may waive immunity through conduct that is incompatible with an intent to

19   preserve it.  *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007).  Oregon has

20   participated continuously in this litigation, entered successive management agreements,

21   responded to court-directed processes, and expressly acknowledged the Shoshone-Bannock's

22   reserved right to pursue adjudication.  *See* 2018-2027 Management Plan, Dkt. #2607-1 at 7

23   ("[T]he Tribes may pursue litigation on [their] complaint in intervention or any other claims . . .

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 35
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

concerning the Shoshone-Bannock Tribes' Fort Bridger Treaty of July 3, 1868."). Oregon also actively participated in litigating the Shoshone-Bannock's effort to reopen the case in 2025.

Having litigated under this Court's retained jurisdiction for more than four decades, repeatedly acknowledged the Shoshone-Bannock's treaty claims remain unresolved, and "reiterated the need to resolve the long standing jurisdictional debate regarding the status of the Shoshone-Bannock Tribes (SBT) treaty fishing rights . . . [because w]ithout resolution, Oregon and the other *US v Oregon* parties cannot appropriately manage or enforce any of the fisheries contemplated under the Plan or the current *US v Oregon* agreement," Ex. 2 at 1, Oregon cannot now recast this adjudication as an impermissible suit and invoke the Eleventh Amendment to avoid adjudication. The Shoshone-Bannock seek nothing more than a determination contemplated by the original decree and necessary to effectuate its continued enforcement. The Eleventh Amendment provides Oregon no refuge from that obligation.

### G. There is No Need for a More Definite Statement

In the alternative to dismissal, the Stevens Treaty Tribes request a more definite statement, asserting uncertainty as to whether the Shoshone-Bannock are asserting "crossclaims" against them. Dkt. 2682 at 29-30. That request fails as a matter of law.

A motion for a more definite statement is appropriate only where a pleading is so vague or unintelligible the opposing party cannot reasonably frame a response. *Neveu v. City of Fresno*, 392 F. Supp. 2d at 1169. Rule 12(e) is not a vehicle for clarifying legal theories, testing the merits of a claim, or demanding evidentiary detail. *Palm Springs Med. Clinic, Inc. v. Desert Hosp.*, 628 F. Supp. 454, 464-65 (C.D. Cal. 1986).

The FAC is not unintelligible and context matters. It identifies only the states Oregon, Idaho, and Washington as defendants and alleges the Shoshone-Bannock seek adjudication of

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 36
CASE NO. 3:68-cv-00513

Kilpatrick, Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
(206) 467-9600

1   their treaty rights and related relief within this Court's continuing jurisdiction.  *See* FAC ¶¶ 15,

2   48, 57-66.  The FAC does not assert crossclaims against the Stevens Treaty Tribes, and it plainly

3   apprises all parties of the basis for the claims asserted.  That is all Rule 8 requires at the pleading

4   stage.  *See Sagan v. Apple Comput., Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994).  The

5   Shoshone-Bannock are Plaintiff Intervenors, just like the Stevens Treaty Tribes.  The Stevens

6   Treaty Tribes opposed the Shoshone-Bannock's intervention in the mid-1980s and continue to

7   choose to be adverse to the Shoshone-Bannock efforts to adjudicate its treaty right today.

8   Nevertheless, the Shoshone-Bannock's FAC sits in the same posture as that of every other tribes'

9   in this dispute: it is against the state defendants, not the tribes.

10      Any purported confusion is further belied by the Stevens Treaty Tribes' decades-long

11  participation in this case and their 25-page motion, which demonstrates a clear understanding of

12  the Shoshone-Bannock's claims and the continuing jurisdiction framework governing this case.

13  To the extent the Stevens Treaty Tribes seek additional factual detail regarding fishery

14  management or downstream impacts, fact discovery—not Rule 12(e)—is the proper mechanism.

15  *Neveu*, 392 F. Supp. 2d at 1169.  "[A] motion for more definite statement is inappropriate where

16  the information sought can otherwise be obtained in discovery." *Trademaven Clearing, LLC v.*

17  *Hood*, 2012 WL 1108119, at *5 (E.D. Tex. 2012).  The request for a more definite statement

18  should be denied.

### IV.    CONCLUSION

For the foregoing reasons, the Shoshone-Bannock respectfully request the Court deny the

pending motions to dismiss.  In the alternative, should any of the motions to dismiss be granted,

the Shoshone-Bannock respectfully requests leave to amend its FAC.

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 37
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

DATED this 2nd day of February, 2026.

By: */s/ Rob Roy Smith*
Rob Roy Smith, OSB #003932
Email:  rrsmith@ktslaw.com
Marthy Hernandez, WSBA #60618
Email: mahernandez@ktslaw.com
Kilpatrick Townsend & Stockton, LLP
1420 Fifth Avenue, Suite 3700
Seattle, Washington 98101
Tel: (206) 467-9600; Fax: (206) 623-6793

Alexander M. Mallory, SBA #036261
Email: amallory@ktslaw.com
Kilpatrick Townsend & Stockton, LLP
6909 E. Greenway Pkwy, Suite 100
Scottsdale, AZ 85254
Tel: (602) 726-7312

William F. Bacon, ISB #2766
Email: bill.bacon@sbtribes.com
General Counsel, Shoshone-Bannock Tribes
Monte Gray, ISB # 5988
Email:  monte.gray@sbtribes.com
P.O. Box 306
Fort Hall, Idaho 83203
Tel: (208) 221-0357

*Attorneys for Shoshone-Bannock Tribes*

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 38
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 2, 2026, I electronically filed the foregoing with the Clerk of the Court and upon all parties in this matter whose names appear on the official service list as registered in the Court's CM/ECF filing system, using the CM/ECF system.

DATED this 2nd day of February 2026.

By: */s/ Rob Roy Smith*
Rob Roy Smith, OSB #003932
Email: rrsmith@ktslaw.com

SHOSHONE-BANNOCK TRIBES' CONSOLIDATED RESPONSE
IN OPPOSITION TO MOTIONS TO DISMISS - 39
CASE NO. 3:68-cv-00513

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600